UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| A.A.R.P., on his own behalf and on behalf of all others similarly situated, et al., <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, et al., <br><br> Respondents-Defendants. | No. 1:25-CV-059-H |

### ORDER

Before the Court are the petitioners' emergency application for a temporary restraining order (Dkt. No. 2) and motion for class certification and appointment of class counsel (Dkt. No. 3). The petitioners A.A.R.P and W.M.M. assert that they "are at imminent risk of summary removal" from the United States. Dkt. No. 2 at 2. To avoid alleged irreparable harm, the petitioners ask the Court, among other things, to enjoin the government from removing them—or any similarly situated detainee in the Northern District of Texas—from the country. *Id.* The Court asked the government whether it would remove A.A.R.P or W.M.M. pending resolution of their habeas petition. Dkt. No. 8. The United States answered unequivocally, stating that "the government does not presently expect to remove A.A.R.P. or W.M.M. under the [Aliens Enemies Act] until after the pending habeas petition is resolved" and that "[i]f that changes, we will update the Court." Dkt. No. 19 at 13. As a result, the petitioners are not at "imminent risk of summary removal," and they cannot show a substantial threat of irreparable harm. Thus, the motion is denied. The Court reserves decision as to the motion for class certification (Dkt. No. 3).

1. **Factual and Procedural History**

On March 14, 2025, President Donald J. Trump signed a proclamation under the Alien Enemies Act of 1798 providing that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." Dkt. No. 1 at 13 (brackets in original).

A.A.R.P., a Venezuelan national, entered the United States in 2023. Dkt. No. 1 at 5–6. He sought asylum and has a hearing scheduled on April 28, 2025, at the Fort Snelling, Minnesota Immigration Court. *Id.* at 5. ICE detained A.A.R.P. on March 26, 2025. *Id.* at 5–6. On April 14, 2025, authorities transferred A.A.R.P. from a jail in Minnesota to the Bluebonnet Detention Center in Texas. *Id.* at 6. According to the petition, ICE contends that A.A.R.P. is a member of TdA. *Id.*

W.M.M., also a Venezuelan national, was detained when he entered the United States in 2023, but he was later released on his own recognizance. *Id.* at 6. He later filed an asylum application. *Id.* Subsequently, federal authorities arrested W.M.M. for illegal entry into the United States. *Id.* After his arrest, authorities released W.M.M. into ICE custody at the Winn Correctional Center in Louisiana. *Id.* Authorities transferred him to the Bluebonnet Detention Center on April 14, 2025. *Id.* at 6–7. W.M.M. has a court hearing scheduled for August 22, 2025. *Id.* at 7. The petition alleges that ICE believes W.M.M. is affiliated with TdA. *Id.* at 6.

A.A.R.P. and W.M.M. assert that they may be imminently deported to El Salvador or Venezuela. *Id.* at 6–7; Dkt. No. 2-1 at 20. They filed their joint petition for a writ of

habeas corpus on April 16, 2025. *See generally* Dkt. No. 1. Neither A.A.R.P. nor W.M.M. has been issued a notice of intent to remove them under the Act. *See* Dkt. No. 21 at 35.

Contemporaneously with their petition, the petitioners moved for an emergency, ex-parte restraining order against the respondents.[1] Dkt. No. 2; *see* Dkt. No. 1 at 1. The petitioners claim in their motion that the government may remove Venezuelan nationals, such as the petitioners, to El Salvador or Venezuela with less than 24 hours' notice in a summary proceeding without due process or the opportunity for judicial review, potentially depriving the Court of jurisdiction to hear the petitioners' habeas claims. Dkt. No. 2-1 at 3–4, 19–20. Once the Court is deprived of jurisdiction, the petitioners assert, they will risk torture, abuse, persecution, and the inability to obtain relief. *Id.* at 19–20.

The Court ordered the petitioners to provide notice to Chad Meacham, the Acting United States Attorney for the Northern District of Texas or to file a brief explaining why they did not need to provide notice to the respondents of the request for a restraining order. Dkt. No. 8. The petitioners then filed a notice of service as to Acting United States Attorney Meacham. Dkt. No. 11.

