IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| A.A.R.P., *et al.*, on their own behalf and on behalf of all others similarly situated,<br><br>*Petitioners–Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants*. | Case No. 1:25-cv-59-H<br><br>**PETITIONERS-PLAINTIFFS' RENEWED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

**PETITIONERS-PLAINTIFFS' RENEWED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Petitioners-Plaintiffs ("Petitioners") and the proposed class seek emergency relief in light of developing and alarming circumstances: since the Court's order denying a TRO this afternoon, Petitioners have learned that officers at Bluebonnet have distributed notices under the Alien Enemies Act, in English only, that designate Venezuelan men for removal under the AEA, and have told the men that the <u>removals are imminent and will happen tonight or tomorrow</u>. *See* Exh. A (Brown Decl.). These removals could therefore occur <u>before this matter may be heard and before the government's response within 24 hours</u>. *See* Order, ECF No. 29 (providing that if any emergency motion is filed, the opposing party shall have 24 hours to file a response).[1]

---

[1] Counsel for Petitioners contacted counsel for the government by email at 4:49pm CT, even before hearing about the distribution of notices at Bluebonnet, to ask if the government would make the same representations as to the putative class members as it did for the two named Petitioners. Counsel for the government did not respond to that correspondence. After then hearing that notices were being distributed at the Bluebonnet facility, we again contacted the government, at 6:23 pm CT, to ask whether it was accurate that the government had begun distributing AEA notices to Venezuelan men at the facility. At 6:36pm CT, counsel for the government said they would inquire and circle back. At 8:11pm CT, the government responded that the two named Petitioners had not been given notices. We immediately responded that we

As detailed in the Brown Declaration, in the hours after this Court's order on the TRO, Attorney Brown's client, F.G.M., was approached by ICE officers, accused of being a member of Tren de Aragua, and told to sign papers in English. Exh. A (Brown Decl.) ¶ 3. F.G.M. understands only Spanish, and he refused to sign. ICE told him the papers "were coming from the President, and that he will be deported even if he did not sign it." *Id.* Another Venezuelan man who is detained at Bluebonnet and speaks English then read the notice to Attorney Brown, and the notice tracks the language of the Alien Enemies Act: "In the notice, it classified F.G.M. as a TdA gang member" who "must be removed" from the United States. *Id.* F.G.M., like other men against whom the Alien Enemies Act has already been used, does not have a final order of removal and is therefore not removable under the immigration laws. *See id.* The notice was not provided to counsel by the government, not did the government inform Attorney Brown that her client was being designated under the AEA.

In addition to Brown's client, immigration lawyers and family members of people detained at Bluebonnet are reporting that the forms are being passed out widely to the dozens of Venezuelan men who have been brought there over the past few days. Exh. B (Brane Declaration); *see also* Exh. C (Collins Decl.); Exh. D (Siegel Decl.). There is no indication that, as with past AEA removals, lawyers were being provided with the form or told that their clients were being designated under the AEA.[2]

---

were inquiring about putative class members. At 8:41pm CT, the government wrote: "We are not in a position at this time to share information about unknown detainees who are not currently parties to the pending litigation."

[2] On March 15, at least 137 Venezuelans were removed under the AEA to the CECOT prison in El Salvador. Those individuals were overwhelmingly, if not exclusively, detained at facilities in the S.D. Texas. On April 11, after a hearing, Judge Rodriguez entered a class wide TRO to preserve the status quo and prevent additional individuals from being removed under the AEA.

In its opinion today denying the initial TRO request, the Court relied on the government's representation, and the Supreme Court's decision in *J.G.G.*, that the two named Petitioners would not be removed pending the outcome of the habeas petition, and that if anything changed, the government would advise the Court. The Court did not at this time act on the motion for class certification, but it did state that "the Supreme Court's opinion in *J.G.G.,* along with the government's general representations about the procedures necessary in these cases, strongly suggest that the putative class is also not facing such an imminent threat …." Op. at 9.

Given that individuals are now in imminent danger of removal, with notice that appears to be *less* than 24 hours, Petitioners respectfully request that the Court provisionally certify a class and grant a class wide TRO so that it has time to consider these important issues. If the individuals are removed before the Court can act and the putative class members are removed from the country, this Court would be permanently divested of jurisdiction under the government's position that it need not return individuals, even those mistakenly erroneously removed. *See* All Writs Act, 28 U.S.C. 1651 (court can issue writs necessary to preserve its jurisdiction). And given the brutal nature of the Salvadoran prison where other Venezuelan men were sent under the AEA last month, the irreparable harm to them is manifest.

Accordingly, Petitioners respectfully request an immediate class wide TRO, and move to add F.G.M., as a named plaintiff. *Seeee* Exh. A (Brown Decl.)[3]

---

He then ordered expedited preliminary injunction briefing and set a hearing on the P.I. for April 23, 2025. *J.A.V. v. Trump*, No. 25-cv-72 (S.D. Tex 2025).
[3] In addition to filing electronically, Petitioner emailed a copy of this filing to counsel for the government.

3

<table>
<tr><td>Dated: April 18, 2025</td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>/s/Lee Gelernt<br>Lee Gelernt</td></tr>
<tr><td>Noelle Smith*<br>Oscar Sarabia Roman*<br>My Khanh Ngo*<br>Cody Wofsy*<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>425 California Street, Suite 700<br>San Francisco, CA 94104<br>T: (415) 343-0770<br>E: nsmith@aclu.org<br>E: osarabia@aclu.org<br>E: mngo@aclu.org<br>E: cwofsy@aclu.org</td><td>Daniel Galindo<br>Ashley Gorski*<br>Patrick Toomey*<br>Sidra Mahfooz*<br>Omar Jadwat*<br>Hina Shamsi*<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>T: (212) 549-2660<br>E: lgelernt@aclu.org<br>E: dgalindo@aclu.org<br>E: agorski@aclu.org<br>E: ptoomey@aclu.org<br>E: smahfooz@aclu.org<br>E: ojadwat@aclu.org<br>E: hshamsi@aclu.org</td></tr>
<tr><td>Brian Klosterboer<br>Tx Bar No. 24107833<br>Thomas Buser-Clancy<br>TX Bar No. 24078344<br>Savannah Kumar*<br>TX Bar No. 24120098<br>Charelle Lett<br>TX Bar No. 24138899<br>Ashley Harris<br>TX Bar No. 24123238<br>Adriana Piñon*<br>TX Bar No. 24089768<br>ACLU FOUNDATION OF TEXAS, INC.<br>1018 Preston St.<br>Houston, TX 77002<br>(713) 942-8146<br>bklosterboer@aclutx.org<br>tbuser-clancy@aclutx.org<br>skumar@aclutx.org<br>clett@aclutx.org<br>aharris@aclutx.org<br>apinon@aclutx.org</td><td>Attorneys for Petitioners-Plaintiffs<br>*Pro hac vice applications forthcoming</td></tr>
</table>

4

## CERTIFICATE OF SERVICE

      I hereby certify that on April 18, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

Dated: April 18, 2025

/s/ Lee Gelernt
Lee Gelernt
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
E: lgelernt@aclu.org

*Attorney for Petitioners-Plaintiffs*