IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| A.A.R.P., W.M.M., and F.G.M., *et al.*, on their own behalf and on behalf of all others similarly situated,<br><br>*Petitioners–Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants.* | Case No. 1:25-cv-059-H<br><br><br>**PETITIONERS-PLAINTIFFS'<br>MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION FOR CLASS<br>CERTIFICATION** |

**PETITIONERS-PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION**

# INTRODUCTION

A class action is appropriate for this challenge to Respondents-Defendants' ("Respondents") invocation of the Alien Enemies Act of 1798 ("AEA"). The President has invoked a war power, the AEA, in an attempt to summarily remove noncitizens from the United States and bypass the immigration laws that Congress has enacted. That invocation is patently unlawful: It violates the statutory terms of the AEA; unlawfully bypasses the INA; and infringes on noncitizens' constitutional right to Due Process under the Fifth Amendment.

Petitioners-Plaintiffs ("Petitioners") seeks to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation.

The proposed class readily satisfies the requirements of Rule 23.

Numerosity is present, as demonstrated by the number of people in the United States that the government has admitted having designated as subject to the AEA Proclamation. *See* Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025), ECF No. 28-1 (identifying a total of 258 people in the United States who the government believes are TdA members). Additionally, people who were, are, or will be designated as subject to the AEA Proclamation are detained and confined in the Northern District of Texas. Upon information and belief, the government has in the past 24-48 hours transferred Venezuelan men from detention centers all over the country—including California, Minnesota, and Louisiana—to the Bluebonnet Detention Center in this District, and they are at imminent risk of removal pursuant to the Proclamation. As of April 18, 2025, officers at Bluebonnet have issued notices of removal pursuant to the Aliens Enemy Act to certain men, including F.G.M., and many others in the proposed class. The notice

is in English, does not say that one can contest the designation under the AEA, and does not state a timeframe for when the removal will occur.

All class members suffer the same injury: unlawful removal under the AEA, unlawful denial of their statutory rights to the removal and detention procedures contained in the INA, and violation of their right to due process. And the class raises common questions that will generate common answers, including whether the Proclamation and its implementation violate the AEA, the INA, and the statutory protections for asylum seekers. The Petitioners' legal claims are typical of those whom they seek to represent. Petitioners are represented by experienced counsel with significant experience litigating class actions and cases involving the rights of noncitizens. And the proposed class satisfies Rule 23(b)(2) because Respondents have acted or refused to act on grounds that apply generally to the class by summarily removing noncitizens without statutorily and constitutionally mandated safeguards. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Yates v. Collier*, 868 F.3d 354, 367 (5th Cir. 2017).. And, the class would be amenable to uniform group remedies, such as granting a writ of habeas corpus that enjoins Respondents from removing Petitioners and the class pursuant to the Proclamation, declaring the Proclamation unlawful, and enjoining the Respondents from applying the Proclamation without appropriate notice and opportunity to respond. *Id.*

The notices to certain individuals and lack of notice to other individuals and undersigned counsel reinforces why certification of a district-wide class is necessary in this case. While the government has identified hundreds of individuals who could be removed subject to the Proclamation, it has refused to disclose the identity and location of such individuals. Given that the government has recently and suddenly began transferring Venezuelan men from all over the country to this District, it means more people will likely be detained and subject to summary

removal pursuant to the Proclamation. Proceeding with a district-wide class would thus serve the purpose of Federal Rule of Civil Procedure 23. *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

The Court should grant class certification under Rule 23(b)(2), appoint the Petitioner as Class Representative, and appoint the undersigned as Class Counsel. Alternatively, the Court can use Rule 23 as a guidepost to certify a class under principles of habeas jurisdiction and equity. Every circuit that has addressed the issue has found that a class habeas action may be maintained. *See, e.g.*, *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974); *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975), *Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.5 (10th Cir. 1976); *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996).

## BACKGROUND

### I. President Trump's Proclamation Invoking the AEA

The background of this litigation is set forth in greater detail in Petitioners' simultaneously filed Habeas Petition and Complaint and Motion for a TRO. On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *See Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua* (Mar. 15, 2025).[1] Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the

---

[1] *Available at*: https://perma.cc/ZS8M-ZQHJ.

