## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | |
|---|---|
| W.M.M., on their own behalf and on behalf of others similarly situated, et al., <br><br> *Petitioners*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> *Respondents*. | Case No. 1:25-cv-00059-H |

## RESPONDENTS' OPPOSITION TO CLASS CERTIFICATION

Respondents hereby oppose, pursuant to Federal Rule of Civil Procedure 23, class certification in this case.  The Government respectfully submits that this Court lacks jurisdiction to review the March 2025 Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua" ("TdA") or enjoin the President's exercise of authority under Article II and the Alien Enemies Act ("AEA").  Without jurisdiction, there is no basis to certify a class to resolve Petitioners' claims.  Even if this Court determines that it has jurisdiction, it should nonetheless deny the motion for class certification because the information provided herein will establish that Petitioners fail to satisfy the Rule 23(a) requirements of commonality and typicality. Habeas claims are inherently individualized claims that have a historical tradition of being brought by individuals challenging the legality of their detention. Those claims cannot be adjudicated on a classwide basis and as a result the Court should decline to find Rule 23(b) appropriate for use in this habeas case. Therefore, for good cause, Respondents ask this Court to deny the motion for class certification.

**FACTUAL AND PROCEDURAL HISTORY**

Respondents incorporate by reference the statement of facts in their response to Petitioners' motion for temporary restraining order.  *See* ECF No. 19 at 4-13.  On April 16, 2025, Petitioners filed their Petition for Writ of Habeas Corpus (ECF No. 1), Motion for Temporary Restraining Order (ECF No. 2) ("TRO Motion"), Motion to Certify Class (ECF No. 3), and subsequently their Amended Petition for Writ of Habeas Corpus (ECF No. 38) ("Class Petition"), Amended Motion to Certify Class and Appoint Class Counsel (ECF No. 39) and Memorandum of Law in Support of Motion for Class Certification (ECF No. 40) ("Class Memo").  Petitioners seek certification of a class comprised, "All noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation." Class Memo at 2.  The proposed class is to be represented by three named Petitioners, W.M.M., A.R.P., and F.G.M. *Id.* All of the named class representatives are detained in the Bluebonnet Detention Center under the authority of the Immigration and Nationality Act. Ex. A, Declaration of Yousuf Khan ¶¶ 3-9. None of the proposed class representatives have been served with notices designating them as alien enemies. *Id.*

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23(a) requires that a class be represented by named plaintiffs who can establish that:  (1) the class is so numerous that joinder of all of its members is impracticable; (2) the case involves questions of fact or law that are common to all class members; (3) the named plaintiffs' claims are typical of those of the class; and (4) the named plaintiffs will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(2), a class may be maintained only if all of the requirements of Rule 23(a) are satisfied and "final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Moreover, even if a court were to grant class certification, it can later decide to decertify the class. Like certification, class decertification is discretionary, and the court "remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 n.16 (1982); Fed. R. Civ. P. 23(c)(1) ("An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."). The Fifth Circuit has made the stronger claim that district courts are obliged to reassess their class certification rulings throughout litigation. *M.D. v. Perry*, 294 F.R.D. 7, 66 (S.D. Tex. 2013) citing *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983) (courts have an ongoing duty to keep classes in compliance with Rule 23.). A court may reconsider its class certification order if compelling reasons substantially cast doubt on the composition of the class such as the class representative lacks a live claim, and changes in the law have occurred. *Kremens v. Bartley*, 431 U.S. 119, 130 (1977); *Hartman v. Duffey*, 19 F.3d 1459, 1470, 1474–75 (D.C. Cir. 1994); *Cleary v. Am. Airlines, Inc.,* No. 4:21-CV-00184-O, 2022 WL 5320126, at *8 (N.D. Tex. July 22, 2022) (relying on *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) where "Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.").

## ARGUMENT

### I.    This Court Should Deny The Motion To Certify a Class of Aliens Raising Claims Over Which It Lacks Jurisdiction.

This Court lacks jurisdiction to review the Proclamation or enjoin the President's exercise of authority under Article II and the AEA. The Supreme Court has long recognized that courts

cannot issue an injunction purporting to supervise the President's performance of his "official duties"—including "the execution of an act of Congress." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866); *Trump v. United States*, 603 U.S. 593, 607 (2024) (recounting that the President "has important foreign relations responsibilities: [including] . . . recognizing foreign governments, . . . overseeing international diplomacy and intelligence gathering, and managing matters related to terrorism, . . . and immigration").

