IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| W.M.M. *et al.*, on their own behalf and on behalf of all others similarly situated,<br><br>*Petitioners–Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants.* | Case No. 1:25-cv-00059-H<br><br>**PETITIONERS-PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

**PETITIONERS-PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Petitioners present a textbook Rule 23(b)(2) class because every class member has a number of identical legal claims against the Proclamation, and if they prevail, each one without exception would be entitled to the exact same order enjoining the Proclamation's enforcement. Respondents' main argument is that, if all of these common classwide claims fail, class members would then have to litigate their Tren de Aragua ("TdA") membership individually. But that is a routine feature of Rule 23(b)(2) classes. Petitioners thus satisfy commonality and the Rule 23(b)(2) standard. Petitioners are typical of the class because all have been accused of TdA membership, and therefore can have the Proclamation enforced against them at any moment; F.G.M. was in fact designated for removal under the Proclamation on April 17. Respondents do not contest numerosity or adequacy.

If noncitizens detained in this District were forced to proceed in individual habeas petitions, the vast majority would likely not be able to obtain judicial review. That is especially true now that the government has revealed that it is providing only 12 hours' notice of designation under the Alien Enemies Act ("AEA") ahead of removal and, if the person indicates their intent to file a habeas petition, only 24 hours to file that petition. *See* Exh. A (Cisneros Decl.), ¶ 11.[1] These deficient notice protocols guarantee that most putative class members, who do not have their own attorneys, would never be able to seek judicial review on their own. A district-wide class is not

---

[1] The government originally sought to keep secret its decision to adopt a 12-hour notice policy (followed by 24 hours to file) by submitting the Cisneros declaration and notice form under seal in the Southern District of Texas and not providing it to any of the other courts considering the notice issue. *See J.A.V. v. Trump*, No. 1:25-cv-072 (S.D. Tex. filed Apr. 23, 2025), ECF No. 45, Exh. D. The declaration, however, was unsealed by Judge Rodriguez at the April 24 preliminary injunction hearing in that case. *See id*. Oral Order (entered at 4:26 PM CT, Apr. 24, 2025).

1

only permissible but also necessary here as the government could otherwise skirt facility-specific injunctions by swiftly transferring people and removing them from other facilities in the District.

### I.     Petitioners Raise Multiple Common Legal Issues

Petitioners raise numerous common questions, including: Does the Proclamation go beyond the power granted to the President under the AEA? Do removals pursuant to the Proclamation violate statutory and regulatory immigration removal procedures? Does Respondents' denial of meaningful notice to class members violate due process and the AEA? *See* ECF No. 40 at 8-9. These questions will plainly "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up).[2] If the Proclamation is unlawful, all class members are entitled to the same injunction.[3]

Respondents' main argument against class certification is that the question of TdA membership is individualized. Opp. 1, 5, 7, 9-10. But it is black-letter law that classes can litigate common claims, like the legality of a policy, and save individualized back-end claims for afterward. *Wal-Mart* itself made clear a class action would be proper to challenge the legality of a "companywide discriminatory pay and promotion policy," 564 U.S. at 359, even though individual class members' eventual claims for causation and damages would differ significantly. And the Fifth Circuit has repeatedly made clear that "even when the resulting injurious effects" of a policy "are diverse," class certification is still proper if the plaintiffs raise "a single common contention"

---

[2] Whether Petitioners will ultimately prevail on those questions is not the issue at the class certification stage. *See In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (class certification stage is not a "dress rehearsal for the merits").

