UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| W.M.M., on his own behalf and on behalf of all others similarly situated, et al., | |
| Petitioners-Plaintiffs, | |
| v. | No. 1:25-CV-059-H |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Respondents-Defendants. | |

### ORDER

Three diverse petitioners bring this habeas-corpus action, which raises eight distinct claims. The potential remedies vary widely depending on which claims, if any, prevail. Nevertheless, the petitioners ask the Court to certify a class action so they can represent all aliens in custody in the Northern District of Texas "who were, are, or will be" subject to the President's invocation of the Alien Enemies Act. This request relies heavily on the assumption that their first claim, which challenges the President's invocation of the AEA, will prevail. But class certification is not the time to resolve the merits, and the Court cannot presume that this claim will succeed. Rather, the Court must follow Rule 23's mandates when determining whether class certification is appropriate. Here, Rule 23 is not satisfied. The petitioners bring many independent claims driven by individual circumstances, rendering them atypical from potential class members. Moreover, the petitioners' varying circumstances prevent them from satisfying Rule 23(b)(2)'s uniformity-of-relief requirement. Finally, even if the petitioners satisfied Rule 23, or the Court could eschew it in favor of a habeas class under the All Writs Act, the Court would not exercise its discretion to certify a class. Detainees should be able to pursue their own habeas rights through their own arguments and not be swept up in broad challenges that may remain in litigation for a lengthy period. Thus, the Court denies class certification.

Recognizing that time is of the essence to both sides, the Court issues this order to further the litigation, provide clarity to the parties, and permit putative class members to adjust accordingly.  The Court recognizes, of course, that the Supreme Court has granted temporary relief to the putative class pending further order from that Court.  *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1034 (2025).  Thus, the Court stays the effect of this Order pending further action from the Supreme Court.  In the event that the Supreme Court grants the pending petition for a writ of certiorari, this Order is automatically vacated.

1.    **Factual and Procedural Background**

    A.    **Factual Allegations**

        i.    **The President's Proclamation and the Alien Enemies Act**

The AEA provides that "[w]henever there is a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government," then the President may issue a public Proclamation of the event.  50 U.S.C. § 21.  Once the President has made such a Proclamation, "all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, shall be liable to be apprehended, restrained, secured, and removed as alien enemies."  *Id.*  After the President issues such a Proclamation, the courts of the United States having criminal jurisdiction are authorized "after a full examination and hearing on such complaint, and sufficient cause appearing, to order such alien to be removed out of the territory of the United States."  *Id.* § 23.

On March 14, 2025, the President issued such a Proclamation.  *See* 90 Fed. Reg. 13033.  The President proclaimed that the "TdA has engaged in and continues to engage in mass illegal migration to the United States to further its objectives of harming United States citizens, undermining public safety, and supporting the Maduro regime's goal of destabilizing . . . the United States."  *Id.* at 13033.  Further, the President proclaimed that the "TdA is closely aligned with, and indeed has infiltrated, the Maduro regime, including its military and law enforcement apparatus."  *Id.*  The President thus found and declared that the "TdA is perpetrating, attempting, and threatening an invasion or predatory incursion against the territory of the United States."  *Id.* at 13034.  The President thus proclaimed that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies."  *Id.*  The President further found and declared that "all such members of TdA are, by virtue of their membership in that organization, chargeable with actual hostility against the United States and therefore ineligible for the benefits of 50 U.S.C. [§] 22" and are "a danger to the public peace or safety of the United States."  *Id.*

### ii.    The Petitioners

The petitioners are Venezuelan nationals detained at the Bluebonnet Detention Center.  Dkt. No. 38 at 5–7.  A.R.P. is "currently seeking asylum, withholding, and protection under the Convention Against Torture."  *Id.* at 5.  In late March, authorities detained A.R.P., and Immigration and Customs Enforcement (ICE) has accused him of having "tattoos and associates that indicate membership in the Tren de Aragua gang," though he denies any connection to the TdA.  *Id.* at 5–6.  On April 14, 2025, authorities

transferred A.R.P. from a county jail to Bluebonnet.  *Id.* at 6.  A.R.P. believes that he "is at grave risk of being classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador."  *Id.*

W.M.M. arrived in the United States in 2023, "was released on his own recognizance, and subsequently filed an asylum application."  *Id.*  Authorities later arrested W.M.M. for illegal entry into the United States, and the government "alleged that W.M.M. is affiliated with TdA," though W.M.M. denies any connection with the TdA.  *Id.*  A magistrate judge ordered W.M.M.'s release from criminal custody, and U.S. Marshals released W.M.M. into ICE custody.  *Id.*  On April 14, 2025, authorities transferred W.M.M. to Bluebonnet.  *Id.* at 6–7.  Like A.R.P., "W.M.M. is fearful that he will be classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador.  *Id.* at 7.

F.G.M. "has a pending asylum application and no final removal order."  *Id.*  He is currently held at Bluebonnet.  *Id.*  "F.G.M. has said that ICE accused him of being a member of TdA and provided documentation labeling him as such, and as an alien enemy."  *Id.*  F.G.M. did not sign this document, and no authority signed the certificate of service.  Dkt. No. 60.  The respondents now stipulate that F.G.M. received an AEA-designation notice.  Dkt. No. 60.  Although the respondents claim that F.G.M. may be subject to removal under the INA, they leave open the possibility that they may remove him or the other petitioners under the AEA.  *Id.*

### B.    Procedural Background

A.R.P. and W.M.M. filed their joint petition for a writ of habeas corpus on April 16, 2025.  Dkt. No. 1.  They bring eight claims: (1) the Proclamation is ultra vires under the

AEA; (2) the AEA process is inconsistent with Immigration and Nationality Act (INA) procedure; (3) the AEA process prevents detainees from filing for asylum; (4) the AEA process violates the withholding-of-removal statute; (5) the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998; (6) the Proclamation's categorical declaration that every person subject to the Proclamation is chargeable with actual hostility violates the AEA; (7) the Proclamation violates the petitioners' due process rights under the Fifth Amendment; and (8) summary removal violates the petitioners' rights to habeas corpus. Dkt. No. 38 at 18–22.

Contemporaneously with their petition, A.R.P. and W.M.M. moved for a temporary restraining order (Dkt. No. 2) and class certification and appointment of class counsel (Dkt. No. 3). The next day, the Court denied the motion for a temporary restraining order (Dkt. No. 2) and reserved decision on the motion for class certification and appointment of class counsel (Dkt. No. 3). Dkt. No. 27. In the earliest hour of the following day, April 18, 2025, A.R.P. and W.M.M. again moved for a temporary restraining order. Dkt. No. 30. The Court ordered the respondents to respond within 24 hours. Dkt. No. 29.

While the second motion for a temporary restraining order was being considered in the morning and early afternoon of April 18, 2025, Dkt. No. 30, the petitioners moved at 12:48 p.m. CT for an immediate status conference or grant of the second motion. Dkt. No. 34. The motion for a status conference informed the Court that if it did not set a hearing or grant the emergency motion by 1:30 p.m. CT, then A.R.P. and W.M.M. intended to seek emergency relief from the Fifth Circuit. *Id.* at 2. Before the Court could enter an order on the motion for a status conference or resolve the second motion for a temporary restraining order, the petitioners filed a notice of appeal, divesting the Court of jurisdiction over the

matters involved in that appeal.  *See* Dkt. Nos. 36; 41 at 4.  The Court thus denied the motion for a hearing.  Dkt. No. 41.

The same afternoon that the petitioners filed their notice of appeal, they filed an emergency application for an emergency injunction or writ of mandamus, stay of removal, and request for an immediate administrative injunction with the Supreme Court of the United States.  *See A.A.R.P.*, 145 S. Ct. at 1034.  In the earliest hours of Saturday, April 19, 2025, the Fifth Circuit denied as premature the appeal under 28 U.S.C. § 1291(a)(1), concluding that it lacked subject-matter jurisdiction because the petitioner did not give this Court enough time to resolve the second motion for a temporary restraining order.  *See* Dkt. No. 43 at 2.  Almost simultaneously, the Supreme Court issued emergency relief ordering "the government . . . not to remove any member of the putative class of detainees from the United States until further order of" the Supreme Court.  *See A.A.R.P*, 145 S. Ct. at 1034.

The Solicitor General later responded to the petitioners' application.  *A.A.R.P. v. Trump*, No. 24A1007, Response to application from respondents Donald J. Trump, et. al. (Apr. 19. 2025).  In their reply brief, A.R.P. and W.M.M. asked the Supreme Court to construe its application as a petition for a writ of certiorari.  *A.A.R.P. v. Trump*, No. 24A1007, Reply of applicants A.A.R.P., et al. (Apr. 21, 2025).  The Supreme Court has yet to act further on the application.[1]

---

[1] As the Court has previously explained, Dkt. No. 45 at 2, the pending petition for a writ of certiorari does not divest the Court of jurisdiction.  *See, e.g.*, *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 106 n.1 (1st Cir. 2016) ("[T]he mere act of filing a petition for certiorari does not deprive the district court of jurisdiction over the case.") (citing *United States v. Sears*, 411 F.3d 1240, 1241–42 (11th Cir. 2005)); *cf.* Fed. R. App. P. 41(d)(1) ("A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.").

