## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| W.M.M., *et al.*, on their own behalf and on behalf of all others similarly situated,<br><br>*Petitioners–Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Respondents–Defendants*. | Case No. 1:25-cv-59-H |

## MEMORANDUM IN SUPPORT OF PETITIONERS-PLAINTIFFS' MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, TO CERTIFY A CLASS UNDER RULE 23(c)(4)

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ................................................................................................................... 4

I.    THE COURT SHOULD RECONSIDER ITS DENIAL OF CLASS CERTIFICATION. 4

   A.    Courts Routinely Certify Rule 23(b)(2) Classes Even Though Individualized Claims Cannot Be Resolved on a Classwide Basis. .................................................................. 5

   B.    Class Resolution of Common Claims Does Not Preclude Individualized Claims. ........ 8

   C.    The Court Can Enjoin the Removal of Petitioners and Class Members. ........................ 9

II.   ALTERNATIVELY, THE COURT SHOULD CERTIFY PETITIONERS' MULTIPLE COMMON CLAIMS UNDER RULE 23(c)(4). ............................................................ 10

III.  A DISTRICT-WIDE CLASS IS NECESSARY FOR DETAINEES TO OBTAIN JUDICIAL REVIEW. ...................................................................................................... 13

IV.   THE COURT CAN CERTIFY A CLASS UNDER EITHER RULE 23 OR THE ALL WRITS ACT. ................................................................................................................... 14

CONCLUSION.................................................................................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1034 (2025) ........................................................................... 9, 15

*A.S.R. v. Trump*,
  No. 25-CV-00113, 2025 WL 1225979 (W.D. Pa. Apr. 25, 2025) ...................................... 1, 10

*Bernard v. Gulf Oil Corp.*,
  841 F.2d 547 (5th Cir. 1988) ........................................................................... 8

*Bijeol v. Benson*,
  513 F.2d 965 (7th Cir. 1975) ........................................................................... 15

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ........................................................................... 5, 12

*Cameron v. Tomes*,
  990 F.2d 14 (1st Cir. 1993) ........................................................................... 8

*Chauvin v. State Farm*,
  Nos. 06-CV-7145, 06-CV-8769, 2007 WL 2903321 (E.D. La. Oct. 2, 2007) ........................... 9

*Chavez v. Plan Benefit Servs., Inc.*,
  Nos. 108 F.4th 297 (5th Cir. 2024) ........................................................................... 12

*Cnty. of Riverside v. McLaughlin*,
  500 U.S. 44 (1991) ........................................................................... 6, 12

*Cooper v. Fed.l Rsrv. Bank of Richmond*,
  467 U.S. 867 (1984) ........................................................................... 6, 7, 8

*D.B.U. v. Trump*,
  No. 25-CV-01163, 2025 WL 1304198 (D. Colo. May 6, 2025) ................................... passim

*Doster v. Kendall*,
  48 F.4th 608 (6th Cir. 2022) ........................................................................... 7

*G.F.F. v. Trump*,
  No. 25-CV-2886, 2025 WL 1166482 (S.D.N.Y. Apr. 9, 2025) ................................... passim

*Gen. Telephone Co. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................... 6,7

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ........................................................................... 12

*In re Rodriguez,*
   695 F.3d 360 (5th Cir. 2012) ........................................................................... 7

*In re Vitamin C Antitrust Litig.,*
   279 F.R.D. 90 (E.D.N.Y. 2012) ....................................................................... 9

*J.A.V. v. Trump,*
   No. 25-CV-072, 2025 WL 1256996 (S.D. Tex. May 1, 2025) ......................... passim

*J.G.G. v. Trump,*
   No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025) .................................. 11

*LoBue v. Christopher,*
   82 F.3d 1081 (D.C. Cir. 1996) ....................................................................... 15

*Malam v. Adducci,*
   475 F. Supp. 3d 721 (E.D. Mich. 2020) ........................................................... 15

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   672 F.3d 482 (7th Cir. 2012) ........................................................................... 7

*Napier v. Gertrude,*
   542 F.2d 825 (10th Cir. 1976) ....................................................................... 15

*Parham v. J. R.,*
   442 U.S. 584 (1979) ....................................................................................... 6

*Pride v. Correa,*
   719 F.3d 1130 (9th Cir. 2013) ......................................................................... 8