The Court further instructed the government to respond to the motion for a temporary restraining order by 4:00 p.m. CT on April 16, 2025. Dkt. No. 8 at 3. The government timely filed its response, Dkt. No. 19, and the petitioners replied, Dkt. No. 22. In addition to various substantive arguments, the government represents that the petitioners' removal is not imminent. *See* Dkt. No. 19 at 31–33. The government states that authorities

---

[1] The petitioners do not seek a temporary restraining order against President Donald J. Trump. Dkt. No. 2 at 4 n.2.

will not remove the petitioners during this litigation, and it will alert the Court if that changes. *Id.* at 12–13.

**2.  Analysis**

The Court denies the motion because three points undermine the petitioners' assertion of imminent, irreparable harm. First, the Supreme Court's recent opinion in *Trump v. J.G.G.*, 2025 WL 1024097 (U.S. Apr. 7, 2025), leaves no doubt that detainees, like the petitioners, are entitled to some level of due process and judicial review. Second, the government's representations to this Court make manifest that the petitioners will not be removed pending this litigation and that the government will alert the Court if that expectation changes. And third, the petitioners' desire for more concessions or specific timetables from the government does not sufficiently show imminent, irreparable injury.

Movants seeking preliminary injunctive relief must establish (1) "a substantial likelihood that they will prevail on the merits," (2) a "substantial threat that they will suffer irreparable injury if the injunction is not granted," (3) that "their substantial injury outweighs the threatened harm to the party whom they seek to enjoin" and (4) that "granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)). A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction. *Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Therefore, the same criteria are applicable to temporary restraining orders.

*See May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013).

Preliminary injunctive relief is "an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) (stating that a movant must "clearly carr[y] the burden of persuasion").

The petitioners ask the Court to decide, "as soon as possible," *see* Dkt. No. 2 at 3, whether to restrain the federal government from exercising its immigration powers—a realm in which the political branches, not the judiciary, enjoy substantial power and responsibility. *See, e.g.*, *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (noting that "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government" and that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference"). And in this context especially, the Supreme Court has recently noted that the Alien Enemies Act largely precludes judicial review. *J.G.G.*, 2025 WL 1024097, at *1. The Court must tread carefully when making such a hasty decision, especially one of significant magnitude. These considerations are why preliminary relief is an exception rather than the rule. And although temporary restraining orders against the government are sometimes justified, the movant must show that there is a substantial threat of irreparable harm without such relief. *See City of El Cenizo*, 890 F.3d at 176.

The petitioners have not met this burden.  First, Supreme Court precedent undermines the petitioners' assertion of imminent and summary removal without process. Just last week, the Supreme Court outlined the requirements and procedures for these cases. *See J.G.G.*, 2025 WL 1024097, at *2.  The Supreme Court noted that, even under the Alien Enemies Act, "an individual subject to detention and removal . . . is entitled to judicial review as to questions of interpretation and constitutionality of the Act as well as whether he or she is in fact an alien enemy fourteen years of age or older." *Id.* at *2 (internal quotation marks omitted) (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163–64 (1948)).

Moreover, the Supreme Court noted that "[t]he detainees' rights against summary removal . . . [were] not currently in dispute," as the government "expressly agree[d] that TdA members subject to removal under the Alien Enemies Act get judicial review." *Id.* (internal quotation marks omitted).  And the Supreme Court further reiterated that "the detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). "More specifically, in this context, AEA detainees must receive notice after [April 7, 2025] that they are subject to removal under the Act." *Id.*  The notice must "be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.*  Lest it not already be completely clear, the Supreme Court stated that "[f]or all the rhetoric of the dissents, . . . the detainees subject to removal orders under the AEA are entitled to notice and an opportunity to challenge their removal." *Id.*

Thus, the Supreme Court has already made clear that the alleged immediate removals prior to notice and the opportunity for judicial review, which form the basis of the

petitioners' motion, are illegal. *See id.* And the government recognized this reality in the Supreme Court. *Id.*

Second, the government's own representations in this case preclude a finding of imminent, irreparable harm. In an attempt to establish that *J.G.G.* is insufficient to safeguard the rights of the petitioners, they assert that the "[r]espondents have yet to concede that they will provide meaningful notice, much less any sense of when that notice will be provided to individuals or what form it will take." Dkt. No. 2-1 at 21. As such, the petitioners contend that "there remains an unacceptably high risk that the government will deport [putative] class members who are not in fact members of TdA." *Id.*