3

invocation public until around 3:53 p.m. EDT on March 15. *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *17 (D.C. Cir. Mar. 26, 2025); *J.G.G. v. Trump*, No. 25-cv-766-JEB, 2025 WL 890401, at *3 (D.D.C. Mar. 24, 2025).

Although the government has identified 86 people in detention subject to the Proclamation and 172 more who are at liberty, counsel for Petitioners are, by chance, aware of the identity and location of only a handful of individuals in the United States who have been designated under the Proclamation including, four individuals in Texas and two others who were recently transferred back to New York. Counsel know of these individuals only because they have immigration counsel who were able to follow their clients' complicated transfers and contact undersigned counsel. The other known individuals designated under the Proclamation have already been disappeared into the infamous Salvadoran prison, CECOT, and their families and legal counsel have not heard from them since. Meanwhile, the government has in the last 24 to 48 hours suddenly transferred Venezuelan men, including Named Petitioners, from detention centers all over the country to northern Texas, despite their pending removal proceedings in immigration court. Upon information and belief, people have been transferred in groups of Venezuelan men, and been told that they appear to be on a list with other Venezuelans. Thus, many individuals in this District are at imminent risk of summary removal and face the same irreparable, devastating outcome as those removed on March 15, with the Court potentially permanently losing jurisdiction.

## II.     Named Petitioners and the Proposed Class

The Petitioners are noncitizens from Venezuela, accused of affiliation with Tren de Aragua, who are detained at Bluebonnet Detention Center in Anson, Texas. *See generally* ECF No. 1, Compl. Petitioners are representative of other noncitizens subject to the Proclamation under the Alien Enemies Act because they are in civil detention by ICE, have been accused of affiliation

with Tren de Aragua, and are thus at risk of designation as alien enemies and removal based on the Proclamation. The proposed class does not include individuals who may be removed pursuant to other authorities, such as the immigration laws.

## ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*; *see also Shelton v. Bledsoe*, 775 F.3d 554, 562 (3d Cir. 2015). As set forth below, Petitioners' proposed class satisfies all four of the Rule 23(a) requirements.

Petitioners also demonstrate below that Respondents "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class," and therefore certification is appropriate under Rule 23(b)(2). *See Wal-Mart Stores*, 564 U.S. at 360; *see also Yates*, 868 F.3d at 367.

The Fifth Circuit has instructed courts entertaining class actions to vindicate civil rights should not apply rules about the burden of proof "rigidly or blindly." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975)).

I.   **THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)**

    A.   **The Proposed Class is So Numerous That Joinder is Impracticable.**

The proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class or subclass members required for a finding of numerosity. *Zeidman*, 651 F.2d at 1038–39 ("federal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity") (quoting 5 J. Newberg, Class Actions § 8812, at 836 (1977)).

Instead, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id*. at 1038 (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each Plaintiff's claim." *Id*. (citation omitted). Courts also consider the "financial resources of class members, and the ability of claimants to institute individual suits," as well as the "judicial economy arising from the avoidance of a multiplicity of actions." William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed. 2017). Finally, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) (citing *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974)).

"The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)," and "[s]maller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975), *abrogated on other grounds*, *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978). Joinder

is presumptively impracticable when a class consists of forty members or more. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing Newberg on Class Actions, supra, § 3:11).

The proposed class easily meets the numerosity requirement. Several weeks ago, the government identified nationwide 86 people in detention subject to the Proclamation and 172 more who are at liberty. *See supra*, Cerna Decl. ¶ 6. Based on the former number alone, Petitioners clear the bar, but there are likely to be more individuals entering the class as more of the 172 individuals are taken into ICE custody. Moreover, the government has been transferring Venezuelan men from detention centers all over the country, including Petitioners, in the past few days alone. Further, because ICE continues to "track[] the TdA members who are amenable to removal proceedings," *id.*, "the class includes unknown, unnamed future members." *Pederson*, 213 F.3d at 868 n.11; *see also Jack*, 498 F.2d at 124 (discussing impracticability of joinder of unknown persons); *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1022 (5th Cir. 1981) ("joinder of unknown individuals is 'certainly impracticable'").

Joinder is impracticable not only because of the sheer numbers, but also because class members are frequently dispersed in different detention facilities prior to rapid staging for removal. *See J.G.G.*, 2025 WL 914682, at *17; *J.G.G.*, 2025 WL 890401, at *3; *see also J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (stating that joinder may be impracticable in light of "fluidity" of custody, "the dispersion of class members across the country, and their limited resources"); *see also, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (joinder impracticable where class members were "transient" and "geographically dispersed"); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1080, 1038 (5th Cir. 1981) (geographic dispersion relevant to impracticability of joinder); *Steward v. Janek*, 315 F.R.D. 472, 480 (W.D. Tex. 2016)

(same). Joinder is further impracticable given the nature of the class. *Chisholm v. Jindal*, No. 97-CV-3274, 1998 WL 92272, at *3 (E.D. La. Mar. 2, 1998) (finding joinder impracticable, "especially in light of the fact that [the putative class members] are indigent").

### B.      Members of the Class Have Common Questions of Law and Fact.

The claims asserted by the proposed class include common questions of law and fact that satisfy Rule 23(a)(2). At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). Even a single common question of law or fact is sufficient, so long as the resolution of the common question "will *resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Cole v. Livingston*, 4:14-CV-1698, 2016 WL 3258345, at *3 (S.D. Tex. June 14, 2016), *aff'd sub nom.*, *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017). A "pattern or practice that is generally applicable to the class as a whole" satisfies that requirement. *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013).

Petitioners in this case have identified a "single course of conduct"—the unlawful removal of noncitizens under the AEA—that provides the basis for every class member's injury. *M.D.*, 294 F.R.D. at 28-29; *see also Valentine v. Collier*, 490 F. Supp. 3d 1121, 1158 (S.D. Tex. 2020), *rev'd on other grounds*, 993 F.3d 270 (5th Cir. 2021) (commonality met where "[e]ither the answer to this question is 'yes,' in which case [defendants are] required to provide that specific

accommodation for the entire subclass, or the answer is 'no,' in which case class-wide relief is not warranted. But either way, the answer to that question can be resolved with respect to every . . . class member at once.").

In addition to this common injury, numerous questions are common to the proposed class: whether the removals go beyond the power granted to the President under the AEA; whether the removals violate statutory and regulatory immigration removal procedures; and whether Respondents' denial of meaningful procedural protections to challenge class members' removal violates the AEA and Fifth Amendment. Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Yates*, 868 F.3d at 365 n.6 ("we reaffirm that Rule 23(a)(2) requires only that a plaintiff demonstrate at least one common question of law or fact" (citing *Dukes*, 564 U.S. at 359)); *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) (same). And while class members may present individualized defenses to their designation as alien enemies, "this 'obvious fact does not destroy commonality'" for purposes of addressing these common questions. *Valentine*, 490 F. Supp. 3d at 1159 (citing *Yates*, 868 F.3d at 363). Additionally, while it is established that all petitioners have standing, if there were any doubt, F.G.M. has received an AEA notice.

Answering any one of these common legal questions will "drive the resolution of the litigation." *Wal-Mart Stores*, 564 U.S. at 350. Should the Court agree that Respondents cannot lawfully remove noncitizens under the AEA because there has, for instance, been no "invasion or predatory incursion" by a "foreign government or nation," all class members will benefit from the requested relief, which includes a declaration to that effect and an injunction preventing Respondents from conducting the removals. Should the government's use of the AEA be upheld by this Court and on appeal, then at that point individual habeas actions may be needed to address

9

whether any given detainee is, on the particular facts, a TdA member who falls with the Proclamation. But at this stage, a class action is the appropriate means of addressing the threshold systemic issues that affect all of the class members.

### C. The Petitioners' Claims Are Typical of Class Members' Claims.

Petitioners here have claims typical of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "[T]he test for typicality is not demanding," *Mullen*, 186 F.3d at 625, and "does not require a complete identity of claims." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds in In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012) (citing 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.24[4] (3d ed. 2000). Rather, the class representative's claim must have the same *essential characteristics* as that of the putative class. *Morrow v. Washington*, 277 F.R.D. 172, 194 (E.D. Tex. 2011). Claims arising from a similar course of conduct and sharing the same legal theories are typical claims even if there is factual difference between the representative and others in the class. *James*, 254 F.3d at 571.

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Wal-Mart Stores*, 564 U.S. at 349 n.5 ("The commonality and typicality requirements of Rule 23(a) tend to merge" (quoting *Falcon*, 457 U.S. at 157 n. 13). Each proposed class member, including the proposed class representatives, faces the same principal injury (unlawful removal), based on the same government policy (invocation of the AEA), which is unlawful as to the entire class because it violates the AEA itself, as well as the immigration laws and the Constitution. Petitioners thus share an identical interest in invalidation of Respondents' implementation of removals

10

pursuant to the Proclamation. Moreover, as with commonality, any factual differences that might exist here between Petitioners and proposed class members are not enough to defeat typicality.

### D. Petitioners and Petitioners' Counsel Will Adequately Protect The Interests Of The Proposed Class.

Petitioners and undersigned counsel also fulfill the final requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation inquiry has two components: (i) whether the attorneys retained by the named plaintiffs are qualified, experienced, and generally able to conduct the litigation; and (ii) whether the named plaintiffs have interests that are antagonistic to or in conflict with those they seek to represent.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

Here, there are no differences that create conflicts between the named Petitioners' interests and the class members' interests. Petitioners will fairly and adequately protect the interests of the proposed class. Petitioners do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Petitioners aim to secure relief that will protect them and the entire class from Respondents' challenged policy and to enjoin Respondents from further violations. Petitioners have no incentive to deviate from this class relief. Nor do Petitioners seek financial gain at the cost of absent class members' rights. There are no differences that "create conflicts between the proposed class representatives' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26; *see also Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

In addition, proposed class counsel includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See* Galindo Decl. ¶¶ 1-11. As the declaration makes clear, Proposed Class Counsel have been appointed class counsel in

several successful class action cases concerning the rights of noncitizens and others. *See, e.g.*, *id.* ¶¶ 4, 7.[2]

## II. THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). *Yates*, 868 F.3d at 366. Petitioners here seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Fifth Circuit instructs that Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) (citing Advisory Committee Notes, 39 F.R.D. 98, 102 (1966)). Thus, courts in the Fifth Circuit have certified under Rule 23(b)(2) similar classes of individuals subject to restrictive immigration-related policies. *See, e.g.*, *Murillo v. Musegades*, 809 F. Supp. 487, 503 (W.D. Tex. 1992) (certifying all individuals of Hispanic descent who reside, are employed, attend school or travel within a specific Texas school subject to unlawful stops, searches and detention by

---

[2] District courts in the Fifth Circuit consider ascertainability an "implied requirement to Rule 23," "require[ing] that the proposed class be adequately defined and clearly ascertainable." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. CV 18-7889, --- F. Supp. 3d ----, 2025 WL 932772, at *7 (E.D. La. Mar. 27, 2025) (citing *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023)). "'[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id*. (citation omitted). The proposed class here is readily ascertainable because membership in the class is defined by clear and objective criteria that are known to the government and because identifying class members is administratively feasible, as demonstrated by the government's declaration in *J.G.G.* describing their identification of TdA members. *Supra*.

immigration officers); *ODonnell v. Harris Cnty.*, No. CV H-16-1414, 2017 WL 1542457, at *1 (S.D. Tex. Apr. 28, 2017) (certifying Rule 23(b)(2) class of misdemeanor arrestees who cannot afford monetary bail due to indigency, asserting violation of Equal Protection and Due Process).[3] "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds that apply generally to the class by subjecting them all to the same Proclamation and attempting to summarily remove them without complying with the AEA, INA and due process. *See Yates*, 868 F.3d at 366 ("It is well-established that instead of requiring common issues, Rule 23(b)(2) requires common behavior by the defendant toward the class.") (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)).  Petitioners seek injunctive and declaratory relief that would benefit them as well as all members of the proposed class in the same fashion.  "The relief Petitioners seek is precisely the type of remedial action for which Rule 23(b)(2) was designed." *Murillo*, 809 F. Supp. 487 at 503 (citing *Penson*, 634 F.2d 993); *see also Newberg on Class Actions*, *supra*, § 1:3 ("Rule 23(b)(2) is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.").

The class is exactly the kind of class that Rule 23(b)(2) is meant to embrace. The class's interests are sufficiently related to warrant aggregate litigation. This is especially the case because members of the proposed class are in detention, often lack immigration counsel, and are indigent;

---

[3] *See also, e.g.*, *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415, 421 (5th Cir. 1992) (class action habeas petition challenging detention of noncitizen witnesses where government opposed class certification based only on typicality and mootness); *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 543 F. Supp. 198, 202 (S.D. Tex. 1982) (noting class of all Vietnamese fishermen subject to civil rights violations by Ku Klux Klan and Texas Emergency Reserve).

they may also be detained in various facilities across the country and are therefore very unlikely to bring their own individual suits. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class members than to force individuals to pursue piecemeal litigation, especially as the government has already announced its plans to swiftly deport people before they have the opportunity to seek judicial intervention.

### III.   ALTERNATIVELY, A CLASS CAN ALSO BE CERTIFIED UNDER HABEAS EQUITY PRINCILES.

A habeas class may be maintained either under Rule 23 or in equity informed by Rule 23 principles. *See*, *e.g.*, *Sero*, 506 F.2d at 1125 (the Supreme Court "confirms the power of the judiciary, under the All Writs Act, . . . to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage'" (citing *Harris v. Nelson*, 394 U.S. 286 (1960)); *Bijeol*, 513 F.2d at 968 (agreeing with *Sero* that "a representative procedure analogous to the class action provided for in Rule 23 may be appropriate in a habeas corpus action" like the one at issue), *Williams*, 481 F.2d at 361 ("under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts"); *Mead*, 464 F.2d at 1112–13 ( "there can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group. In such cases, it has been held that a class action may be appropriate"); *LoBue*, 82 F.3d at 1085 ("If . . . he meant to claim that there is no equivalent to class actions in habeas, he was wrong, for courts have in fact developed such equivalents."); *Napier*, 542 F.2d at 827 & n.5 (recognizing "class treatment" with "reference to Rule 23 in proper circumstances"); *see also Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (noting that

classwide habeas still available notwithstanding INA provision barring classwide injunctive relief).

The Fifth Circuit, as a descriptive matter, has considered class habeas cases. *See, e.g.*, *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 421 (5th Cir. 1992) (habeas class of noncitizen witnesses challenging government practice of detention over ten days, where government has opposed certification based on mootness and lack of typicality); *St. Jules v. Savage*, 512 F.2d 881, 882 (5th Cir. 1975) (reversing dismissal and remanding where district court held that each petitioner's challenge had to be "considering individually" because those inmates "present a single constitutional challenge"); *In re Class Action Application for Habeas Corpus on Behalf of All Material Witnesses in W. Dist. of Texas*, 612 F. Supp. 940, 948 (W.D. Tex. 1985) (granting summary judgment to class of individuals detained as material witnesses in the Western District of Texas). Additionally, the Supreme Court has ruled on the merits in class habeas cases. *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 532 (2021); *Nielsen v. Preap*, 586 U.S. 392, 400 (2019); *Jennings v. Rodriguez*, 583 U.S. 281, 290 (2018).

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2) or in equity, appoint the Petitioners as Class Representatives, and appoint the undersigned as Class Counsel.


Dated: April 18, 2025

Respectfully submitted,

/s/Brian Klosterboer
Brian Klosterboer
Tx Bar No. 24107833

Lee Gelernt*
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
E: lgelernt@aclu.org
E: dgalindo@aclu.org
E: agorski@aclu.org
E: ptoomey@aclu.org
E: smahfooz@aclu.org
E: ojadwat@aclu.org
E: hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
Cody Wofsy*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org
E: cwofsy@aclu.org

Thomas Buser-Clancy*
TX Bar No. 24078344
Savannah Kumar*
TX Bar No. 24120098
Charelle Lett*
TX Bar No. 24138899
Ashley Harris*
TX Bar No. 24123238
Adriana Piñon*
TX Bar No. 24089768
Adriana Piñon*
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
1018 Preston St.
Houston, TX 77002
(713) 942-8146
bklosterboer@aclutx.org
tbuser-clancy@aclutx.org
skumar@aclutx.org
clett@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

Attorneys for Petitioners-Plaintiffs
*Pro hac vice applications forthcoming*