Consistent with that general rule, courts have held that the President's authority and discretion under the AEA is not a proper subject for judicial scrutiny: "The authority to the President to promulgate by proclamation or public act 'the manner and degree of the restraint to which they (alien enemies) shall be subject, and in what cases,' is, of course, *plenary and not reviewable*." *Ex parte Gilroy*, 257 F. 110, 112 (S.D.N.Y. Feb. 28, 1919) (emphasis added); *see also id.* ("Once the person is an alien enemy, obviously the course to be pursued is essentially an executive function, to be exercised in the discretion of the President.").

Indeed, the Supreme Court recently held that "[c]hallenges to removal under the AEA, a statute which largely 'preclude[s] judicial review,' must be brought in habeas." *Trump, et al. v. J.G.G., et al.*, 604 U.S. ----, 2025 WL 1024097, at *1 (U.S. Apr. 7, 2025) (quoting *Ludecke v. Watkins*, 335 U. S. 160, 163−164 (1948)). The Supreme Court further held that an individual subject to detention and removal under the AEA is entitled to "'judicial review'" as to "questions of 'interpretation and constitutionality' of the Act as well as whether he or she 'is in fact an alien enemy fourteen years of age or older.'" *Id.* at *2 (quoting *Ludecke*, 335 U. S., at 163−164, 172, n. 17). "So, the detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306, 313 (1950)). More specifically, the Court held that "AEA detainees must receive notice . . . that they

are subject to removal under the [AEA].  The notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs."  *Id.*

Because jurisdiction in this context is limited to individual habeas claims challenging whether an alien has been properly included in the category of alien enemies – necessarily an individual determination – there is no basis to certify a class to resolve those claims.  *See Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 753 (D.C. Cir. 2023) (class certification not appropriate where "questions of law or fact . . . affecting only individual members" predominate), *Alexander v. Hall*, No. 4:20-CV-21-SA-JMV, 2024 WL 4268017, at *13 n. 5 (N.D. Miss. Sept. 23, 2024); Habeas Petition ¶¶ 20-22 (setting out separate factual circumstances of each Petitioner); *see also Trump*, 2025 WL 1024097, at *8 (Sotomayor, J., dissenting) (emphasis added) (noting that the issue before the Court was "'which procedural vehicle is best situated for the Plaintiffs' injunctive and declaratory claims': *individual habeas petitions filed in district courts across the country* or a class action filed in the District of Columbia").

## II.    This Court Should Deny Class Certification Because the Certified Class Fails to Meet the Requirements of Rule 23.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamanski*, 442 U.S. 682, 700-01 (1979)).  Federal Rule of Civil Procedure 23 governs class certification.  To satisfy Rule 23, a putative class must first satisfy each of Rule 23(a)'s four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  *See* Fed. R. Civ. P. 23(a).  If the putative class satisfies Rule 23(a)'s requirements, it then "must satisfy at least one of the three requirements listed in Rule 23(b)."  *Wal-Mart Stores, Inc. v. Dukes* ("*Dukes*"), 564 U.S. 338, 345 (2011); *Ward v. Hellerstedt*, 753 F. App'x 236, 243 (5th Cir. 2018)

(unpublished).  Here, Petitioners rely on Rule 23(b)(2), *see* Habeas Petition ¶ 75, which requires that they show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

It is improper for a district court to certify a class action without first demonstrating that the plaintiffs have satisfied each of the requirements of Rule 23 after conducting a rigorous analysis.  *Vizena v. Union Pac. R. Co.,* 360 F.3d 496, 503 (5th Cir. 2004) (citing *General Telephone Co. of Southwest,* at 161 and *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996).

"[C]ertifications are not frozen once made."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013); *see also* Fed. R. Civ. P. 23(c)(1)(C).  At the initial certification stage, Petitioners retain the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence.  *See Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (internal citation omitted).  Here, the information provided in the declaration referenced below establishes a compelling basis to deny class certification.

### A.  Petitioners Cannot Show Commonality.

The "commonality" requirement mandates that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  However, the proposed class' "claims must depend upon a common contention."  *Dukes*, 564 U.S. at 350.  Moreover, "[t]hat common contention . . . must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*; *see also Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017).  Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters [to class

certification] . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the class are what have the potential to impede the generation of common answers." *Id*. (citation omitted).

Petitioners cannot satisfy the commonality requirement because there are clear dissimilarities between the members of the proposed class that are dispositive of their legal claims. The Fifth Circuit instructs district courts to carefully consider the facts of the case and the elements of the Plaintiffs' claims before certifying a class. *See, e.g., Ward*, 753 F. App'x at 246 (unpublished) (it is "incumbent on the district court to consider and discuss the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality."). Permitting individual Plaintiffs to proceed on their own would provide those individuals with an opportunity to fully present the precise facts of their particular case. *Alexander v. Hall*, No. 4:20-CV-21-SA-JMV, 2024 WL 4268017, at *13 n. 5 (N.D. Miss. Sept. 23, 2024).

To the extent the common allegation is that class members have all suffered a violation of the Due Process Clause—that is insufficient to satisfy commonality. *Wal-Mart*, 564 U.S. at 350. The allegation is particularly deficient because "due process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 321 (1976); *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (a class action may not be the proper vehicle to resolve Due Process claims because of the flexibility inherent in a Due Process analysis). Because due process is a flexible concept, the dissimilarities inherent to each individual case would require a court to delve into the specific facts of each alien's case, thereby rendering it impossible to dispose of the class-wide claims in an efficient manner. It would be more efficient to address

7

these issues in the context of individual habeas cases where the court may elect to stay individual removals for longer or shorter periods based on the allegations and strength of the Government's showing in individual cases.  Moreover, determinations of whether an alien falls within the designation of TdA, and thus subject to removal under the AEA, are inherently fact-specific questions that cannot be resolved on a class-wide basis.  The same is true regarding whether they can assert or even have claims to withhold removal or seek asylum.  Accordingly, the certified class does not meet the commonality requirement under Rule 23(a)(2).

### B.  Petitioners Cannot Show Typicality.

Petitioners also fail to satisfy the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'"  *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 598 (3d Cir. 2012). Thus, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class member."  *Gen. Tel. Co. of the Sw.*, 457 U.S. at 156.

Here, the named Petitioners have not been designated as alien enemies under the AEA. *See* Khan Dec. ¶¶ 3-9. They have and have not been served with the notices that the class is challenging, as a result, their detention and removability is not implicated by the Proclamation challenged here. *Id*. Rather, the named Petitioners are all currently detained for removal proceedings consistent with the INA under processes and procedures that are not at issue in this case. *Id*. As a result, the class representatives do not possess the same interest or suffer the same injury as the proposed class, and would not be entitled to the same relief.

### C.  Petitioners Cannot Satisfy the Requirements of Rule 23(b)(2).

Even if a class proponent can satisfy Rule 23(a), he must still show that his claim comes within one of the three types of class actions permitted by Rule 23(b)(1), (2), or (3).  *See* Fed. R. Civ. P. 23(b); see also *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).  Here, Petitioners argue that they have satisfied Rule 23(b)(2).  Class Memo at 12-13.  Rule 23(b)(2) provides that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Wal-Mart*, 564 U.S. at 360 (internal quotations and citation omitted).  "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  *Id.*

Here, Rule 23(b)(2) does not authorize class certification because each individual class member would be entitled to a different injunction or declaratory judgment against Respondents. Whether an alien is a member of Tren de Aragua; whether he has been given sufficient process; whether he is removable under a different provision of law; and other such questions necessarily are individualized determinations unsuitable for class treatment.

To the extent Petitioners are entitled to some additional procedures under the Due Process Clause, those procedures would be different for each alien depending on the underlying facts and circumstances of their case because—as the Supreme Court has "stressed repeatedly"—"due process is flexible," and it "calls for such procedural protections as the particular situation

demands." *Jennings*, 583 U.S. at 314 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) and citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)); *see also Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009) ("Under Rule 23(b)(2), the injuries sustained by the class must be 'sufficiently similar that they can be addressed' in a 'single injunction that need not differentiate between class members.'" (emphasis added) (citation omitted)). "A class consisting of some members who might be entitled to [relief] and others who are not lacks sufficient cohesiveness to obtain relief . . . under Rule 23(b)(2)." *Reid*, 17 F.4th at 11 (holding that a class of aliens seeking relief from mandatory detention in § 1226(c) could not be sustained under Rule 23(b)(2) because they were not all entitled to the same procedures). Although "having clear standards" with regard to AEA removals may "make life simpler for all involved," a Rule 23(b)(2) class action seeking additional procedures under the Due Process Clause "does not provide a vehicle for preemptively announcing such rules." *Id.* at 12. Instead, standards should arise in the form of agency guidance or regulations or through "common law rules of precedential force, through case-by-case adjudication." *Id.* Under these circumstances, Petitioners cannot demonstrate that certification under Rule 23(b)(2) is proper.

## C. Any Certified Class Must be Limited to Bluebonnet Facility.

Finally, the class cannot extend beyond aliens in custody at Bluebonnet Detention Center in Anson, Texas. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). In adopting the "immediate custodian" rule, the Supreme Court rejected the "legal reality of control" standard and held that legal control does not determine the proper respondent in a habeas petition that challenges present physical confinement. *See Padilla*, 542 U.S. at 437-39. In unambiguous terms, the

Supreme Court explained that, "[i]n challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Id.* at 439. Here, the warden of the detention facility—the person with physical custody and control over the petitioner—is Petitioners' immediate custodian, not a local ICE Field Office Director who exercises only legal control. Indeed, *Padilla* makes clear that the warden of the detention facility, who has physical control over the habeas petitioner, is in fact the official who has the ability to "produce" the petitioner "that he may be released" pursuant to a writ of habeas corpus. *Id.*, 542 U.S. at 435; *see also, e.g.*, *Golding Sessions*, No. 18 Civ. 3036 (RJS), 2018 WL 6444400, at *3 (S.D.N.Y. Dec. 6, 2018) ("As the Supreme Court recognized in Padilla, a detainee's immediate custodian is the person who 'exercises day-to-day control' over his or her 'physical custody,' not the person who ordered such custody."); *Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473, 475 (S.D.N.Y. 2018) (rejecting the argument that ICE NY Field Office Decker is the proper respondent where petitioner asserted that "decisions 'regarding whether to continue to detain or release ICE detainees' are made by the ICE field office," and instead finding "the fact that ICE makes decisions regarding Petitioner's detention 'do[es] not change the fact that the warden . . . is, quite literally, Petitioner's immediate physical custodian'").

Petitioners have named multiples wardens: Marcello Villegas, the Facility Administrator of Bluebonnet Detention Center; Phillip Valdez, the Facility Administrator of Eden Detention Center; Jimmy Johnson, Facility Administrator of the Prairieland Detention Center; and Judith Bennet, Warden of Rolling Plains Detention Center. Habeas Petition ¶¶ 32-35. Importantly, the named Petitioners are detained in only the Bluebonnet Detention Center. Habeas Petition ¶¶ 20-22. Petitioners provide no evidence regarding the other centers such as the number of putative class members within each of those detention facilities. *See generally* Class Memo at 6-7.

11

Petitioners seem to suggest that the combined total of members of the putative class at any detention facility within the jurisdiction of the Northern District of Texas, should count towards the total. *Id.* However, it is improper to extend the class beyond Bluebonnet. *See Trump, et al. v. J.G.G., et al.*, 2025 WL 1024097, at *2. Petitioners make no mention of *Padilla*, and cite to no authority that would allow for multiple detention facilities within one judicial district for a habeas class action with the immediate custodian rule at play. Class Memo at 6-7. Accordingly, to the extent a class is certified, it should be limited to one to which Warden Villegas can afford uniform relief. *See* Fed. R. Civ. Pro. 23(b)(2) (relief must be "appropriate respecting the class as a whole").

### D. Petitioners Are Not Able to Proceed as a Class on Their Habeas Claims

Petitioners finally argue that this Court can certify a class can under "habeas equity principles." Class Memo at 14-15. But that is not the law of this circuit. This Court must consider whether a Rule 23(b)(2) remedy can sustain the class on its own. The Fifth Circuit has not recognized the availability of habeas class actions, and in *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018), the Supreme Court expressly questioned the basis for certifying class actions for individualized detention challenges. This Court should not stretch the class action remedy beyond its intended Federal Rule of Civil Procedure applications, or allow Rule 23 to distort the traditional use of the writ to challenge the legality of individual detention decisions.

**CONCLUSION**

For the foregoing reasons, this Court should deny Petitioners' Motion for Class

Certification.

<div style="margin-left:50%">

Respectfully Submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Acting Director

SARAH WILSON
Assistant Director

<u>/s/ Nancy N. Safavi</u>
NANCY N. SAFAVI
Senior Trial Attorney

</div>

April 25, 2025                    *Attorneys for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2025, I filed the foregoing document with the Clerk of the Court through the Court's ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully Submitted,

<u>/s/ Nancy N. Safavi</u>
NANCY N. SAFAVI
Senior Trial Attorney

14