[3] In light of these common questions, courts in AEA cases across the country have provisionally certified district-wide habeas classes and granted classwide TROs. *See G.F.F. v. Trump*, No. 25-cv-2886 (S.D.N.Y. Apr. 9, 2025), ECF No. 31, *as amended*, ECF No. 35 (S.D.N.Y. Apr. 11, 2025); *J.A.V. v. Trump*, No. 1:25-cv-72, 2025 WL 1064009, at *2 (S.D. Tex. Apr. 9, 2025); *D.B.U. v. Trump*, No. 1:25-cv-1163CNS, 2025 WL 1163530, at *14 (D. Colo. Apr. 22, 2025); *A.S.R. v. Trump*, No. 3:25-cv-113, 2025 WL 1208275, at *4 (W.D. Pa. Apr. 25, 2025).

that could "drive the resolution of the litigation." *Deepwater Horizon*, 739 F.3d at 810-11 (quotation marks omitted). This is especially true for Rule 23(b)(2) classes, whose entire purpose is to "eliminate[] piecemeal litigation" about the legality of a broad policy or practice, even where "myriad issues [] may arise in each case" *after* the classwide issue is resolved. *In re Rodriguez*, 695 F.3d 360, 365-67 (5th Cir. 2012) (affirming (b)(2) class challenging a company practice while acknowledging "the individualized manner in which each class member may have been affected by the practices"). The government does not grapple with this basic feature of class action law.

Respondents assert that Petitioners cannot raise their common claims because the Court lacks jurisdiction to review the legality of the Proclamation and its implementation. Opp. 3-5. But the Supreme Court has squarely rejected that argument and held that courts *can* review "'questions of interpretation and constitutionality' of the Act." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (U.S. Apr. 7, 2025) (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163, 172 n.17 (1948)); *see also J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *6-7 (D.C. Cir. Mar. 26, 2025) (Henderson, J. concurring) (explaining that courts can "interpret the AEA's predicate acts—a declared war, invasion or predatory incursion—or whether such conditions exist"); ECF No. 22 at 3 (collecting cases). Respondents also concede that courts can decide the question of what notice is due.

The government asserts that Petitioners' due process claim may depend on individualized factors. That argument is irrelevant because the claims challenging the Proclamation's validity are more than enough to justify class certification. But it is also wrong: The most basic notice requirements do not vary across individuals in the AEA context—for example, the government presents no reason to think that the procedural information in the notice forms or the amount of time provided should vary from person to person. As long as there is "a remedy that would provide relief to each member of the class"—like information about the right to seek judicial review,

3

consistent phone access, forms written in Spanish, or 30 days to seek review—class certification is proper. *Yates v. Collier*, 868 F.3d 354, 363, 368 (5th Cir. 2017) (upholding class even though "no two individuals have the exact same risk," because plaintiffs identified one possible common remedy, and "Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at the class certification stage"); *Tellis v. LeBlanc*, 2021 WL 4267513, at *13 (W.D. La. Sept. 20, 2021) (class proper, despite individual differences, where plaintiffs described "what actions or inactions" would benefit all class members); *Lane Hollow Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 137 F.3d 799, 807 n.14 (4th Cir. 1998) (noting across various contexts that several days' notice does not satisfy due process). Moreover, courts regularly consider due process challenges and announce rules for the generality of cases, including in class actions. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 228-30 (2005); *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Johnson v. Am. Credit Co. of Georgia*, 581 F.2d 526, 531-35 (5th Cir. 1978).

Respondents cite *Harris v. Medical Transportation Management*, but that case *upheld* commonality because the defendant's actions "cut across all putative class members," even though there was no "single policy or course of conduct" as a "throughline for all plaintiffs." 77 F.4th 746, 759 (D.C. Cir. 2023). *Harris* required predominance for purposes of Rule 23(b)(3), *id*. at 753, but Petitioners seek certification under Rule 23(b)(2), and "predominance" is "unnecessary to a *(b)(2)* class," *Wal-Mart*, 564 U.S. at 362. The plaintiffs in *Alexander v. Hall* similarly sought to certify a class under (b)(3). 2024 WL 4268017, at *12-13 (N.D. Miss. Sept. 23, 2024) (plaintiffs had "not identified a uniform practice or policy that they seek to end"). *Alexander* affirmed that (b)(2) classes are proper when seeking "injunctive relief as to a particular policy." *Id.* at *13 (citing *Tellis*). Finally, Justice Sotomayor's dissent in *J.G.G.* says nothing about the propriety of class

4

certification, merely noting the *government's* position that individual habeas petitions are the appropriate vehicle for relief. 145 S. Ct. at 1014-15.[4]

## II. Petitioners Have Established Typicality

Petitioners' claims are typical of the claims of the proposed class. The government has formally accused them all of being TdA members. *See* ECF No. 2-2 (Blakeborough Decl.) ¶ 6; ECF No. 2-3 (D'Adamo Decl.") ¶ 11; ECF No. 30-1 (Brown Decl.) ¶ 3. The Proclamation states all TdA members are subject to detention and removal under the AEA. ECF No. 38 ¶ 3. Thus, at the very least, all three face an imminent risk of enforcement under the express terms of the Proclamation, and therefore have standing to serve as class representatives. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 164 (2014). That easily satisfies typicality, which is "not demanding" and simply requires "similarity between the named plaintiffs' legal and remedial theories" and those of the class. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (quotation marks omitted), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012). Here, the legal theories and requested relief for the Petitioners and the class are identical. *See* ECF No. 40 at 10.

In addition to falling within the express terms of the Proclamation, F.G.M. received an AEA notice on April 17. *See* ECF 30-1 (Brown Decl.) ¶¶ 3-4. On April 18, Petitioners' counsel met with F.G.M. at the Bluebonnet Detention Facility, where he confirmed that he was given the notice by an officer on April 17 and was told he would be removed on April 18. *See* Exh. B (Corning Decl.) ¶¶ 4-5; Exh. C (F.G.M. Decl.), ¶¶ 2-6. Petitioners' counsel retained a photograph

---

[4] Respondents complain that the Court cannot enjoin the President in his official duties. Opp. 3-4. But Petitioners do not seek an injunction against the President. *See* ECF No. 2-1 at 4 n.2; ECF No. 38 at 17 n.3. The Court can enjoin the other Respondents in their implementation of the Proclamation. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

of the notice provided to F.G.M. *See* Exh. B at 2. Although F.G.M. was nearly loaded onto a bus along with dozens other men that day, he was eventually pulled out of the line and the notice was confiscated. *See* Exh. D (Brown Suppl. Decl.), ¶ 4. Even if his designation was somehow recalled, the circumstances reflect that the government had designated F.G.M. pursuant to the AEA and would have followed through but for this litigation. Typicality cannot depend on the government's apparent practice of not serving named petitioners with AEA notices—or rescinding them once a person sues—because otherwise Respondents could unilaterally defeat class certification.

In any event, where a policy by its terms applies to all class members, the Fifth Circuit has rejected the idea that a defendant can avoid class certification just because it has not yet enforced the policy against some of them: "Action or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." *M.D.*, 675 F.3d at 848 (quoting 1966 Amendment advisory committee note; *DG ex. rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010)).

### III.  Petitioners Satisfy Rule 23(b)(2).

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It is typically employed in civil rights actions and other actions not primarily seeking money damages, as is the case here. *See, e.g.*, *Yates*, 868 F.3d at 366; *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) (Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." (citation omitted)).

6

Petitioners have a classic Rule 23(b)(2) class, because the Proclamation is a policy that applies to all class members, and a single injunction against its enforcement would eliminate every class member's injuries in one fell swoop. The whole purpose of Rule 23(b)(2) is to avoid having dozens or more plaintiffs litigating these identical legal claims in separate, parallel suits. Respondents do not engage with these common claims or the common injunction they would warrant. They repeat their refrain that, if the class loses all of its classwide claims, subsequent determinations of TdA membership would be individualized. But as explained, that is a constant feature of Rule 23(b)(2) classes and has never been enough to defeat certification. The Fifth Circuit and Supreme Court regularly affirm such classes. *See, e.g.*, *supra*; *County of Riverside v. McLaughlin*, 500 U.S. 44, 58 (1991) (resolving classwide legal claims even though individuals may have additional claims based on their facts); *Parham v. J. R.*, 442 U.S. 584, 616-17 (1979) (remanding class case for district court to "consider any individual claims" that remained).

Respondents contend that class members vary in whether they are "removable under a different provision of law" unrelated to the Proclamation. Opp. 9. But that is irrelevant to this case. Petitioners are not challenging any Title 8 detention or removal, only the enforcement of the Proclamation. Respondents also repeat their argument that Petitioners' due process notice claim rule is not susceptible to classwide resolution under Rule 23(b)(2). As discussed, in the context of AEA removals, baseline notice requirements do not vary across individuals to such a degree that courts cannot announce a general rule, and the Fifth Circuit has held that Rule 23(b)(2) certification is proper where the class can identify at least one possible remedy that would benefit the whole class. For instance, there is no reason why the court cannot announce a general rule that individuals must be provided notice must be served on class counsel or the immigration attorney, written in a language the individual understands, and a certain number of days in advance of removal—

particularly when there was a historical practice of the government giving all designated alien enemies 30 days' notice during World War II. *See* 10 Fed. Reg. 12189 (Sept. 28, 1945).

Respondents also misread *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021). Opp. 9-10. First, neither case involved a relatively straightforward question of what notice is due for individuals subject to the same policy. Second, the Supreme Court in *Jennings did* decide several common legal issues, on a classwide basis, involving the application of constitutional avoidance to several detention statutes. 583 U.S. at 296-306. Because the Court rejected all those claims, the *only* remaining issue was the individualized claim that required due process balancing of case-specific facts for people detained under different authorities. *Id*. at 312. Similarly, in *Reid*, the First Circuit found class certification inappropriate because it had considered, on a classwide basis, and rejected a brightline rule for when prolonged detention violates due process. *See* 17 F.4th at 5. These cases reflect the proper course here: courts first address the common legal issues on a classwide basis, and only if those fail would individuals litigate whether they are properly designated under the Proclamation on their particular facts.

### IV. The Class Should Be District-Wide

Respondents acknowledge that Petitioners have named all wardens in the Northern District of Texas, but argue that the class should be limited to Bluebonnet Detention Center because the named Petitioners are *currently* there. Opp. 11. However, Respondents cannot deny that they effectively control where people are detained and—but for the Supreme Court's stay on removal for the putative *district-wide* class—there is nothing stopping the government from moving people to a different facility in the District and once again attempting to swiftly remove them. Petitioners need not present specific numbers as to the putative class at *each* detention facility, since the dozens of people detained at Bluebonnet easily satisfy numerosity. The ease with which the

government could evade a facility-specific injunction counsels in favor of a district-wide class. Without one, Respondents could unilaterally defeat class relief simply by moving class members to nearby facilities in this District.

Practical considerations also support a district-wide class. If the class was limited to Bluebonnet, individual habeas petitions from all the other facilities in this District would likely be related before this Court anyway. *See, e.g.*, *W.M.M. v. Trump* (No. 25-cv-59-H, filed Apr. 16, 2025); *H.I.D.R. v. Trump* (No. 25-cv-60-H, filed Apr. 18, 2025). Class procedures are specifically designed to address these circumstances and avoid unnecessary duplicative litigation. *See In re Alien Child. Ed. Litig.*, 501 F. Supp. 544, 553 & n.11 (S.D. Tex. 1980), *aff'd sub nom. Plyler v. Doe*, 457 U.S. 202 (1982) (state-wide class appropriate where multiple actions raised same issue).

While Respondents mention the immediate custodian rule, they cite nothing to suggest that a habeas class needs to have named petitioners in every facility. And the Supreme Court in *J.G.G.* simply held that AEA habeas petitions must be filed in the *district* of confinement. 145 S. Ct. at 1006 (holding "that venue lies in the district of confinement"); *id.* (Kavanaugh, J., concurring) ("The only question is *where* that judicial review should occur."); *id.* at 1012 (Sotomayor, J., dissenting). Moreover, in addition to the AEA class habeas cases discussed above, courts regularly certify district-wide and state-wide class habeas actions. *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (Virginia-wide class of detainees); *Nielsen v. Preap*, 586 U.S. 392, 400-01 (2019) (California-wide and Western District of Washington-wide classes).

V. **The Court Can Certify A Class Under Rule 23 Or in Equity**

The Court can and should certify a class under either Rule 23 or in equity informed by Rule 23 principles. *See* ECF No. 40 at 14-15. Although the Fifth Circuit has not squarely addressed the availability of class habeas, it has on several occasions considered the merits of class habeas cases.

9

*See, e.g.*, *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415 (5th Cir. 1992); *In re Class Action Application for Habeas Corpus on Behalf of All Material Witnesses in W. Dist. of Texas*, 612 F. Supp. 940, 948 (W.D. Tex. 1985). And where a district court dismissed a putative class based on the understanding that each inmate's challenge in that class had to be "considered individually," the Fifth Circuit reversed and remanded, noting that the putative class members "present a single constitutional challenge." *St. Jules v. Savage*, 512 F.2d 881, 882 (5th Cir. 1975) (per curiam).

Respondents cite no authority holding that class habeas is inappropriate in this context, as *Jennings* is not applicable for reasons discussed above. On the other side of the ledger, every circuit court to address this issue has recognized the viability of class habeas. *See* ECF No. 40 at 14-15 (collecting cases); *see also Monk v. Shulkin*, 855 F.3d 1312, 1319 (Fed. Cir. 2017) ("We see no principled reason why the Veterans Court cannot rely on the All Writs Act to aggregate claims[.]"). If people designated under the AEA are forced to litigate their claims on an individual basis under Respondents' notice regime, many, if not most, designees will be deported to a notorious Salvadoran prison before they could seek judicial review. This too weighs in favor of permitting a class to litigate the threshold legal questions under either Rule 23 or in equity. *See, e.g.*, *U.S. ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals, such as many of the class members here, who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf."); *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1126 (2d Cir. 1974) (similar); William B. Rubenstein, Newberg & Rubenstein on Class Actions § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

## CONCLUSION

The Court should grant Petitioners' motion to certify the class.

Case 1:25-cv-00059-H    Document 55    Filed 04/29/25    Page 12 of 13    PageID 454

Dated: April 25, 2025

Respectfully submitted,

/s/ *Brian Klosterboer*

| | |
|---|---|
| Lee Gelernt | Brian Klosterboer |
| Daniel Galindo | TX Bar No. 24107833 |
| Ashley Gorski* | Thomas Buser-Clancy |
| Patrick Toomey* | TX Bar No. 24078344 |
| Sidra Mahfooz* | Savannah Kumar |
| Omar Jadwat* | TX Bar No. 24120098 |
| Hina Shamsi* | Charelle Lett |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | TX Bar No. 24138899 |
| 125 Broad Street, 18th Floor | Ashley Harris |
| New York, NY 10004 | TX Bar No. 24123238 |
| T: (212) 549-2660 | Adriana Piñon |
| E: lgelernt@aclu.org | TX Bar No. 24089768 |
| E: dgalindo@aclu.org | ACLU FOUNDATION OF TEXAS, INC. |
| E: agorski@aclu.org | 1018 Preston St. |
| E: ptoomey@aclu.org | Houston, TX 77002 |
| E: smahfooz@aclu.org | (713) 942-8146 |
| E: ojadwat@aclu.org | bklosterboer@aclutx.org |
| E: hshamsi@aclu.org | tbuser-clancy@aclutx.org |
| | skumar@aclutx.org |
| | clett@aclutx.org |
| Noelle Smith* | aharris@aclutx.org |
| Oscar Sarabia Roman* | apinon@aclutx.org |
| My Khanh Ngo | |
| Cody Wofsy* | |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | |
| 425 California Street, Suite 700 | Attorneys for Petitioners-Plaintiffs |
| San Francisco, CA 94104 | *Pro hac vice applications forthcoming* |
| T: (415) 343-0770 | |
| E: nsmith@aclu.org | |
| E: osarabia@aclu.org | |
| E: mngo@aclu.org | |
| E: cwofsy@aclu.org | |

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

| | |
|---|---|
| Dated: April 29, 2025 | /s/ Brian Kosterboer<br>Brian Klosterboer<br>ACLU FOUNDATION OF TEXAS, INC.<br>1018 Preston St.<br>Houston, TX 77002<br>(713) 942-8146<br>Bklosterboer@aclutx.org<br><br>*Attorney for Petitioners- Plaintiffs* |