After the Fifth Circuit issued its mandate and the Court obtained jurisdiction over these matters in full once again, the Court entered an order changing the caption in this case to make W.M.M. the listed petitioner and changed A.A.R.P.'s pseudonym to A.R.P.  Dkt. No. 44.

### C.    The Pending Motion

A.R.P. and W.M.M. filed their first motion for class certification on April 16, 2025. Dkt. No. 3.  The petitioners later moved for leave to file an amended motion for class certification with their amended habeas petition that added F.G.M.  *See* Dkt. No. 35.  The Court signed an order granting the motion for leave (Dkt. No. 35) and denying as moot the original motion for class certification (Dkt. No. 3).  However, before the Clerk of Court docketed the order, the petitioners filed their notice of appeal (Dkt. No. 36).  To avoid any confusion as to the operative petition, and to the extent that the Court's previous order granting the motion for leave to file an amended motion for class certification and denying as moot the previous motion for class certification (Dkt. No. 37) is invalid in light of the notice of appeal, the Court again grants the motion for leave to file the amended motion for class certification and appointment of class counsel (Dkt. No. 35) (now docketed at Dkt. No. 39).  The Court also denies as moot the original motion for class certification (Dkt. No. 3).[2]

---

[2] Because a notice of interlocutory appeal deprives the Court only of those issues that are the subject of the appeal, *see Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007), the Court does not believe that it would have been without jurisdiction to grant the other portions of Dkt. No. 35 that sought leave to amend the petition.  But to avoid any confusion, the Court again grants the motion for leave to file the amended habeas petition (Dkt. No. 35) and recognizes the amended petition docketed at Dkt. No. 38 as the operative petition.

The Court now considers the amended motion for class certification and appointment of class counsel (Dkt. No. 39). The petitioners seek to certify the following as a class: "[a]ll noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua' and/or its implementation." Dkt. No. 40 at 2.

The respondents filed their response, Dkt. No. 49, and the petitioners replied, Dkt. No. 55. The motion is thus ripe.

## 2.    Legal Standard for Class Certification

The general rule in litigation is that named parties sue on their own behalf and may represent only their own interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). But Federal Rule of Civil Procedure 23 provides a limited exception, stating that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members." Fed. R. Civ. P. 23(a). There are four prerequisites under Rule 23(a).

The first requirement is numerosity. A class action is appropriate only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has suggested that a class of more than 40 members should raise a presumption that joinder is impracticable, and a class of over 100 members will generally satisfy the requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

The second requirement is commonality. There must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has cautioned courts

not to read this requirement too broadly, as almost any class complaint can raise common questions. *Wal-Mart Stores,* 564 U.S. at 349. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* at 349–50 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)). And the same violation of the same law is insufficient. *Id.* at 350. For commonality, the "claims must depend upon a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The third requirement is typicality. "[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell v. GEICO Adv. Ins.*, 67 F.4th 727, 736 (5th Cir. 2023) (internal quotation marks omitted) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). The "critical inquiry is whether the [named plaintiff's] claims have the same essential characteristics of those of the putative class." *Id.* (brackets in original) (quoting *Stirman*, 280 F.3d at 562). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting *Stirman*, 280 F.3d 562).

The fourth requirement is adequacy of representation. The Court must be assured that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). The proposed "representative[s] must have common interests with the

unnamed members of the class," and "it must appear that the [proposed] representative[s] will vigorously prosecute the interests of the class through qualified counsel." *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973).

The party seeking class certification bears the burden of establishing all of these prerequisites. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). In reviewing a motion for class certification to determine whether these prerequisites are met, the Court must understand and analyze the "relevant claims, defenses, facts, and substantive law presented in the case." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012); *see also Rodriguez v. Countrywise Home Loans, Inc.* (*In re Rodriguez*), 695 F.3d 360, 365 (5th Cir. 2012). Compliance with these rules must be actual, not presumed. *Wal-Mart Stores*, 564 U.S. at 350–51. And the Court must be mindful of the practicalities of trying the particular case as a class action. *See Madison v. Chalmette Refining, LLC*, 637 F.3d 551, 556 (5th Cir. 2011).

If and only if the petitioners satisfy the four prerequisites under Rule 23(a), the petitioners must show that class certification meets one of the requirements laid out in Rule 23(b). *See* Fed. R. Civ. P. 23(b). The petitioners make arguments only as to Rule 23(b)(2). *See* Dkt. Nos. 39 at 1; 40 at 13–14. Rule 23(b)(2) provides that "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"[Rule 23(b)(2)'s] focus on injunctive and declaratory relief presumes a class best described as a homogenous and cohesive group with few conflicting interests among its members." *In re Rodriguez*, 695 F.3d at 365 (brackets in original) (internal quotation marks

omitted) (quoting *Bratcher v. Nat'l Standard Life Ins.* (*In re Monumental Life Ins.*), 654 F.3d 408, 415 (5th Cir. 2004)).  This provision of the rule requires that "(1) the defendant's actions or refusal to act are generally applicable to the class as a whole and (2) injunctive relief predominates over damages sought."  *Id.*

And even if the petitioners meet their burden to show that they meet the standards of Rule 23, "[t]he district court maintains substantial discretion in determining whether to certify a class action."  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). The certification inquiry is fact-driven, and the Court has an "inherent power to manage and control pending litigation."  *Id.*  But the Court must exercise that discretion within the framework of Rule 23, meaning that the Court does not have discretion to certify a class under Rule 23 if the party seeking class certification does not meet the requirements of Rule 23.  *Angell v. GEICO Adv. Ins.*, 67 F.4th 727, 736 (5th Cir. 2023).

The petitioners contend that a plaintiff who satisfies the requirements of Rule 23 has a "categorical right to pursue his claim as a class action."  Dkt. No. 40 at 6 (internal quotation marks omitted) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010)).  To the extent that the petitioners are suggesting that the district court lacks discretion to deny class certification if the petitioners make the requisite showing under Rule 23, the Court rejects this reading of *Shady Grove*.  *Shady Grove* is a case about federal preemption, where the Court struck down a state law that provided requirements for class actions that the Second Circuit had considered substantive and applied in federal court.  *See* 559 U.S. at 397–98.  The Supreme Court held that parties in federal courts have a right to pursue class certification in accordance with Rule 23 and that state laws cannot restrain that right.  *See id.* at 399–400.  *Shady Grove* thus holds that state laws may not limit

what sorts of claims are certifiable, but it does not abrogate the long-recognized discretion of district courts to decide whether to certify a class that is technically certifiable. *See, e.g.*, *Benavides v. Chicago Title Ins.*, 636 F.3d 699, 701 (5th Cir. 2011) (noting the district court's wide discretion in determining whether to certify a class); *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 573 (1995) ("The district court has wide discretion in deciding whether to certify a class action.").

Multiple members of the Supreme Court seem to agree. Justice Thomas in dissent in *TransUnion v. Ramirez*, 594 U.S. 413 (2021), joined by Justices Breyer, Sotomayor, and Kagan, noted, eleven years after *Shady Grove*, his view that "the District Court did not abuse its discretion in certifying the class given the similarities among the claims and defenses at issue." *Id.* at 446 n.1 (Thomas, J., dissenting). And the Fifth Circuit continues to review class certification for abuse of discretion after *Shady Grove*. *See, e.g.*, *Seeligson v. Devon Energy Prod. Co.*, 753 F. App'x 225, 229 (5th Cir. 2018) ("We review a district court's class certification for abuse of discretion."); *Benavides*, 636 F.3d at 701 (noting that the Fifth Circuit "review[s] the denial of class certification for abuse of discretion" and that "the district court has substantial discretion to grant or deny certification"). This conclusion makes sense especially in light of the district court's "inherent power to manage and control pending litigation." *Angell*, 67 F.4th at 736 (quoting *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 20 F.4th 171, 176 (5th Cir. 2021)).

**3.    The Court has jurisdiction to resolve the motion for class certification.**

Before resolving the petitioners' motion for class certification, the Court must determine whether it has jurisdiction to do so. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). The respondents have raised multiple jurisdictional arguments, *see* Dkt. No.

49 at 3–5, and the Court identifies—in accordance with its independent duty to ensure that it has jurisdiction, *see Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)—standing, mootness, and ripeness issues.

In light of the Court's concerns, the Court originally scheduled an evidentiary hearing in this case to determine whether the petitioners had standing to challenge the Proclamation and AEA procedures.  Dkt. No. 50.  The respondents represented to the Court that none of the petitioners had received notice and provided a declaration to that effect.  *See* Dkt. Nos. 49 at 8; 49-1.  The petition, in contrast, stated that F.G.M. had received notice, and the petitioners provided a declaration to support that contention.  Dkt. Nos. 38 at 7; 30-1.  After the Court scheduled a hearing to resolve this factual dispute, the parties stipulated that "a designation notice was prepared and given to FGM," but "[d]ue to a litigation hold, the certificate of service was not executed," and "FGM did not sign the certificate of service on FGM's notice."  Dkt. No. 60 at 1.  The petition does not allege that A.R.P. or W.M.M. have received AEA notice.  *See* Dkt. No. 38 at 5–7.

The respondents also represented to the Court that "the named Petitioners are all currently detained for removal proceedings consistent with the INA under processes and procedures that are not at issue in this case."  Dkt. No. 49 at 8.  The Court thus asked the respondents whether they "have decided not to remove or attempt to remove the named plaintiffs, including F.G.M., under any circumstances, pursuant to the Alien Enemies Act."  Dkt. No. 60 at 1–2.  The respondents informed the Court that they were "not prepared to" make such a representation but could state only that the "named petitioners will not be removed pursuant to the AEA while their habeas petition is pending."  *Id.* at 2.  The Court cancelled the hearing at the parties' request because the stipulations and documentation that

the parties provided gave the Court the necessary information to make these jurisdictional determinations.  Dkt. No. 61.

### A.    The Court must determine whether the named petitioners have standing before resolving the motion for class certification.

There are three required elements of Article III standing: injury in fact, causality, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations omitted) (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.

While "[o]rdinarily, of course, . . . any . . . Article III court must be sure of its own jurisdiction before getting to the merits," the Supreme Court has recognized an exception to this rule.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).  In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that where issues of class certification are dispositive and "logically antecedent to the existence of any Article III issues, it is appropriate to reach them first."  *Id.* at 612.  In *Amchem* and *Ortiz*, the parties were attempting to settle asbestos-related personal-injury cases through a settlement class action, but there was a concern that the "future plaintiffs" included in the settlement lacked standing because they did not yet have an injury in fact.  *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 2.2 (2024).  But because the Court could reject the settlement based on Rule 23 and the concern was with the class rather than the named plaintiffs themselves, the Rule 23 issues were logically antecedent.  *See id.*

– 14 –

Since *Amchem* and *Ortiz*, the Fifth Circuit has made clear that when "it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification." *Flecha*, 946 F.3d at 769.  "After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Id.*  Similarly put, when "the standing question would exist whether [the plaintiff] filed [its] claim alone or as part of a class; certification did not create the jurisdictional issue." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002).  Conversely, where "it is only the unnamed class members who present a standing problem, then" *Amchem* and *Ortiz* apply. *Flecha*, 946 F.3d at 769.  In essence, if rejecting the class under Rule 23 would moot the standing issue, the issues under Rule 23 are logically antecedent. *See id.*

Related to the concept of standing are the doctrines of ripeness and mootness.  The ripeness doctrine states that "[a] case is generally ripe if any remaining questions are purely legal ones; conversely a case is not ripe if further factual development is required." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *New Orleans Pub. Serv., Inc. v. Coun. of City of New Orleans*, 833 F.2d 5836, 587 (5th Cir. 1987)).  And "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Id.* (quoting *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)).  "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . . .'" *Nat'l Park Hosp. Ass'n v. Dep't of Int.*, 538 U.S. 803, 808 (2003).  Conversely, "a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S.

486, 496 (1969) (internal quotation marks omitted).  But "[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy."  *Id.* at 497.

### B.    Assuming the petition's allegations are true, as the Court must at this stage, the named petitioners' claims are ripe.

Because F.G.M. has been given notice, even if neither he nor an authority signed the notice, the contents of that notice show that F.G.M.'s case is ripe.  F.G.M. received a document, with his name written on it, that stated that "[t]he President has found that Tren de Aragua is perpetrating, attempting, or threatening an invasion or predatory incursion against the territory of the United States, and that Tren de Aragua members are thus Alien Enemies removable under" the AEA.  Dkt. No. 60 at 4.  The notice further stated that F.G.M. had been determined to be eligible for removal under the AEA and "shall be apprehended, restrained, and removed from the United States pursuant to this Warrant of Apprehension and Removal."  *Id.*  Though F.G.M. did not sign the notice, and no official signed the certificate of service on the document, *see id.*, the fact that F.G.M. received this document with his name on it—and which stated that he was eligible for and would be facing removal under the AEA—presents clear evidence at this stage that F.G.M. was facing an imminent injury in fact.

But because the petitioners have not alleged that A.R.P. and W.M.M. have received a notice, the Court must consider whether the claims of A.R.P. and W.M.M. are ripe. Although A.R.P. and W.M.M. have not alleged that they have received any notice of the sort that F.G.M. received, the Court concludes that A.R.P. and W.M.M. have met their burden to show an imminent injury in fact at this stage.  The petition states that "officers at Bluebonnet have issued notices to many men" saying that they are removable under the

AEA. Dkt. No. 38 at 4. And their particular allegations specific to A.R.P. and W.M.M. also support this inference. According to the petition, "ICE has accused [A.R.P.] of having 'tattoos and associates that indicate membership in the Tren de Aragua gang' in an I-213." *Id.* at 6. Thus, the petition alleges, A.R.P. "is at grave risk of being classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador." *Id.* at 6. These allegations support an inference that, like the others around him, A.R.P. is at imminent risk of being removed under the AEA or provided allegedly insufficient process.

The petition makes similar allegations regarding W.M.M. The petition states that authorities arrested W.M.M. for illegal entry into the United States, and at "his hearing on the warrant, the government alleged that W.M.M. is affiliated with TdA" and that "W.M.M. was arrested at a residence where an alleged TdA associate was present." *Id.* Like A.R.P., "W.M.M. was abruptly transferred along with several other Venezuelans to the Bluebonnet Detention Center, where he is now currently detained with Venezuelans transferred from other facilities." *Id.* at 6–7. "W.M.M. is fearful that he will be classified as an alien enemy under the Aliens Enemy Act and summarily deported under the Proclamation to El Salvador." *Id.* at 7.

Again, the respondents say that A.R.P. and W.M.M. are currently being held pursuant to the INA and have not been given notice under the AEA, Dkt. No. 49 at 8, but the respondents' declaration does not refute the specific factual allegations in the petition, *see* Dkt. No. 49-1. And the declaration suggests that the AEA process stopped only due to a litigation hold. Dkt. No. 60 at 1.

At this stage in the proceedings and without any evidence to rebut the petition and its supporting evidence, the Court concludes that A.R.P. and W.M.M. have met their burden to show that they are at imminent risk of being given notice of removal under the AEA and being denied what they contend to be sufficient due process. *See Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). It is a reasonable inference from the statements and factual allegations in the petition at this stage to conclude that A.R.P. and W.M.M. will imminently, but for the various stays and litigation holds in these proceedings, be given notice of removal under the AEA under a procedure that they allege violates their due-process rights.

### C. The respondents' representations that the named petitioners are currently being held under the INA do not moot the case.

Since the respondents have now stated in their briefing that the petitioners are being held pursuant to the INA, not the AEA, Dkt. No. 49 at 8, the Court must also decide whether the petitioners' claims are moot. Because the respondents' declaration does not verify this assertion, the Court accepts as true the well-pled allegations in the petition. Dkt. No. 49-1. When a defendant presents evidence in the form of declarations that attack a party's standing to sue, the party with the burden to show standing "must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom., Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990)). But here the respondents

presented no evidence at this stage to suggest that they will not remove F.G.M. or the other petitioners under the AEA, so the heightened standard does not apply to the petitioners.

Moreover, an exception to mootness is the voluntary cessation doctrine. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). The party asserting mootness ordinarily bears a heavy burden to show that the case is moot when its voluntary cessation arguably caused the mootness, though courts are justified in giving the government some solicitude based on voluntary governmental cessation. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009).

Here, even giving solicitude to the respondents, the Court cannot conclude at this stage that the case is moot in light of the totality of the respondents' representations. For voluntary cessation to moot a case, it normally must be absolutely clear that the injury cannot reasonably be expected to recur. *Id.* In this case, the respondents say only that the petitioners are "currently" being detained for removal under the INA, Dkt. No. 49 at 8, and their representation is that an official did not execute the notice to F.G.M. because of a "litigation hold," Dkt. No. 60 at 1. Further, the respondents could not represent to the Court that they would not remove the petitioners under the AEA. *See id.* at 2. These representations show that, at this stage in the proceedings, the respondents have not shown that the injury cannot reasonably be expected to recur. There has been no permanent change in policy or unequivocal representation of a change that would render the case moot, such as in *Sossamon* when a governmental entity revised a policy. 560 F.3d at 325. The Court therefore concludes that, at this stage in the proceedings, the petitioners' claims are not moot.

**D.    The Court need not resolve the respondents' jurisdictional challenges at this stage in the proceedings.**

The Court now turns to the respondents' jurisdictional challenges.  There is no doubt that the Court has subject-matter jurisdiction over this case because it is a habeas petition, and the United States is a defendant.  *See* 28 U.S.C. §§ 1346, 2241 *et seq.*  But the respondents argue that the Court lacks jurisdiction to review certain issues and claims in this case.  Dkt. Nos. 19 at 13–19; 49 at 3–5.

Even assuming without deciding that the respondents are correct that certain aspects of the Proclamation are unreviewable, that would not deprive the Court of subject-matter jurisdiction over these claims, and it does not mean that the petitioners lack standing to bring those claims.  A nonjusticiable claim is not the same as a claim over which the Court lacks jurisdiction.  *See Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (Ginsburg, J., concurring) (citing *Joo v. Japan*, 413 F.3d 45, 48 (2005)).  Thus, "[t]hat a plaintiff makes a claim that is not justiciable because committed to executive discretion does not mean that the court lacks subject[-]matter jurisdiction." *Id.* at 527.  Instead, when faced with a nonjusticiable claim, a court "should dismiss the case for failure to state a claim." *Id.*  If the respondents are correct that the Court cannot review certain aspects of the Proclamation, then the petitioners may lose on the merits of those related claims, but the Court still possesses jurisdiction over the case and thus does not have to reach these questions before deciding whether to certify a class action.

Further, the respondents' arguments pertaining to this Court's ability to review certain aspects of the case do not deprive the Court of jurisdiction over the case as a whole.  For example, the Court would still have jurisdiction to review the relationship between the AEA and the INA.  And several of the petitioners' claims relate to that relationship, rather

than the President's Proclamation.  The petitioners' second claim, for example, asserts that the INA sets the exclusive procedure and statutory protections for any removals, including those authorized under the AEA.  *See* Dkt. No. 38 at 19.  Whether INA procedures apply to removals under the AEA requires no consideration of the President's Proclamation, such as whether there is an invasion or predatory incursion or whether such invasion or predatory incursion is done by a foreign nation or government.  *See* 50 U.S.C. § 21.  Similarly, the third claim alleges that the AEA process violates the INA's procedures for applying for asylum.  *See* Dkt. No. 38 at 20.  And the fifth claim for relief asserts that the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998, which "prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture."  *Id.* at 20–21; *see* 8 U.S.C. § 1231.[3]

The Court therefore concludes that it is not necessary at this stage to decide the respondents' jurisdictional arguments because resolving them in favor of the respondents would not result in dismissal of the entire case.  Therefore, it cannot be said that the Court has no jurisdiction at all to certify a class.  And because the Court declines to certify a class on the basis of Rule 23 and the Court's own discretion, the Court is not exercising jurisdiction in any form that is inconsistent with precedent.  *See, e.g.*, *Flecha*, 946 F.3d at 769.  The Court thus continues to its analysis under Rule 23.

---

[3] These three claims may not be the only ones that survive if the respondents were correct that the Court lacks jurisdiction over the issues and claims that it alleges.  *See* Dkt. No. 49.  But the Court provides these examples to show that the respondents' jurisdictional challenges, even if correct, are not dispositive to the entire case and do not prevent the Court from resolving the motion for class certification.

4.    **The Court denies class certification.**[4]

    A.    **Jurists dispute whether class actions are ever appropriate for habeas petitions, but the Court need not resolve that broad question.**

As a preliminary matter, the Court recognizes that there is a significant question whether class certification is ever appropriate for habeas proceedings.  To be sure, some circuits have held that class actions in habeas are permissible, though none are binding on this Court.  Dkt. No. 55 at 11 (collecting cases).  But recent writings have shed doubt on this proposition.  Judge Walker noted in his dissent in *J.G.G. v. Trump*, 2025 WL 914682 (D.C. Cir. 2025), that the government had not conceded that the plaintiffs could certify a habeas class.  *Id.* at *39 (Walker, J., dissenting).  Judge Walker further proposed that class action is perhaps a poor vehicle for the more individualized challenges, such as whether a petitioner is a member of the TdA.  *Id.* at *35 n.34.  Justice Alito made a similar observation in his dissent to the Supreme Court's order in this very case.  *See A.A.R.P.*, 145 S. Ct. at 1036 (noting that the Supreme "Court has never held that class relief may be sought in a habeas proceeding").

Moreover, Justice Thomas recently noted that the Supreme Court "has never addressed whether habeas relief can be pursued in a class action."  *Jennings v. Rodriguez*, 583 U.S. 281, 324 (2018) (Thomas, J., concurring).  The Fifth Circuit has similarly yet to resolve on this question.  *See St. Jules v. Savage*, 512 F.2d 881, 882 n.2 (5th Cir. 1975) (noting that the

---

[4] As this petition, like the many cases around the country, raises numerous questions of first impression, the Court notes that many questions remain unanswered, such as what exactly is reviewable, what relief is available in a habeas petition of this nature, and which questions this Court will decide.  The Court assumes for the purpose of deciding this motion alone the answers to some of these questions.  Specifically, the Court assumes without deciding at this stage that a permanent injunction and a declaratory judgment are available remedies in habeas and that the Court is the proper body to decide some of these questions rather than an immigration judge or an administrative body that the Attorney General designates.

court's remand was "not to be taken as expressing any view as to the merits of any individual claim or the propriety of the [habeas] class action").

The Court need not decide this broad issue because it can resolve the pending motion on much narrower grounds. For the reasons explained below, class certification is not appropriate in this case, even assuming without deciding that class certification could be appropriate in a habeas proceeding.

**B. Even if class certification is available in habeas, it is not justified here.**

    **i. W.M.M., A.R.P., and F.G.M.'s amended petition seeks individualized habeas relief.**

Determining whether class certification is appropriate here depends on the nature of this case, the claims asserted, and the relief requested. On their face, many of the petitioners' claims and requests for relief seek only the opportunity to make certain arguments, alleging that the AEA process deprives them of an opportunity to make such arguments and claims. *See* Dkt. No. 38 at 18–23. For example, the third claim for relief concerns the process of applying for asylum and alleges that the current AEA process prevents putative class members from applying for asylum. *Id.* at 19–20. Similarly, the fourth claim for relief provides that the AEA process "does not provide adequate safeguards to ensure that Petitioners and the class are not returned to a country where it is more likely than not that they would face persecution." *Id.* The fifth claim for relief makes a similar procedural argument, *id.* at 20–21, as does the sixth and seventh, *id.* at 20–22. While the named petitioners do mention that they have pending asylum petitions, *id.* at 5–7, the petition does not particularly state that the petitioners are challenging their potential removal on the grounds that they would face persecution for similar reasons or make similar challenges that the petition alleges cannot be asserted under the current AEA process. The

Court must preliminarily determine whether the petition fairly includes such individualized claims before deciding whether to certify a class.

For multiple reasons, the Court understands the petitioners to assert, in addition to their structural and procedural arguments, individualized habeas claims. First, the Supreme Court has made clear that the core of these actions is habeas. *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025). And it is widely recognized that habeas actions are highly individualized. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008). This action is not an APA suit or general civil suit to *effectuate* habeas. And the petition in this case recognizes this reality. The eighth claim for relief alleges a violation of habeas corpus rights and seeks a writ of habeas corpus, though the petitioners call it "a writ of habeas corpus to Petitioners and the Petitioner Class that enjoins Respondents from removing them pursuant to the Proclamation." Dkt. No. 38 at 22–23. To be sure, the petition also includes a request "for such further relief as the Court deems just, equitable, and appropriate," but that catch-all request does not make the suit any less individualized. *Id.* at 23.

Second, if the Court were to construe the petition as not bringing the actual, individual challenges that the petitioners allegedly lack sufficient notice and process, then they would likely not have standing to make these due-process arguments. The technical language of their claims is procedural, and "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). If the petitioners are right that they are deprived the opportunity to challenge their removal on these grounds, but they have no intention of pursuing those claims, then they

– 24 –

are at no risk of an injury in fact. And in light of the Supreme Court's instructions, *J.G.G.*, 145 S. Ct. at 1005–06, this proceeding is where they must challenge their removal.

Third, serious adverse consequences could result to the petitioners if the Court construed the claims as not individualized. In light of the fact that the core of this case is a habeas petition and not a traditional civil suit, and the fact that a petition need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, the Court construes the petition as the petitioners' request to challenge their removal based on the grounds that they may face persecution, that they are not eligible for removal under the AEA because they are not members of TdA, and the other individualized claims that the petitioners are seeking. The Court does this for the petitioners' benefit. Since this is a habeas petition, the petitioners have an obligation to bring all of their claims in one proceeding—this one. *See Infra* Analysis § 4.B.iv. There is no bifurcation of proceedings where the petitioner may bring broad claims about AEA procedure and then file another habeas petition to challenge the merits of his removal under the AEA. Were the petitioners not to bring these claims regarding the merits of their personal removal, they would be at serious risk of waiving them under the doctrine of collateral estoppel because they could have brought these claims in the instant habeas petition.

Finally, the petitioners' allegations are individualized and assert claims unique to the petitioners. The petitioners seek habeas relief and make plain statements of fact that suggest that the petitioners are making individualized challenges to seek relief based on facts specific to each petitioner. For example, W.M.M. asserts that he "fled Venezuela after the Venezuelan military harassed and assaulted him because they believed that he did not support the Maduro regime." Dkt. No. 38 at 6. Further, the petition includes a request for

relief to enjoin the respondents from removing the petitioners pursuant to the Proclamation, which can fairly be interpreted as reaching the merits of their habeas claims. These statements, combined with the nature of the petition and the claims and requests for relief, lead the Court when construing the petition as a whole to interpret the petition in this manner. The Court thus analyzes the class petition under this framework. And if it did not, then the Court would be forced to dismiss many of the claims for lack of standing and still deny the motion for class certification because the failure to pursue these claims could have tremendous and devastating impacts on the putative class members. *See infra* Analysis § 4.B.iv. Thus, although many of the claims and requested relief appear on their face to be broad, procedural arguments that may be appropriate for classwide resolution, the Court cannot ignore the fact that this case is a habeas case and not a civil case under the APA to effectuate their ability to seek habeas relief.

### ii. Class certification must fail because the named petitioners are not typical of the claims or defenses of the class.

The Court finds that the putative class representatives in this case are not sufficiently typical of the putative class members. "[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell*, 67 F.4th at 736 (internal quotation marks omitted) (quoting *Stirman*, 280 F.3d at 562). The "critical inquiry is whether the [named petitioners'] claims have the same essential characteristics of those of the putative class." *Id.* (brackets original) (quoting *Stirman*, 280 F.3d at 562). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting *Stirman*, 280 F.3d at 562).

Here, the petitioners cannot meet this standard because they bring many independent claims that individual circumstances will drive. Ignoring this reality, the petitioners focus almost exclusively on their first claim that the Proclamation is invalid. But the Court cannot assume that this argument will prevail and ignore the several additional claims. And those claims are highly individualized and would prove unworkable as a class due to atypicality.

Specifically, there are numerous meaningful differences between the petitioners and the putative class. First, while the three petitioners have filed asylum applications, *see* Dkt. No. 38 at 5–6, the Court has no way of knowing how many putative class members have pending asylum applications or intend to file asylum applications. This distinction is material. If the petitioners do not prevail on their first claim regarding the President's Proclamation, *see id.* at 18–19, but do prevail on their third claim for relief regarding the application of the INA's asylum provisions, then the due process required for members of the class would differ depending on whether the member of the putative class seeks to file or has already filed an asylum application. In other words, while those putative class members who have filed asylum applications would share the same legal theory as to why the Proclamation is invalid as applied to them, only some members of the class—right now, an unknown portion—would be able to assert such a theory. A petitioner's claim asserting that his asylum application protects him from removal under the AEA is not typical of a member of the putative class who cannot assert that legal theory. *See Angell*, 67 F.4th at 736. Thus, the fact that not all putative class members have filed asylum applications and may choose not to file such applications creates meaningful atypicality.

Other claims in the petition are also necessarily fact-specific regardless of the petitioners' legal theory. And while "factual differences will not defeat typicality," *Stirman*, 280 F.3d at 562, these factual differences are fatal to typicality because they render the remedial theory distinct for all but one claim. For example, if the Court were to agree with the petitioners on their fourth claim that they are entitled to seek withholding under the INA because they are "more likely than not [to] . . . face persecution" where they are to be removed, then individual analysis would be paramount, and no one petitioner could be meaningfully typical with another. Dkt. No. 38 at 20. Such analysis would require a fact-intensive determination as to whether each member of the putative class could be removed depending on the individual claims and circumstances, including the country to which he would be removed. *See Manjee v. Holder*, 544 F. App'x 571, 575 (5th Cir. 2013) ("Whether a petition has shown eligibility for withholding of removal is a factual determination.") (citing *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)). As a result, these factual differences mean that the named petitioners and putative class members do not share the same "essential characteristics." *Stirman*, 280 F.3d at 562.

The petitioners' fifth claim results in similar atypicality. That claim alleges that the AEA process violates the Foreign Affairs Reform and Restructuring Act of 1998 because that Act "prohibits the government from returning a noncitizen to a country where it is more likely than not that he would face torture." Dkt. No. 38 at 20–21. Should the petitioners prevail on this claim, the Court would then have to consider whether it is more likely than not that each petitioner would face torture. These questions are necessarily fact-intensive. W.M.M., for example, asserts that he "fled Venezuela after the Venezuelan military harassed and assaulted him because they believed that he did not support the

Maduro regime." *Id.* at 6.  Situations like this will be particular to each petitioner, and the Court would have to assess individually the potential for torture.  No named petitioner can be meaningfully typical to the putative class members when each petitioner's story is likely unique.

The petitioners' sixth claim for relief likewise shows the individualized nature of habeas and these proceedings.  The sixth claim states that the AEA process is ultra vires because it categorically declares that all persons subject to the Proclamation are chargeable with actual hostility or other crime against public safety.  Dkt. No. 38 at 21.  If the petitioners prevail on this claim, then the Court will have to decide whether each individual member of the putative class is chargeable with actual hostility or other crime against the public safety.  *Id.*; *see* 50 U.S.C. § 22.  As the petitioners suggest, this approach would require "individualized assessments."  Dkt. No. 38 at 21.  It may very well be possible that some but not all of the putative class members are properly chargeable with actual hostility or other crime against the public safety.  When conducting these individualized assessments, factual differences between the parties will be paramount.  The Court will have to determine based on evidence that the respondents present whether each individual is chargeable with such offenses.

Similarly, the petitioners' seventh claim bolsters the Court's conclusion.  The seventh claim is for a violation of due process under the Fifth Amendment.  Dkt. No. 21–22.  But each petitioner, with perhaps different pending immigration or criminal proceedings, may need different relief to effectuate due process.  The named petitioners alone are meaningfully distinct on this matter.  A.R.P. currently has claims outside of this Court where he "is currently seeking asylum, withholding, and protecting under the Convention

– 29 –

Against Torture." *Id.* at 5. W.M.M. has criminal proceedings pending for illegal entry into the United States. *Id.* at 6. Other putative class members may have Temporary Protected Status. *See infra* Analysis § 4.B.iii. Some, like the petitioners, may already have counsel. *See generally* Dkt. No. 38. Others do not. *See* Dkt. No. 40 at 14. And it must be emphasized that "[t]he process sufficient to satisfy the due process requirement depends on the facts and circumstances of an individual case." *Robison v. Wichita Falls & N. Tex. Cmty. Action Corp.*, 507 F.2d 245 (5th Cir. 1975). Simply declaring that due process has been violated is only the beginning of the inquiry, not the end. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). And "interpretation and application of the Due Process Clause are intensely practical matters[;] . . . the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Goss v. Lopez*, 419 U.S. 565, 577 (1975) (cleaned up) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Certain individuals or classes of individuals may be entitled to more process than others in light of their circumstances.

The First Circuit's opinion in *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021), supports this conclusion. In that case, the district court certified a "class of noncitizens who have been detained by . . . [ICE] pursuant to 8 U.S.C. § 1226(c) for more than six months without a bond hearing." *Id.* at 4. The court determined that since "six months of detention did not on its own necessarily trigger a constitutional right to a reasonableness hearing or bond hearing" for certain persons, "any such relief must be adjudicated on an individual basis." *Id.* at 9. Because of the individual analysis necessary, the court concluded that there was no authority to support "using a properly certified class as a bootstrap to adjudicate, on a

class-wide basis, claims that hinge on the individual circumstances of each class member." *Id.* at 11.  The court thus reversed the relief that the district court granted for those claims that hinged on the individual circumstances of each class member.  *Id.* at 12.  This reasoning shows that similar treatment—being detained and awaiting a hearing in accordance with due process—is insufficient to support class-wide adjudication because what process is actually due is individualized.[5]

And the eighth claim—violation of habeas corpus—may present the most individualized claims in this case where there will likely be no meaningful similarity among class members.  If the petitioners do not prevail on their first claim, then the Court will have to determine for each petitioner whether they are "Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States."  90 Fed. Reg. at 13034. The petition shows that the respondents have different evidence and theories for why each petitioner is a member of TdA, and the respondents will need to present particularized evidence for each detainee to determine their citizenship, age, and affiliation with the TdA. *See* Dkt. No. 38 at 5–7.  No petitioner is typical for these highly individualized arguments, yet these arguments may very well turn out to be dispositive.  And as the Supreme Court has explained, habeas is the core of these proceedings, so it would be unusual to permit atypical petitioners to seek classwide representation.  *See J.G.G.*, 145 S. Ct. at 1005.

The Supreme Court's decision in *Falcon* is instructive here.  In that case, the named plaintiff worked for the petitioners and was refused multiple promotions.  *Falcon*, 457 U.S.

---

[5] The district court had certified the class under Rule 23(b)(2).  *Reid*, 17 F.4th at 10.  The reasoning in that case thus supports the Court's conclusion as to the Rule 23(b)(2) requirements as well as typicality.

at 149.  The named plaintiff alleged that the defendant passed him "over for promotion
because of his national origin and that [the defendant's] promotion policy operated against
Mexican-Americans as a class."  *Id.*  He brought suit under this theory under Federal Rule
of Civil Procedure 23(b)(2) on behalf of a class of other persons similarly situated.  *Id.* at
150.  The putative class was comprised of Mexican-Americans who were or may be
employed by the defendant and who had or would continue to be adversely affected by the
defendant's practices.  *Id.* at 150–51.  The district court held a trial on the liability issues and
entered separate findings of fact and conclusions of law for the named plaintiff and the class.
*Id.* at 152.

　　　　The Supreme Court held that class certification was inappropriate.  *Id.* at 161.  The
Supreme Court explained that "suits alleging racial or ethnic discrimination are often by
their very nature class suits, involving classwide wrongs" and that typicality was typically
present.  *Id.* at 157 (internal quotation marks omitted) (quoting *E. Tex. Motor Freight Sys., Inc.*
*v. Rodriguez*, 431 U.S. 395, 405 (1977)).  But nonetheless, the Supreme Court explained,
"careful attention to the requirements of [Rule] 23 remains nonetheless indispensable."  *Id.*
(internal quotation marks omitted) (quoting *E. Tex. Motor Freight Sys.*, 431 U.S. at 405).  The
Supreme Court noted that "there is a wide gap between (a) an individual's claim that he has
been denied a promotion on discriminatory grounds . . . and (b) the existence of a class of
persons who have suffered the same injury as that individual, such that . . . the individual's
claim will be typical of the class claims."  *Id.*  To bridge that gap, the named petitioner
needed to justify additional inferences.  *Id.*

　　　　*Falcon* thus makes clear that the allegation of similar treatment is insufficient to
establish typicality.  The injuries themselves must also be typical.  *Id.* at 156–57.  And the

Court must pay "careful attention" to this requirement.  *Id.* at 157 (quoting *E. Tex. Motor Freight Sys.*, 431 U.S. at 405).  As the above analysis shows, the injuries here vary wildly between the petitioners themselves and between the petitioners and the putative class members.

Thus, the fact that the named petitioners and the class may be denied due process in the abstract is insufficient to create meaningful typicality when due process is by its very nature individualized.  It thus cannot be said that there is typicality among the named petitioners themselves or among the named petitioners and the putative class members because they lack the same essential characteristics.[6]

### iii. Class certification here does not meet the requirements of Rule 23(b)(2).

Even if the petitioners had met their burden to satisfy Rule 23(a)'s requirements, class certification remains inappropriate because they fail to meet the requirements of Rule 23(b)(2).  Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Supreme Court has explained that "Rule 23(b)(2) applies only when a single injunction or a declaratory judgment would provide relief to each member of the class."  *Wal-Mart Stores, Inc.*, 564 U.S. at 360.  It "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory

---

[6] As the Supreme Court has recognized, the commonality and typicality requirements of Rule 23(a) "tend to merge." *Wal-Mart Stores*, 465 U.S. at 349 n.5.  While the Court does not independently assess the commonality requirement in this Order, the Court notes that for the same reasons that the named petitioners are not typical, the lack of essential characteristics similarly undermines the petitioners' contention that their claims are common.

judgment against the defendant." *Id.* Here, the petitioners fail to meet this requirement
because declaratory relief may not be appropriate for the class as a whole.

The Court first notes what is not relevant to its analysis. The petitioners sought class
certification and appointment of class counsel in tandem with their first emergency motion
for a temporary restraining order. They did so in an effort to prevent the respondents from
removing all members of the class, perhaps especially those who had not filed habeas
petitions. *See* Dkt. Nos. 2; 3. A temporary restraining order or a preliminary injunction is
neither "final injunctive relief [n]or corresponding declaratory relief." *See* Fed. R. Civ. P.
23(b)(2). Because Rule 23(b)(2) focuses on these two forms of relief, both final, the Court
cannot and does not consider any efficiencies or justifications that relate only to
preliminary, temporary relief. Class certification is a tool to promote the efficiency and
economy of litigation throughout the entire litigation, and the Court must be satisfied that
the certification of a class is appropriate for the entire litigation, not just because it may be
an effective or useful tool for preliminary relief. *See, e.g.*, *Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345, 349 (1983) (noting that "the principal purpose of the class action procedure"
is the "promotion of efficiency and economy of litigation"); *Madison*, 637 F.3d at 556
(explaining that the Court must be mindful of the practicalities of trying the particular case
as a class action).

Next, the fact that the petitioners are seeking individualized habeas relief, Dkt. No.
38 at 28–29, makes certification under Rule 23(b)(2) inappropriate. As the Supreme Court
explained in *Wal-Mart Stores*, "[p]ermitting the combination of individualized and classwide
relief in a (b)(2) class is . . . inconsistent with the structure of Rule 23(b)." 564 U.S. at 361.
"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide

relief to each member of the class," and "[i]t does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* at 360.  Rule 23(b)(2) focuses on final injunctions and declaratory judgments, not other forms of relief that are individualized.

Here, cases challenging AEA removal sound in habeas.  *J.G.G.*, 145 S. Ct. at 1005. And the specific form of habeas relief may be different for different petitioners.  Some petitioners, like A.R.P., may not be entitled to a writ of habeas ordering their complete release if they are also detained pursuant to other provisions of law.  *See* Dkt. No. 38 at 5–6. Other petitioners may not have been in custody pending other removal proceedings, perhaps by discretion of a court or perhaps by operation of law.  For example, there may be putative class members who assert that they are entitled to a writ of habeas corpus to release them from custody because of temporary protected status.  *See* 8 U.S.C. § 1254a ("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States.").  If AEA detention is detention "on the basis of the alien's immigration status" and such a detainee were to prevail on the merits, then that writ of habeas corpus would be different than the writ provided to the named petitioners.  As the Supreme Court explained in *J.G.G.*, "immediate physical release [is not] the only remedy under the federal writ of habeas corpus."  145 S. Ct. at 1005 (brackets in original) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)).

Further, the scope of the class is overbroad.  It includes individuals across the Northern District of Texas, which encompasses various facilities in which the detainees reside.  Dkt. No. 39 at 1.  But the proper respondent in a habeas petition is the person with

custody over the petitioner. 28 U.S.C. § 2422. There is only one person with custody over a petitioner at a time, the immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The petitioners here list administrators and wardens from four different facilities. *See* Dkt. No. 38 at 1. Under the immediate-custodian rule, the Court would thus have to fashion individual writs of habeas corpus for the putative class members or, assuming without deciding that the Court has the power to do so, issue writs to subgroups. The petitioners do not seem to contest that the remedy of a writ of habeas corpus would need to be against the proper respondent. *See* Dkt. No. 55 at 9–10. They cite two cases from the Supreme Court involving broader habeas classes, but neither case involved the question of whether such certification was proper. *See id.* at 10 (first citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021); then *Nielson v. Preap*, 586 U.S. 392, 400–01 (2019)). And the Supreme Court has not resolved this question. *See A.A.R.P.*, 145 S. Ct. at 1036 (Alito, J., dissenting). In light of the immediate-custodian rule, it cannot be said that a single remedy would be appropriate for the class as Rule 23(b)(2) requires. *See Wal-Mart Stores, Inc.*, 564 U.S. at 360.

And the fact that, like injunctions and declaratory judgments, habeas is an equitable remedy, *Schlup v. Delo*, 513 U.S. 298, 319 (1995), does not mean that it may be neatly folded into a Rule 23(b)(2) petition. In *Wal-Mart Stores*, the additional remedy sought was also equitable in nature—backpay—but the Supreme Court still held that the requested individualized relief made the case improper for a Rule 23(b)(2) class. 564 U.S. at 365. And while the Supreme Court may have left open the possibility for incidental individual relief to be consistent with a Rule 23(b)(2) class, *see id.* at 365–66, this potential exception

would not apply here.  Habeas relief is not incidental in this case.  It is the core of this case.
*See J.G.G.*, 145 S. Ct. at 1005–06.

Moreover, given the many claims asserted, a single injunction or declaratory
judgment may not be appropriate here.  Of course, the first claim—that the Proclamation is
ultra vires because there is neither a "declared war" nor a "perpetrated, attempted, or
threatened invasion or predatory incursion against the . . . United States by a foreign nation
or government," Dkt. No. 38 at 18 (internal quotation marks omitted) (quoting 50 U.S.C.
§ 21)—may render classwide relief appropriate, but that is only one of many possibilities.
As the Court previously explained, many of the other potential outcomes in this case would
require individualized determinations and relief.  *See supra* Analysis § 4.B.ii.

The petitioners' sixth claim for relief, for example, demonstrates the individualized
nature of habeas and these proceedings.  The sixth claim states that the AEA process is ultra
vires because it categorically declares that all persons subject to the Proclamation are
chargeable with actual hostility or other crime against public safety.  Dkt. No. 38 at 21.  If
the petitioners prevail on the merits of this claim, then the Court will have to decide whether
each individual class member is chargeable with actual hostility or other crime against the
public safety.  *Id.*; *see* 50 U.S.C. § 22.  Individualized determinations would require different
relief and due process because only those not so chargeable would be "allowed the full time
by treaty to depart or a reasonable time in which to settle their affairs before departing."
Dkt. No. 38 at 21.  For those given time to depart or settle their affairs, they may be entitled
to a longer injunction, a habeas writ to release them from custody, or a writ that delays any
removal.  Thus, this claim highlights why, were the petitioners to prevail on this claim, the
Court would have to undergo individualized assessments and grant individualized relief.

In light of the diverse questions that the Court may need to decide and the real potential for varying types of procedures and opportunities for each petitioner, the Court likewise finds that it would be inappropriate to certify a class relating to the seventh claim—violation of due process under the Fifth Amendment. *See* Dkt. No. 38 at 22. The Supreme Court has repeatedly stressed that due process is flexible and "calls for such procedural protections as the particular situation demands." *See Jennings*, 583 U.S. at 314 (quoting *Morrissey*, 480 U.S. at 481); *see also Landon v. Plascencia*, 459 U.S. 32, 34 (1982). There are numerous claims in this case. Some are broad and would likely result in the same relief to all class members if the petitioners prevail on the merits, such as the first claim. *See* Dkt. No. 38 at 18; 50 U.S.C. § 21. But many of the other claims, if successful on the merits, may result in different procedures and protections, and thus different remedies.

The potentially individualized nature of these habeas claims shows that the motion for class certification does not meet "[t]he key to the (b)(2) class"—"the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360. This "key" applies in situations where, unlike those present here, the party against the class is acting in a way that is so structural or otherwise broad as to require single injunctive or declaratory relief if there is to be any effective relief, such as racial segregation. *See Wal-Mart Stores*, 564 U.S. at 361. Perhaps the respondents' conduct is unlawful as to all putative class members, such as if the petitioners are correct that the Proclamation is ultra vires. *See* Dkt. No. 38 at 18–19. But if the petitioners lose on the merits of that claim, then relief may be appropriate only to some members of the class. But the Court cannot say that the same relief is appropriate for every putative class member, and the Court could grant individual relief to particular petitioners.

Again, due process is individualized, *see Jennings*, 583 U.S. at 314, and there is no reason that the Court must grant relief to all or none.

In addition, injunctive and declaratory relief may make sense only insofar as the petitioners may prevail on their broad claims. In some cases, if the petitioners lose on the merits, then there may be few to no issues left to be resolved—the Court would enter judgment against the class members, and the case would come to a close. Here, however, if the petitioners do not prevail on the merits of the first claim, then there is much more to do. *See supra* Analysis § 4.B.ii; *infra* Analysis § 4.B.iv. And even after resolving the broad claims in the petition, the Court must decide the habeas petitions themselves, and whether a habeas writ is appropriate may turn on whether a petitioner is over the age of fourteen, not a naturalized citizen, and a member of the TdA. *See* 50 U.S.C. § 21. Classwide relief would not be appropriate for such individualized, fact-specific determinations. And either these fact-specific claims are part of the petition, and the Court must resolve them, or the petitioners are not challenging these facts, which will make them atypical with the putative class members and could cause grave harm to the unnamed class members, *see infra* Analysis § 4.B.iv.

Finally, the Court notes that the petitioners seek broad relief, such as an injunction enjoining respondents "from applying the Proclamation to Petitioners and the Petitioner Class without providing 30-day notice and an opportunity to respond to the designation prior to the removal date." Dkt. No. 38 at 23 (but not against the President, *see id.* at 18). But as a district court charged with the important, but limited, responsibility of resolving disputes between the parties before it, the Court is not a lawmaker or an administrative agency. It does not codify brightline rules for large swaths of people. The Court's role in

the separation of powers is limited to deciding issues between parties.  *See* U.S. Const. Art. III.  And although the Court may grant injunctive relief and declaratory judgments, it must do so only with respect to its duty to decide the issues before the Court.  The Court in this case would, assuming the petitioners prevail on the merits in whole or in part, fashion a remedy that resolves the issues relating to the petitioners before the Court, rather than promulgate a general regulatory or administrative scheme to govern an entire area of immigration law.  After all, due process is highly individualized, and the time or process that certain petitioners may need to satisfy the requirements of due process may be different than others.  *See Jennings*, 583 U.S. at 314.  The Court thus considers this motion for class certification and appointment of class counsel while keeping in mind its role in the separation of powers, recognizing with due respect for this separation and the Constitution that the Court must decide cases and fashion relief as necessary and no further. [7]

### iv.    Even if Rule 23 were satisfied, the Court would not exercise its discretion to certify a class action.

Even if petitioners met the baseline requirements of Rule 23, the Court would still exercise its discretion to decline to certify a class.  In considering the various possibilities of how this case would proceed on the merits, the Court has emphasized the many possible outcomes.  The Court could be called on to decide numerous individual questions of fact and craft individual remedies based on the circumstances and preferences of the individual petitioners—a situation inconsistent with the design of class actions.  The Court further concludes that a Rule 23(b)(2) class would be inequitable in this habeas context because

---

[7] Because the Court finds that the petitioners are not typical and that the petitioners have not met their burden to show that a Rule 23(b)(2) class is appropriate, the Court does not address the other prerequisites of Rule 23(a).

such a class is mandatory, preventing class members from opting out and obtaining the opportunity to pursue their habeas petitions with their own arguments. Additionally, the petitioners' atypicality and the Court's inability to satisfy Rule 23(b)(2)'s requirement of uniform relief equally warrant the Court's decision not to exercise its discretion to certify a class. Class certification is a tool to promote the efficiency and economy of litigation throughout the entire case. But the meaningfully atypical analysis and remedies that the Court may have to implement here make even a technically available class certification ill-advised. *See, e.g.*, *Crown, Cork & Seal Co.*, 462 U.S. at 349; *supra* Analysis § 4.ii–iii.

Given the equitable nature of class actions, the Court believes that it would be inappropriate to certify a class in this case under Rule 23(b)(2). *See Wal-Mart Stores*, 564 U.S. at 361; *Amchem*, 521 U.S. at 613. This type of class is a mandatory one—there would be no opportunity for members to opt out. *Wal-Mart Stores*, 465 U.S. at 362. As explained below, *infra* Analysis § 4.B.v, habeas is important and personal, and individuals should get the opportunity to decide whether they wish to file habeas petitions and how to pursue their liberty. For example, perhaps an individual currently in custody has a strong factual defense against deportation even if they were subject to the Proclamation and the AEA procedures were entirely appropriate. Consider, for example, a petitioner who is a citizen or only thirteen years old. That petitioner may seek to have the Court assume without deciding that the Proclamation is valid, sidestepping the complicated claims presented in this putative class petition and instead pursue an immediate hearing on the simple fact of their citizenship or age. In the event of a mandatory class, the petitioner may be forced to wait for these more complicated issues to be resolved. And if another interlocutory appeal took place in this case, those issues not strictly necessary to the resolution of this

hypothetical petitioner's claim would be further delayed.  There could be no carve-out for that petitioner, since the class is mandatory, and "[p]ermitting the combination of individualized and classwide relief in a (b)(2) class is also inconsistent with the structure of Rule 23(b)(2)."  *Wal-Mart Stores*, 564 U.S. at 361.  In sum, the mandatory nature of this type of class is unfair and inequitable to those who may wish to handle their habeas cases in a different way, or perhaps have no habeas case at all.

Concerns regarding res judicata also make class certification potentially harmful to unnamed class members.  As the Court mentioned above, *see supra* Analysis § 4.B.ii–iii, there are many potential differences between the named petitioners and the putative class members because the putative class members may have additional claims to challenge their AEA detention.  "Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply" to class members in subsequent litigation. *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).  And "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  Claim preclusion applies to all issues that "could have been raised and decided in a prior action," meaning all claims arising from the same transaction or involving a common nucleus of operative facts.  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020).  And these broad claims against removal arise under the same transaction and group of facts as any other conceivable claims and defenses regarding putative class members' detention or removal at this time.  So if the petitioners were to fail on their claims and habeas were denied, class members could very well be barred under these principles

from challenging their confinement or removal on other grounds— like a hypothetical petitioner who has temporary protected status—that they could have pursued in individual petitions. This potential harm to class members further warrants prudential denial of the motion for class certification and appointment of class counsel.

Additionally, while the class-certification stage is not "a dress rehearsal for the merits," "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (brackets original) (quoting *Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). The potential for a Rule 23(b)(2) class action depends entirely upon the Court's ability to enter a declaratory judgment or injunctive relief in this case. And the Court has serious concerns about its ability to do so. "[T]he sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979). Here, the petitioners may bring their claims only in habeas. *J.G.G.*, 145 S. Ct. at 1005–06. And the Supreme Court has previously held that injunctive and declaratory relief is not available in habeas cases. In *Heikkila v. Barber*, 345 U.S. 229 (1953), an alien whom the Attorney General had ordered deported brought an action against an officer of the Immigration and Nationalization Service "seeking 'a review of agency action' as well as injunctive and declaratory relief." *Id.* at 230. The Supreme Court explained that it was "clear that prior to the Administrative Procedure Act[,] habeas corpus was the only remedy by which deportation orders could be challenged in the courts" and that courts had "consistently rejected attempts to use injunctions, declaratory judgments and other types of relief for this purpose." *Id.* The Supreme Court then rejected the

contention that the Administrative Procedure Act expanded the reviewability of agency action or the remedies available in habeas. *See id.* at 235–36. The Court reaffirmed the rule that "recognizes the legislative power to prescribe applicable procedures for those who would contest deportation orders." *Id.* at 237. "Congress may well have thought that habeas corpus, despite its apparent inconvenience to the alien, should be the exclusive remedy in these cases in order to minimize opportunities for repetitious litigation and consequent delays as well as to avoid possible venue difficulties connected with any other type of action." *Id.*

The Supreme Court has similarly suggested in other cases that a writ of habeas corpus is the sole remedy available here. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that when a prisoner attempts to bring a claim under 42 U.S.C. § 1983 to challenge "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. And in *J.G.G.*, the Court explained that AEA petitioners seek relief that "necessarily implies the invalidity of their confinement and removal under the AEA, [so] their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." 145 S. Ct. at 1005 (internal quotation marks omitted) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). Because here the claims fall within the core of the writ of habeas corpus, the Court is cognizant that individual writs of habeas corpus may be the only remedies available. The Court of course does not decide the merits of this question at this stage; merits briefing will help to resolve this question. And the Court would decline to certify a class for the other reasons explained in this portion of the Order even if the Court were certain that these

remedies were available.  But the Court sees the issue of what remedies are available as an open question, and this uncertainty further warrants hesitation when deciding whether to certify this class.

### v.    The Court declines to use general equitable principles to certify a class outside of Rule 23.

For the same reasons that the Court would decline to exercise its discretion to certify a class action even if the petitioners did meet the requirements of Rule 23, the Court declines to exercise its discretion to create a Rule 23-like class under equitable principles or the All Writs Act even if it could do so.  And though the Court makes this generous assumption, the Court nonetheless expresses its skepticism that it could "use Rule 23 as a guidepost to certify a class under principles of habeas jurisdiction and equity."  Dkt. No. 40 at 4.  A chimerical Rule 23-equity-habeas hybrid of a class is inconsistent with the plain language of the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure are just that—rules of procedure, not guideposts.  Rule 23(a)'s language is clear: "[o]ne or more members of a class may sue or be sued as representative parties on behalf of a member only if" the four prerequisites are met. Fed. R. Civ. P. 23(a).  It is well-established that the federal rules are just as binding as statutes.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  As such, district courts must follow the requirements of the federal rules and cannot use their inherent powers to circumvent these requirements.  *See id.*  And Rule 23's use of the phrase "only if" means that these prerequisites are necessary conditions, not "guideposts."  *See* Fed. R. Civ. P. 23(a); *cf. United States v. Pulsifer*, 601 U.S. 124, 136–138 (interpreting similar "only if" language in 18 U.S.C. § 3553(f)(1)).  The phrase "only if" has an understood, logical meaning.  Only if the putative class meets the prerequisites is class certification appropriate.

Thus, if the putative class does not meet the prerequisites, then class certification is not appropriate.

The fact that habeas is an equitable remedy does not change this analysis. The Federal Rules of Civil Procedure apply equally when the Court is sitting in equity. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."). Rule 81 states that the Federal Rules of Civil Procedure "apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). The petitioners have not identified, and the Court does not see, any special rule in these identified exceptions that would expand the Court's power to eschew the requirements of Rule 23(a).

Further, the petitioners may contend that the Court could certify a class, decide the broad claims, and then perhaps amend or decertify the class if resolution of those questions does not resolve the petitions. *See Amgen*, 568 U.S. at 457 n.9 ("[C]ertifications are not frozen once made."). But the fact that the Court could end up redefining, subclassifying, or even decertifying the class, *see Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983), does not mean that the Court should certify a class on the chance that the plaintiffs prevail on the one theory that would reasonably result in class-wide relief. The Court cannot certify a class on the chance that one theory is correct, and later decertify or redefine the class, because it must think carefully about how the case will be managed and potentially tried, keeping in mind the possible outcomes. *See Madison*, 637 F.3d at 555–56; *Falcon*, 457 U.S. at 161. The Court cannot and will not certify the class, see whether the Proclamation is facially valid,

and then decertify if that claim does not prevail or attempt to completely rework the class through further review and the creation of subclasses as the case progresses.  Not only would this action be inconsistent with precedent, but it would also add unnecessary chaos, confusion, and delay to these proceedings.  *See Madison*, 637 F.3d at 556.  And in light of the complicated legal questions, the speed of these proceedings, and the fact that "members of the proposed class are in detention, often lack immigration counsel, and are indigent," Dkt. No. 40 at 14, the Court finds that creating and potentially destroying a class, or continuously tinkering with the class, has the real potential to confuse class members.  The class members may be unable to follow the various procedural and technical maneuvers, and they may miss their opportunity to seek relief if the Court had to decertify a class.

Rather, the Court finds that a clear message to those putative class members will reduce the risks of confusion and delay.  As one member of the Supreme Court has explained, the choice for how to proceed in these cases was between "individual habeas petitions filed in district courts across the country or a class action filed in the District of Columbia." *J.G.G.*, 145 S. Ct. at 1015 (Sotomayor, J., dissenting).  The Supreme Court ruled out the latter, *id.* at 1005, and the Court today makes clear that cases in this Court will proceed as members of the Supreme Court suggested—individual habeas petitions filed in district courts.  The Court is accustomed to a voluminous docket and has committed to resolving these individual cases with the balance of speed and care that they require, allowing individual detainees to decide whether to file habeas petitions and how they wish to proceed with their petitions.  The Northern District of Texas has simplified forms for individuals to file these petitions, and the Supreme Court has made clear that detainees are entitled to notice and an opportunity to challenge their removal.  *Id.* at 1006.  The Court

believes that this procedure is sufficient to afford the rights guaranteed to detainees while remaining faithful to the requirements of Rule 23, preventing confusion and delay, and preserving the rights of the putative class members to make their own decisions.  With all of this in mind, the Court declines to certify the class.

### 5.    Conclusion

This litigation may very well require individualized analysis and remedies for each habeas petition.  The interests of justice require the Court to allow individual detainees to decide for themselves whether to file habeas petitions, and, if so, what claims they wish to pursue.  Only one possibility in this case could result in classwide relief—all of the others result in parsing out individual claims and facts.  Class actions may never be appropriate in habeas proceedings, but they are certainly not appropriate in these proceedings where individual, fact-intensive questions may predominate the requested classwide relief.  The Court, with respect for the importance of these issues and following the case law that requires it to consider these possibilities, denies the motion for class certification and appointment of class counsel (Dkt. No. 39).  But because the Supreme Court has granted relief to the putative class pending further order from that Court, the Court stays the effect of this Order pending further action from the Supreme Court.

So ordered on May 9, 2025.

_JAMES WESLEY HENDRIX_
UNITED STATES DISTRICT JUDGE