*Sanders v. United States,*
   373 U.S. 1 (1963) ........................................................................................... 9

*Trump v. J.G.G.,*
   145 S. Ct. 1003 (2025) ............................................................................... passim

*Wal-Mart v. Dukes,*
   564 U.S. 338 (2011) ............................................................................... 6, 7, 12

*Walters v. Reno,*
   145 F.3d 1032 (9th Cir. 1998) ......................................................................... 7

**Statutes**

50 U.S.C. § 21 ................................................................................................... 11

50 U.S.C. § 51 ................................................................................................... 11

8 U.S.C. § 1231 ................................................................................................. 11

**Other Authorities**

Charles Wright & Arthur Miller, Fed. Prac. & Proc. (3rd ed. 1998)................................................ 8

Lee Kovarsky, *The New Negative Habeas Equity*, 137 Harv. L. Rev. 2222 (2024) ...................... 9

Pro Se Forms, Northern District of Texas, https://www.txnd.uscourts.gov/pro-se/forms............ 13

William Rubenstein, Newberg and Rubenstein on Class Actions (6th ed. 2022) ................... 8, 10

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................... passim

## INTRODUCTION

Petitioners respectfully move for reconsideration of the Court's order denying class certification. ECF No. 67 ("Op."). In habeas cases under the Alien Enemies Act, every other court to consider this issue has granted class certification of the same district-wide class Petitioners seek here. *See J.A.V. v. Trump*, No. 1:25-CV-072, 2025 WL 1256996, *6 (S.D. Tex. May 1, 2025) (Rodriguez, J.); *D.B.U. v. Trump*, No. 1:25-CV-01163, 2025 WL 1304198, *10 (D. Colo. May 6, 2025) (Sweeney, J.); *A.S.R. v. Trump*, No. 3:25-CV-00113, 2025 WL 1225979, *2 (W.D. Pa. Apr. 25, 2025) (Haines, J.); *G.F.F. v. Trump*, No. 25-CV-2886, 2025 WL 1166482, *3 (S.D.N.Y. Apr. 9, 2025), *amended*, 2025 WL 1166909 (Apr. 11, 2025) (Hellerstein, J.).

This Court denied certification because, if the class's common challenges are unsuccessful, any remaining challenges—such as whether a particular person is a member of Tren de Aragua—would need to be resolved through individualized litigation. But that is a constant feature of Rule 23(b)(2) classes and similar classes under the All Writs Act, including classes the Supreme Court, the Fifth Circuit, and courts around the country have routinely approved. The possibility of later as-applied challenges is not a reason to deny class certification for claims that concededly are common to the class and could resolve the entire litigation.

The Court's decision cited the concern that certifying a class as to common claims might bar class members, as a matter of res judicata, from later raising individualized claims. But courts are unanimous that judgment in a Rule 23(b)(2) case only has preclusive effect for the classwide claims—not individualized claims that could not have been resolved classwide. And as a general matter, res judicata does not even apply in habeas cases. Thus, even if the class lost on all its challenges to the validity of the Proclamation, that would not bar any class member from asserting that they are not a member of TdA, or that they are not subject to the Proclamation for some other

individualized reason.

The Court also suggested that habeas does not permit a court to enjoin removal under the AEA, only order release from detention. Op. 43-44. But the Supreme Court's April 7 decision in *J.G.G.* held that not only can "[c]hallenges to *removal* under the AEA" be brought in habeas, they may only be "brought in habeas." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005-06 (2025) (emphasis added). Every other court to face this issue since *J.G.G.* has thus enjoined removals under the AEA while individuals pursue judicial review, and if successful on the common questions, they have permanently barred AEA removals. *See, e.g.*, *J.A.V. v. Trump*, 2025 WL 1257450, *18, 20 (S.D. Tex. May 1, 2025) (granting summary judgment).

As a practical matter, class certification is necessary to ensure that people "subject to removal under the Alien Enemies Act get judicial review." *J.G.G.*, 145 S. Ct. at 1006 (quotation marks omitted). There are some 176 putative class members in this District, and there could easily be hundreds more if the government continues moving detainees into the District. A large number do not have attorneys. Detainees have no real way to file habeas petitions pro se; indeed, not a single AEA detainee has managed to do so—in this District or any other—since the Proclamation was issued. And there are serious barriers to obtaining representation. Attorneys who visit the detention facilities can only meet with a limited number of detainees per day, and only detainees whose names they provide in advance. Yet the government has refused to provide a list or any other information about the people it is detaining for removal under the AEA.

To provide meaningful protection, the class must be district-wide. The government keeps moving detainees between facilities in this District, most recently to the Eden Detention Center and Prairieland Detention Facility—including one of the named Petitioners. It has made these transfers at the same time it has argued that any class should be limited to Bluebonnet. And it

transferred large numbers of detainees from other parts of the country into this District days after courts in other districts enjoined removals within those districts.

The practical need for a class is exacerbated by the government's current notice protocols, which provide an English-only form that does not tell people they may contest their AEA designation and removal, much less how to do so or how quickly they must do it. Despite this, the government plans to remove people within 12 hours, or 24 hours if they specifically state an intention to file a habeas petition.

The government's recent Supreme Court filing puts this in sharp relief. *See* Supp. Mem., *A.A.R.P. v. Trump*, No. 24A1007 (May 12, 2025). The government states that "there are some 176 putative class members" in this District, 149 of whom have not been ordered removed under Title 8. *Id.* at 2, 11. The government has not provided Petitioners' counsel with the names or A numbers of this group, and counsel has not otherwise been able to learn most of their names or A numbers. Consequently, Petitioners' counsel cannot meet with them under the detention facilities' policies for legal visits.

The government's filing claims that non-named petitioners have had three weeks to bring habeas petitions, and that a class is therefore unnecessary. *Id.* at 2. But that ignores three points. First, the government does not say how many of the 176 putative class members have received notices designating them for removal under the AEA; insofar as pro se individuals have not yet received a notice, they would have had no reason during these three weeks to know they had to file a habeas petition. Second, for those who have received AEA notices but are unrepresented and unknown to Petitioners' counsel, no detainee that Petitioners know of has yet been able to file an AEA habeas petition pro se. Thus, without classwide relief, dozens of these class members may immediately be sent to El Salvador's CECOT prison, with no opportunity to

3

challenge their removal.  Finally, the three weeks is backward looking.  Absent a class, there will be nothing preventing the government from giving notices to dozens or hundreds *more* people going forward and then removing them to El Salvador under after 12 or 24 hours. That would include individuals already detained in the Northern District of Texas as well as those who are subsequently transferred into the District.

Alternatively, if the Court does not reconsider its ruling, Petitioners respectfully request that the Court at a minimum certify a class as to common issues pursuant to Rule 23(c)(4), which provides that a class can proceed "with respect to particular issues." Fed. R. Civ. P. 23(c)(4).  As this Court acknowledged, Petitioners' claim that the Proclamation is ultra vires would be appropriate for classwide resolution.  Op. 26, 37, 38, 39.  Other common issues are likewise appropriate for certification under Rule 23(c)(4).  Otherwise, hundreds of class members will be required to litigate these identical, complex, and dispositive threshold AEA issues in parallel on their own.

Finally, there is nothing preventing the Court from certifying a habeas class under Rule 23, habeas principles, and/or the All Writs Act.  Every circuit to consider the issue has agreed that habeas petitioners can litigate common claims as a class.  And in line with this consistent precedent, the other district courts have certified AEA classes based on both Rule 23 and the All Writs Act.

## ARGUMENT

## I.  THE COURT SHOULD RECONSIDER ITS DENIAL OF CLASS CERTIFICATION.

Petitioners raise a number of challenges to the Proclamation that, if successful, would prevent the Proclamation's enforcement against any class member.  *See infra* Part II (listing the claims that are common to all class members).  Resolving these identical and dispositive claims in

one case, rather than dozens or hundreds of separate cases, is exactly what class actions are for. For similar reasons, the claims of named Petitioners are typical of those of the putative class. Petitioners respectfully submit that the Court's reasons for nonetheless denying class certification are incorrect and should be reconsidered.

### A. Courts Routinely Certify Rule 23(b)(2) Classes Even Though Individualized Claims Cannot Be Resolved on a Classwide Basis.

The Court reasoned that class certification was inappropriate because of the possibility of individualized, as-applied claims that could not be litigated on a classwide basis. As the Court explained, "if the petitioners lose on the merits" of their classwide claims, "then relief may be appropriate only to some members of the class." Op. 38. Petitioners acknowledge that certain claims—like an assertion that a person is not a member of TdA—would need to be decided on an individual basis, and Petitioners have never sought to litigate these as a class. *See J.A.V.*, 2025 WL 1256996, *5 (certifying class while noting the "relatively-narrow issue of the person's alleged membership in TdA").[1] But both common and individual claims are almost always present in cases challenging government or corporate policies. Nearly every Rule 23(b)(2) case involves classwide claims that, if they are unsuccessful, would give way to individualized claims by some class members. But that has never prevented courts from resolving broad challenges on a classwide basis.

For instance, in *Califano v. Yamasaki*, a plaintiff class challenged an agency's attempt to recover funds that the agency had overpaid to class members. 442 U.S. 682, 686-88 (1979). Individual claims about whether a particular person was, in fact, overpaid were obviously not amenable to classwide resolution. *Id.* at 701 (noting "the need for case-by-case adjudication" of

---

[1] As explained below, Petitioners' claims regarding removal procedures under the INA and CAT are common to the class. *See infra* Part II.

these claims). Yet the Supreme Court held that class certification was appropriate, because the class had one common challenge—to the agency's notice and hearing procedures—that, if successful, would apply to the entire class. As the Court explained, by resolving this one common claim, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every social security beneficiary to be litigated in an economical fashion." *Id.*

Similarly, in *Wal-Mart v. Dukes*, the Supreme Court explained that certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class," 564 U.S. 338, 360 (2011)—which is concededly true here—and that "any claim for individualized relief" would be pursued separately from the "classwide injunction," *id.* at 361. In fact, the Court explained that Rule 23(b)(2) was modeled on "civil rights cases" challenging discriminatory policies, *id.* (cleaned up), where it is routine for challenges to an overall policy to be resolved on a class basis, followed by individual claims that are litigated separately. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 880-81 (1984) (permitting certain "individual claims" to proceed in a "separate action" after classwide discrimination claims failed).

Indeed, the Supreme Court has repeatedly decided classwide challenges to broad policies, before remanding for courts to "consider any individual claims" that remained. *Parham v. J. R.*, 442 U.S. 584, 616-17 (1979); *see County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (resolving claim that arrest procedures were categorically deficient, while acknowledging that as-applied claims "in a particular case" would vary with context). None of these classes would have been possible if it were true that the existence of as-applied claims negated the ability to bring facial challenges as a class.

This Court relied on *General Telephone Co. v. Falcon*, where the Supreme Court rejected

a Rule 23(b)(2) class. 457 U.S. 147 (1982); Op. 31-32. But *Falcon*'s holding was premised on the Court's conclusion that there was no "general policy" to challenge. 457 U.S. at 159 n.15; *see id.* at 157 (rejecting "unsupported allegation that the company has a policy of discrimination"). *Wal-Mart* rejected a class for the same reason—because a "general policy" was "entirely absent." 564 U.S. at 353. But that is the opposite of this case, where Petitioners challenge an explicit written policy: the Proclamation. Both *Falcon* and *Wal-Mart* made clear that class certification would have been appropriate if there had been a "general policy of discrimination," *id.*—even though, if class claims against such a policy had failed, class members' subsequent discrimination claims would have been individualized, *Cooper*, 467 U.S. at 880-81.

The Fifth Circuit has made this equally clear. For instance, in *In re Rodriguez*, the Court affirmed the certification of a Rule 23(b)(2) class to challenge a company's "fee assessment and collection practice," even though it acknowledged "the individualized manner in which each class member may have been affected by the practices." 695 F.3d 360, 365-67 (5th Cir. 2012). In fact, the Fifth Circuit noted a host of related individual claims that were not amenable to classwide resolution, but the Court explained that those did not prevent class certification for the one claim that sought broad-based relief against a company policy. *Id.* at 366-67 ("As a result, the injunctive claim on its own does not involve the myriad issues that may arise in each case . . . .") (quotation marks omitted).

Across all circuits, courts regularly certify Rule 23(b)(2) classes challenging broad policies, despite the likelihood of later individualized claims by class members. *See, e.g.*, *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490-91 (7th Cir. 2012); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). And almost any time plaintiffs challenge a government policy,

the setup is exactly the same as the Court identified here: If the classwide challenges succeed, the litigation ends for everyone; if they fail, individual class members can bring their own as-applied challenges. That circumstance is not a reason to deny class certification for the common claims. *See J.A.V.*, 2025 WL 1256996, at *5.

**B. Class Resolution of Common Claims Does Not Preclude Individualized Claims.**

The Court expressed concern that if it decided the common claims on a classwide basis, its decision might preclude any subsequent individualized claims as a matter of res judicata. Op. 25, 42. But it is black-letter law that "a judgment in a class action does not preclude later lawsuits by class members concerning individualized claims." 6 Newberg and Rubenstein on Class Actions § 18:17 (6th ed.) ("This is so even though the individualized claims may share such a close factual predicate with the claims in the class suit that they would have had to have been joined in two-party litigation."); *see* Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4455.2 (3d ed.) (same). Otherwise, a class could never bring a challenge to a policy based on a common question without precluding all future individualized challenges.

The Supreme Court made this clear in *Cooper*, where it held that a class judgment is not "dispositive of the individual claims the [] petitioners have alleged in [a] separate action." 467 U.S. at 880-81 (holding that the failure of a classwide claim of discrimination did not preclude a class member's individualized claim of discrimination). This makes sense because a class judgment cannot bar individualized claims that could not have been litigated by the class. The lower courts have implemented this principle accordingly. *See Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 569-70 (5th Cir. 1988) (applying *Cooper* and addressing "plaintiffs' individual claims" that could still be litigated after the "classwide claims"); *Cameron v. Tomes*, 990 F.2d 14, 18 (1st Cir. 1993) (same); *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (same); *In re Vitamin C*

8

*Antitrust Litig.*, 279 F.R.D. 90, 114 (E.D.N.Y. 2012) (same); *Chauvin v. State Farm*, 2007 WL 2903321, at *7 (E.D. La. Oct. 2, 2007) (same). Beyond that, res judicata generally does not apply in habeas cases. *See, e.g.*, *Sanders v. United States*, 373 U.S. 1, 7-8 (1963) (applying "the familiar principle that res judicata is inapplicable in habeas proceedings") (cleaned up). Consequently, for these multiple reasons, there is no cause to fear that judgment on the class's common challenges will bar individual class members from asserting that they are not TdA members.[2]

### C.  The Court Can Enjoin the Removal of Petitioners and Class Members.

In its order, the Court appeared to suggest that it might not be able to issue *any* "injunctive relief in this case," because "individual writs of habeas corpus may be the only remedies available." Op. 43-44 ("[T]he sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose.") (quotation marks omitted). Insofar as this is what the Court meant, it is inconsistent with the Supreme Court's ruling just weeks ago in *J.G.G.* There, the Court squarely held that people can and must challenge AEA *removals* in habeas. 145 S. Ct. at 1005 (petitioners may challenge "removal under the AEA").[3] And the Court made clear that petitioners must be able "to actually seek habeas relief in the proper venue before such removal occurs." *Id.* at 1006.[4]

---

[2] For the same reasons, class certification as to the common issues would not prevent "a petitioner who is a citizen or only thirteen years old" from immediately asserting their individualized claim. Op. 41.

[3] In addition to the Court's general equitable authority, enjoining removal is authorized by the All Writs Act, *see A.A.R.P. v. Trump*, 145 S. Ct. 1034 (Mem.) (2025) (citing 28 U.S.C. § 1651(a)), and by 28 U.S.C. § 2243, which directs habeas courts to "dispose of the matter as law and justice require." *See* Lee Kovarsky, *The New Negative Habeas Equity*, 137 Harv. L. Rev. 2222, 2240 (2024) (explaining that § 2243 "expanded the menu of available remedies").

[4] In fact, the only relief the petitioners were seeking in the TRO reviewed in *J.G.G.* was to enjoin their removal. They were not challenging their detention. So the very issue before the Court in *J.G.G.* was where petitioners had to bring claims to prevent removal, and the Court ruled that such claims should be brought by habeas in the district of confinement.

9

Refusing to enjoin a person's removal under the AEA would deny them the exact relief the Supreme Court said they must seek through habeas. And it would guarantee that detainees— perhaps all of the detainees in this District—would be removed without judicial review, because the government has said that it may remove people for whom a court declines to enjoin removal. *See* Cisneros Decl., ECF No. 55-1 ¶ 12. Every other habeas court to consider the issue has enjoined removals under the AEA while judicial review proceeds. *See, e.g.*, *J.A.V.*, 2025 WL 1257450, *20 (enjoining removals); *D.B.U. v. Trump*, 2025 WL 1304288, *10 (D. Colo. May 6, 2025) (same); *G.F.F. v. Trump*, 2025 WL 1301052, *11 (S.D.N.Y. May 6, 2025) (same); *A.S.R. v. Trump*, 2025 WL 1208275, *4 (W.D. Pa. Apr. 25, 2025) (same).

## II. ALTERNATIVELY, THE COURT SHOULD CERTIFY PETITIONERS' MULTIPLE COMMON CLAIMS UNDER RULE 23(c)(4).

Petitioners are asserting multiple challenges to the validity of the Proclamation. Any one of these claims would be sufficient to enjoin its enforcement as to all class members. Indeed, as this Court acknowledged, Petitioners' claims "that the Proclamation is ultra vires . . . may render classwide relief appropriate." Op. 37; *see id.* at 26, 37-39 (these "would likely result in the same relief to all class members if the petitioners prevail on the merits"). The same is true of multiple other claims, listed below. At a minimum, the Court should certify these issues for class resolution pursuant to Rule 23(c)(4), which provides that "an action may be brought or maintained as a class action with respect to particular issues." To certify a class under Rule 23(c)(4), "the class proponent need only" show compliance with Rule 23(a) and Rule 23(b)(2) "*with regard to the issue proposed for certification.*" 2 Newberg and Rubenstein on Class Actions § 4:92 & n.7 (6th ed.) (emphasis in original) (collecting cases).

The common issues warranting class treatment are:

1. Petitioners' claim that the Proclamation is invalid because there is no "invasion or predatory incursion" within the meaning of the AEA, 50 U.S.C. § 21; *see* Amended Pet., ECF No. 38 ¶¶ 78-79. This claim alone merits classwide resolution. Multiple courts have agreed with this claim and thus enjoined the Proclamation's enforcement classwide. *See J.A.V.*, 2025 WL 1257450, *18; *G.F.F.*, 2025 WL 1301052, at *1; *D.B.U.*, 2025 WL 1304288, at *7; *see also J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, *8-10 (D.C. Cir. Mar. 26, 2025) (Henderson, J., concurring).

2. Petitioners' claim that the Proclamation is invalid because it does not target a "foreign nation or government." 50 U.S.C. § 51; *see* ECF No. 38 ¶¶ 78-79; *D.B.U.*, 2025 WL 1304288, at *7 (agreeing with this claim).

3. The claim that the Proclamation improperly circumvents the INA's removal procedures, which would render all removals under the Proclamation invalid. ECF No. 38 ¶¶ 84-87.[5]

4. The claim that the Proclamation improperly eliminates the screening requirements and substantive prohibitions for torture and persecution guaranteed by the Convention Against Torture and withholding statute, especially given the conditions at CECOT. *See* ECF No. 38 ¶¶ 89-90, 92-93; 95-96; 8 U.S.C. § 1231(b)(3); 8 U.S.C. § 1231 note; C.F.R. §§ 208.16-.18; *see also J.G.G. v. Trump*, No. 1:25-cv-766, ECF Nos. 44-3, 44-4 (D.D.C. Mar. 19, 2025)

---

[5] The Court interpreted the claims based on the INA and CAT as individualized claims. Op. 23, 27. But the only claims that Petitioners seek to litigate as a class are common to all class members: that no class member can be removed without following the removal procedures in the INA; that no class member can be removed without being screened for persecution and torture; that no class member can be removed to CECOT where they would face grave abuse. "These issues hold true for any individual that Respondents designate as an alien enemy under the Proclamation and subject to removal under the AEA. A favorable result on any of these legal theories as to one individual will prove equally applicable to other Venezuelan aliens designated as alien enemies under the Proclamation." *J.A.V.*, 2025 WL 1256996, *4. At any rate, even without these claims, class certification would remain proper as to the other common challenges.

(describing conditions at CECOT, including beatings, torture, forced labor, and indefinite detention, incommunicado, without trial).

5. Petitioners' claim that the government's notice procedures are categorically unconstitutional and unlawful as to all class members.  *See* ECF No. 38 ¶¶ 103-04; *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-59 (1991) (arrest procedures deficient on a classwide basis, despite obvious variation in individual circumstances); *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (class certification proper for due process claim); *see also G.F.F.*, 2025 WL 1301052, at *8; *D.B.U.*, 2025 WL 1304288, at *8.

Rather than just "one theory," Op. 46, these common, classwide claims raise a host of weighty and complex issues, and any one of them would be enough to resolve this entire litigation. *See J.A.V.*, 2025 WL 1256996, *4 (listing these same challenges as issues that are common to the whole class).  These claims, or any subset of them, are sufficient for reconsideration under Rule 23(b)(2) or certification under Rule 23(c)(4).[6]

The Fifth Circuit has repeatedly endorsed the certification of issue classes in this situation. In *In re Deepwater Horizon*, the Court explained that Rule 23(c)(4) "permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination."  739 F.3d 790, 816 (5th Cir. 2014) (cited in *J.A.V.*, 2025 WL 1256996, *4-6); *see Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 318 (5th Cir. 2024) ("common and individual issues can be divided" under Rule 23(c)(4)) (cleaned up).  And it held that class certification is proper where "a single common contention" could "drive the resolution of the litigation."  *Deepwater Horizon*, 739 F.3d

---

[6] There is no predominance requirement for a class certified under Rule 23(b)(2) or 23(a)(4). *See Wal-Mart*, 564 U.S. at 362 (common claims must only predominate for a Rule 23(b)(3) class); *Neese v. Becerra*, 342 F.R.D. 399, 412 (N.D. Tex. 2022) (same).  But as mentioned, the common claims here are numerous and complex, whereas the individual questions of TdA membership are "relatively[] narrow."  *J.A.V.*, 2025 WL 1256996, *5.

at 810-11 (quotation marks omitted).

### III.    A DISTRICT-WIDE CLASS IS NECESSARY FOR DETAINEES TO OBTAIN JUDICIAL REVIEW.

Class certification is critical to effectuate the Supreme Court's instruction in *J.G.G.* that individuals subject to the Proclamation be allowed "to actually seek habeas relief" before they are removed. 145 S. Ct. at 1006. A large number of detainees do not have lawyers and do not speak English. The government is planning to remove them a mere 12 or 24 hours after giving them an English-only form that does not tell them they can challenge their designation, how to do so, or on what timeframe. Cisneros Decl., ECF No. 55-1, ¶ 11. Forcing them to proceed individually is very likely to result in many people being removed with no real chance to seek judicial review. And this problem would be greatly magnified if the government responds to the denial of class certification by moving even greater numbers of detainees into this district.

The Court suggested that individuals could file their own habeas petitions, Op. 47, but not a single AEA detainee has managed to file on their own petition in the two months since the Proclamation was issued. That is not surprising, given the barriers of language, legal knowledge, and limited access to computers and other resources while in detention. Smulian Decl. ¶¶ 7-9; Sarabia Decl. ¶¶ 4-6. Indeed, the sample forms the Court mentioned are written in English only.[7] As for obtaining counsel, the government has made it difficult for lawyers to help detainees bring AEA claims. The government has refused to provide counsel with information about unnamed class members. ECF No. 30 at 1 n.1. But the government *requires* attorneys to provide a name and A number in order to meet with a detainee. Sarabia Decl. ¶ 3. Counsel therefore cannot meet with most of the 176 putative class members under the government's rules. Beyond that, the only

---

[7] Pro Se Forms, Northern District of Texas, https://www.txnd.uscourts.gov/pro-se/forms.

outside contact the government has promised detainees who receive an AEA notice is a single phone call. *See* Cisneros Decl., ECF No. 55-1 ¶¶ 10, 11. Without a class, a large number of detainees may be deported to CECOT before they can obtain representation.

The Court also suggested that a class might not extend beyond Bluebonnet. Op. 35-36. But a district-wide class is necessary here to prevent the government from unilaterally defeating any relief by moving detainees to different facilities within this District. The government moved large numbers of AEA detainees into this District mere days after judges in other districts had enjoined removals. ECF No. 2-1 at 3. And in recent weeks, the government has moved putative class members from Bluebonnet to the Eden Detention Center and Prairieland Detention Facility, *see* Smulian Decl. ¶ 2; Sarabia Decl. ¶ 7, at the same time it has argued that any class in this case should be limited to Bluebonnet, ECF No. 49 at 10-12.

Limiting the class to one detention facility would thus allow the government to keep moving detainees in a manner that thwarts judicial review. Petitioners have named the proper custodians as defendants—the wardens of each facility in this District that detains class members—and venue is proper for each one under the district-of-confinement rule. *See J.G.G.*, 145 S. Ct. at 1005-06 (requiring habeas petitions to be filed in the "district of confinement"). Every other court to consider this issue has certified classes encompassing the entire judicial district. It is critical that the same happen here, to ensure that people are not removed before their claims can be heard.

## IV.    THE COURT CAN CERTIFY A CLASS UNDER EITHER RULE 23 OR THE ALL WRITS ACT.

All six circuits to consider the issue have held that habeas petitioners can litigate common claims through a class action. This Court expressed doubt that the All Writs Act was a source of authority to certify a habeas class. Op. 45-46. But courts across the country have relied on the

Act in habeas and other class actions. *See, e.g.*, *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996) (collecting cases); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.2 (10th Cir. 1976); *Malam v. Adducci*, 475 F. Supp. 3d 721, 733 (E.D. Mich. 2020). And specifically in AEA cases, multiple courts have relied on the All Writs Act to certify habeas classes and issue relief to such classes. *See J.A.V.*, 2025 WL 1256996, *2, 5; *D.B.U.*, 2025 WL 1304198, *3; *G.F.F.*, 2025 WL 1166482, *2; *cf. A.A.R.P. v. Trump*, 145 S. Ct. 1034 (Mem.) (2025) (citing All Writs Act to enjoin removal of "any member of the putative class of detainees" in this case).

This Court's reason for rejecting the All Writs Act was that Rule 23(a) says classes can be certified "only if" they comply with the four requirements of Rule 23(a). As explained above and in Petitioners' class certification briefs, the four requirements are satisfied here. *See, e.g.*, *J.A.V.*, 2025 WL 1256996, *2-5; *G.F.F.*, 2025 WL 1166482, *2 (certifying class under All Writs Act after finding Rule 23(a) factors satisfied). This reason therefore does not pose any impediment to a habeas class under the All Writs Act.

Relatedly, the Court stated that "the individualized nature of habeas" presents a reason to deny class certification here. Op. 37; *see id.* at 24. But Petitioners' core point is that their challenges to the validity of the Proclamation are *not* individualized, *see supra* Part II, but rather apply equally to every class member. These are precisely the type of claims for which courts certify class actions in habeas and other cases challenging broad policies.

## CONCLUSION

The Court should grant reconsideration and certify the requested class, or alternatively certify a class to litigate the common issues under Rule 23(c)(4).

Dated: May 13, 2025

Respectfully submitted,

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo
Cody Wofsy*
Spencer Amdur*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
cwofsy@aclu.org
samdur@aclu.org

Brian Klosterboer
Tx Bar No.  24107833
Thomas Buser-Clancy
TX Bar No. 24078344
Savannah Kumar
TX Bar No. 24120098
Charelle Lett
TX Bar No. 24138899
Ashley Harris
TX Bar No. 24123238
Adriana Piñon
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
1018 Preston St.
Houston, TX 77002
(713) 942-8146
bklosterboer@aclutx.org
tbuser-clancy@aclutx.org
skumar@aclutx.org
clett@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

/s/Lee Gelernt
Lee Gelernt
Daniel Galindo
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org

Attorneys for Petitioners-Plaintiffs

*Pro hac vice applications
forthcoming

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

Dated: May 13, 2025                                     Respectfully submitted,

                                                        /s/Lee Gelernt
                                                        Lee Gelernt
                                                        AMERICAN CIVIL LIBERTIES
                                                        UNION FOUNDATION
                                                        125 Broad Street, 18th Floor
                                                        New York, NY 10004
                                                        T: (212) 549-2660
                                                        E: lgelernt@aclu.org

                                                        Attorney for Petitioners-Plaintiffs

17