But the government's response confirms that it has no present plans to remove either petitioner until the habeas petition is resolved and that it will notify the Court if that changes. Dkt. No. 19 at 12–13. The government once again confirmed its continued belief that "the requirement for judicial review includes a process for affording notice and opportunity to be heard prior to being removed under AEA authority" and that once "that opportunity to be heard has been satisfied, removal may proceed unless a court orders otherwise." *Id.* at 13. The government further provided a declaration from Yousef Khan, Assistant Field Office Director for the United States Department of Homeland Security, Immigration and Customs Enforcement, who stated that "ICE does not intend to remove A.A.R.P. or W.M.M. under the AEA while their habeas petitions are pending." Dkt. No. 21 at 35. The petitioners, in contrast, have pointed to no instances of the government attempting to remove individuals under the Act without sufficient notice or process after the Supreme Court entered its order and opinion in *J.G.G.*, and neither have they pointed to affirmative representations by the government that it will do so in the immediate future.

Given this record, the Court has no basis upon which to believe that the government is going to defy the Supreme Court's clear directives in *J.G.G.* or the government's own representations to the Supreme Court and to this Court. Thus, in light of *J.G.G.* and the government's representations in its response (Dkt. No. 19), the petitioners' conjecture is too speculative to support the exceptional remedy requested.

Third, the fact that the government has "yet to concede" its obligation to provide meaningful notice is insufficient to affirmatively show that the government is going to commit the acts feared. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2025) (noting that there must be a "likelihood that irreparable harm will occur" and that "[s]peculative injury is not sufficient"); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013) (noting that "speculative injury is not sufficient"); *see also* Dkt. No. 21 at 25–26. In any event, the petitioners asserted this argument before the government affirmed before this Court its agreement that it must provide notice that allows "a reasonable time to file" a habeas petition. *See* Dkt. No. 19 at 13

The petitioners' reply brief (Dkt. No. 22) likewise contends that the government's assurances are insufficient because the government is still not committing to provide substantially more than 24 hours' notice. Dkt. No. 22 at 4–5. The petitioners believe that 30 days' notice is necessary. *Id.* at 5. But the government's decision not to commit to a specific or longer period of notice does not support the petitioners' contention that they are at imminent risk of irreparable harm. The government has committed to allowing for due

process and judicial review, specifically stating that it has no intention to remove the petitioners before the Court resolves their habeas petition. Dkt. Nos. 19 at 12–13; 21 at 25–26. In addition, the Supreme Court's opinion in *J.G.G.*, along with the government's general representations about the procedures necessary in these cases, strongly suggest that the putative class is also not facing such an imminent threat as the petitioners allege. In any event, the petitioners cannot seek relief that is necessary only to class members but not to them as named petitioners. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (explaining the importance of named plaintiffs being representative of the members of the class). Moreover, despite the lack of a specific notice period, the government has agreed that it will provide meaningful notice. *See* Dkt. No. 19 at 13, 24–25. That the government has not provided a specific notice period does not mean the government will provide notice insufficient under *J.G.G.* in the immediate future to detainees.

Under these circumstances, the Court finds that the petitioners have failed to meet their "heavy burden" to show a substantial threat of irreparable harm. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). Irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of" injunctive relief of this sort. Wright & Miller, *supra* § 2948.1. Lacking a showing of "certainly impending" future injury, the Court cannot grant the temporary restraining order. *See Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

3.  **Conclusion**

The Supreme Court has already affirmed that petitioners are entitled to judicial review, including notice and a hearing, before removal. *See J.G.G.*, 2025 WL 1024097, at

*2. The government agreed with this statement of law before the Supreme Court, *see id.*, and before this Court, *see* Dkt. No. 19 at 13. The petitioners have not made a sufficient showing at this stage to convince the Court that the government will violate its representations to that effect or the instructions of the Supreme Court. The petitioners have therefore failed to meet their burden to show a substantial threat of imminent, irreparable injury. The Court denies the motion for a temporary restraining order (Dkt. No. 2). Because the Court denies the emergency motion, it need not decide at this point whether to certify a class or appoint class counsel. The Court will issue a briefing order regarding the motion for class certification and appointment of class counsel (Dkt. No. 3) in due course.

So ordered on April 17, 2025.

*[signature: James W. Hendrix]*

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE