## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| W.M.M., et al., on their own behalf and on behalf of all others similarly situated, | ) ) ) | |
| *Petitioners-Plaintiffs* | ) ) | |
| v. | ) ) | **Case No. 1:25-cv-00059-H** |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | ) ) ) | |
| *Respondents-Defendants* | ) ) | |

## BRIEF OF AMICUS CURIAE CLASS ACTION AND HABEAS PROFESSORS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

STATEMENT OF ISSUE PRESENTED..........................................................................1

INTEREST OF AMICI CURIAE ....................................................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT .......................................2

I.     COURTS HAVE LONG RECOGNIZED THAT CLASS TREATMENT CAN
      BE APPROPRIATE IN HABEAS CASES.............................................................3

      A.    The Supreme Court Has Never Formally Decided That Class Action
           Treatment Applies in Habeas Cases, But It Has Analyzed Habeas Class
           Actions Under Rule 23....................................................................................3

      B.    Appellate Courts That Have Reached the Issue Unanimously Permit
           Class Treatment in Habeas Cases. .............................................................4

      C.    Whatever the Formal Source of Authority, Courts Apply Rule 23
           Criteria to Adjudicate the Question of Class Treatment. ..........................5

II.    NOTHING ABOUT THE HABEAS REMEDY IS INCONSISTENT WITH
      CLASS ACTION TREATMENT.........................................................................8

CONCLUSION................................................................................................................13

CERTIFICATE OF COMPLIANCE...............................................................................15

CERTIFICATE OF SERVICE ........................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adderly v. Wainwright*,
    58 F.R.D. 389 (M.D. Fla. 1972)................................................................6, 8

*Adderly v. Wainwright*,
    36 U.S.L.W. 2128 (M.D. Fla. Aug. 9, 1967).........................................12

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................12

*Bertrand v. Sava*,
    535 F. Supp. 1020 (S.D.N.Y.), *rev'd on other grounds*,
    684 F.2d 204 (2d Cir. 1982)....................................................................6

*Bijeol v. Benson*,
    513 F.2d 965 (7th Cir. 1975)...................................................................4

*Boumediene v. Bush*,
    553 U.S. 723 (2008)...............................................................................10

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020) .......................................................7

*Ferreyra v. Decker*,
    456 F. Supp. 3d 538 (S.D.N.Y. 2020) ....................................................8

*Gayle v. Meade*,
    614 F. Supp. 3d 1175 (S.D. Fla. 2020)...................................................5

*Harris v. Nelson*,
    394 U.S. 286 (1969)................................................................................4

*Hickman v. Ark. Bd. of Pardons & Paroles*,
    361 F. Supp. 864 (E.D. Ark. 1973) ........................................................7

*Hill v. Nelson*,
    36 U.S.L.W. 2146 (N.D. Cal. Aug. 24, 1967)......................................12

*In re Bonner*,
    151 U.S. 242 (1894)...............................................................................10

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018)................................................................................4

*Knight v. Sheriff of Leon Cnty.*,
  369 F. Supp. 3d 1214 (N.D. Fla. 2019)...................................................................7

*LoBue v. Christopher*,
  82 F.3d 1081 (D.C. Cir. 1996) .............................................................................4

*Malam v. Adducci*,
  475 F. Supp. 3d 721 (E.D. Mich. 2020)...............................................2, 4, 5, 6, 7, 8

*Martinez-Brooks v. Easter*,
  459 F. Supp. 3d 411 (D. Conn. 2020) ..................................................................7

*Mays v. Dart*,
  456 F. Supp. 3d 966 (N.D. Ill.), *aff'd in part, vacated in part,*
  *rev'd in part*, 974 F.3d 810 (7th Cir. 2020)............................................................6

*Mead v. Parker*,
  464 F.2d 1108 (9th Cir. 1972) ..........................................................................4, 5

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  672 F.3d 482 (7th Cir. 2012) ...........................................................................10

*Monk v. Shulkin*,
  855 F.3d 1312 (Fed. Cir. 2017) ..........................................................................3

*Montgomery v. Rumsfeld*,
  572 F.2d 250 (9th Cir. 1978) ..............................................................................6

*Napier v. Gertrude*,
  542 F.2d 825 (10th Cir. 1976) ........................................................................4, 6

*Nielsen v. Preap*,
  586 U.S. 392 (2019) .........................................................................................4

*Pierre v. United States*,
  525 F.2d 933 (5th Cir. 1976)............................................................................10

*Reid v. Donelan*,
  297 F.R.D. 185 (D. Mass.), *enforcement granted*,
  64 F. Supp. 3d 271 (D. Mass. 2014) ....................................................................8

*Savino v. Souza*,
  453 F. Supp. 3d 441 (D. Mass. 2020) ................................................................7, 8

*Schall v. Martin*,
  467 U.S. 253 (1984)...........................................................................................3

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................................2

*Sellars v. Estelle*,
    400 F. Supp. 854 (S.D. Tex. 1975) ........................................................................6

*Trump v. J.G.G.*,
    No. 24A931, 2025 WL 1024097 (U.S. Apr. 7, 2025) ......................................10, 13

*U.S. ex rel. Green v. Peters*,
    153 F.R.D. 615 (N.D. Ill. 1994) ............................................................................6

*U.S. ex rel. Morgan v. Sielaff*,
    546 F.2d 218 (7th Cir. 1976) ................................................................................5

*U.S. ex rel. Sero v. Preiser*,
    506 F.2d 1115 (2d Cir. 1974) ..................................................................4, 5, 6, 13

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ............................................................................................13

*United States v. Mendoza*,
    464 U.S. 154 (1984) ............................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..........................................................................2, 9, 10, 11, 12

*Williams v. Richardson*,
    481 F.2d 358 (8th Cir. 1973) ............................................................................4, 5

*Zepeda Rivas v. Jennings*,
    445 F. Supp. 3d 36 (N.D. Cal. 2020) ....................................................................7

**Statutes**

28 U.S.C. § 1651(a) ..................................................................................................3, 5

28 U.S.C. § 2243 ..................................................................................................3, 8, 10

**Rules**

FED. R. CIV. P. 23 .............................................................................................. passim

FED. R. CIV. P. 23(a) ........................................................................................5, 6, 7, 9

FED. R. CIV. P. 23(a)(2) ............................................................................................9

FED. R. CIV. P. 23(b) ..............................................................................................5, 6

FED. R. CIV. P. 23(b)(2) ................................................................................... passim

v

FED. R. CIV. P. 23(c)(4) ................................................................................10

FED. R. CIV. P. 81(a)(4) ..................................................................................5

**Other Authorities**

Maureen Carroll, *Class Actions, Indivisibility, and Rule 23(b)(2)*,
    99 B.U. L. REV. 59 (2019) ......................................................................12

Brandon L. Garrett, *Aggregation in Criminal Law*,
    95 CAL. L. REV. 383 (2007) ......................................................................7

Benjamin Kaplan, *Continuing Work of the Civil Committee:*
    *1966 Amendments of the Federal Rules of Civil Procedure (I)*,
    81 Harv. L. Rev. 356 (1967) ...................................................................12

Lee Kovarsky, *The New Negative Habeas Equity*,
    137 HARV. L. REV. 2222 (2024) .............................................................8, 10

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U. L. Rev. 97 (2009) ...................................................................9, 11

Richard A. Nagareda, *The Preexistence Principle and the Structure of*
    *the Class Action*, 103 COLUM. L. REV. 149 (2003)...................................11

Adam S. Zimmerman, *The Class Appeal*, 89 U. CHI. L. REV. 1419 (2022) ...................................3

*Developments in the Law: Federal Habeas Corpus*,
    83 HARV. L. REV. 1038 (1970).................................................................8

## STATEMENT OF ISSUE PRESENTED

*Are habeas corpus cases eligible for class action treatment and, if so, under what standards?*

## INTEREST OF AMICI CURIAE[1]

Amici curiae are law professors who study, write, and teach about habeas corpus, class actions, or both. They share an interest in seeing that class action law is applied appropriately in habeas cases.[2] Amici are:

Maureen Carroll, *Professor of Law, University of Michigan Law School*

Zachary D. Clopton, *Professor of Law, Northwestern Pritzker School of Law*

Lee Kovarsky, *Bryant Smith Chair in Law, University of Texas School of Law*

James E. Pfander, *Owen L. Coon Professor of Law, Northwestern Pritzker School of Law*

D. Theodore Rave, *Bernard J. Ward Centennial Professor of Law, University of Texas School of Law*

Judith Resnik, *Arthur Liman Professor of Law, Yale Law School*

Jordan M. Steiker, *Judge Robert M. Parker Chair of Law, University of Texas School of Law*

Adam S. Zimmerman, *Robert Kingsley Professor of Law, University of Southern California Gould School of Law.*

---

[1] The positions taken herein are those of amici in their individual capacities; they are not positions taken by universities or law schools. Their titles and affiliations are listed for identification purposes only.

[2] Although Federal Rule of Appellate Procedure 29(a)(4)(E) does not formally apply to this brief, amici curiae—out of an abundance of caution—certify that: (1) this brief was not authored, in whole or in part, by counsel for any party; (2) no party or counsel for any party contributed money that was intended to fund preparing or submitting this brief; and (3) apart from amici curiae, its members, or its counsel, no other person contributed money that was intended to fund preparing or submitting this brief.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case is a prime candidate for class action treatment. The plaintiffs' allegations raise several common questions that, if resolved on a classwide basis, will be "central to the validity" of claims shared across the whole class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). These questions include: whether the Alien Enemies Act (AEA) is constitutional, whether Tren de Aragua (TdA) counts as a "foreign nation or government" under the AEA, whether the AEA applies outside the context of a "declared war," whether there has been an "invasion or predatory incursion," what due process requires before someone is removed under the AEA, and whether individuals removed under the AEA are entitled to screenings for torture. That the case involves habeas litigation does nothing to undermine the court's authority to certify a class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010) (rejecting the proposition that "eligibility [for class treatment] turns on the 'particular cause of action' asserted").

Courts certify class actions in habeas cases with sufficient plaintiff commonality, just like they do in any other litigation. In fact, "habeas class actions populate every level of the federal judiciary." *Malam v. Adducci*, 475 F. Supp. 3d 721, 732 (E.D. Mich. 2020). Neither the Supreme Court nor the Fifth Circuit has formally decided the question, but *all six circuits* to have reached it have held that class actions can be appropriate in habeas cases. *See* Section I.B, *infra*. To Amici's knowledge, not a single federal appellate opinion has ever declared habeas cases ineligible for class treatment. Habeas class actions are less frequent because individualized issues for hypothetical class members typically dominate the common ones. But in cases where that balance is reversed, class treatment is common, straightforward, and unproblematic.

That is the case here. When a favorable remedy would, in a single stroke, vindicate the rights of all class members challenging the same detention scheme, that is the heart of what Rule 23(b)(2) was designed for. The habeas context does not change the fundamental commonality of

their claims or a court's ability to achieve classwide resolution. But a class action does more than avoid inefficient, duplicative litigation and the corresponding risk of inconsistent judgments. It also prevents recalcitrant defendants from forcing plaintiffs to relitigate materially indistinguishable claims, thereby degrading the force of a court's rulings. And it ensures that vulnerable class members, who would otherwise face major barriers to effective legal representation, have the opportunity to challenge unlawful government policies.

## I.    COURTS HAVE LONG RECOGNIZED THAT CLASS TREATMENT CAN BE APPROPRIATE IN HABEAS CASES.

Habeas class actions are rare, but certainly not unprecedented. Every federal appeals court to reach the issue has made the class action mechanism available to qualifying habeas claimants. Indeed, a categorical prohibition on habeas class actions would contravene statutory law—namely, 28 U.S.C. § 2243, a broad reservation of remedial power in habeas cases. Habeas class actions are infrequent because they do not often satisfy the criteria for class certification, not because otherwise-certifiable classes are barred. Courts either certify classes under Rule 23 or provide equivalent class treatment under authority granted by the All Writs Act, 28 U.S.C. § 1651(a).[3]

### A.    The Supreme Court Has Never Formally Decided That Class Action Treatment Applies in Habeas Cases, But It Has Analyzed Habeas Class Actions Under Rule 23.

The Supreme Court has never formally announced that Rule 23 applies in habeas cases. *See, e.g.*, *Schall v. Martin*, 467 U.S. 253, 261 n.5 (1984) ("We have never decided whether Federal

---

[3] Federal courts often use the All Writs Act, 28 U.S.C. § 1651(a), to give class treatment in cases where Rule 23 does not apply of its own force. The cases discussed herein involve habeas classes, but the § 1651(a) power is recognized, for example, as the source of the Veterans Court's authority to certify class actions. *See Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017) (identifying the All Writs Act as "the authoritative basis to entertain a class action" in the Veterans Court); *see also* Adam S. Zimmerman, *The Class Appeal*, 89 U. CHI. L. REV. 1419, 1428 (2022) ("[A]ppellate courts have used the All Writs Act to fashion new procedures in aid of their jurisdiction, including class action rules.").

Rule of Civil Procedure 23, providing for class actions, is applicable to petitions for habeas corpus relief."); *Harris v. Nelson*, 394 U.S. 286, 294 n.5 (1969) (referencing Rule 23 in underscoring that "[w]e intimate no view on whether the Federal Rules may be applicable with respect to other aspects of a habeas corpus proceeding"). Still, the Supreme Court has reached Rule 23 certification questions that it would not ordinarily reach if habeas cases were ineligible for class treatment. *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 403-04 (2019) (finding jurisdiction proper in habeas case because "the fact that the named plaintiffs obtained some relief before class certification does not moot their claims"); *Jennings v. Rodriguez*, 583 U.S. 281, 312-14 (2018) (remanding with instructions to determine whether habeas class met the certification requirements of Rule 23(b)(2)); *see also Malam*, 475 F. Supp. 3d at 732 ("The Supreme Court has reviewed several habeas classes for which the certification below was not challenged on appellate review.").

### B. Appellate Courts That Have Reached the Issue Unanimously Permit Class Treatment in Habeas Cases.

The six circuits to have squarely decided whether habeas cases are suited for class treatment have all held the same thing: that class actions are permitted. *See, e.g.*, *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974) (finding "compelling justification for allowing a multi-party proceeding similar to the class action authorized by the Rules of Civil Procedure"); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975) (approving use of "representative procedure analogous to the class action provided for in Rule 23"); *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973) (expressly reversing the district's court's holding that "a class action is never appropriate in a habeas corpus proceeding"); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972) ("Nor can we agree that a petition for a writ of habeas corpus can never be treated as a class action."); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.2 (10th Cir. 1976) (approving the use of "class treatment" in habeas cases); *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996) ("If by that he meant to

4

claim that there is no equivalent to class actions in habeas, he was wrong, for courts have in fact developed such equivalents.").

The six circuits that have explicitly endorsed class action treatment are a mix of decisions that do so under Rule 23 and under non-Rule 23 authority. The Ninth Circuit, for example, has explicitly held that the class-worthiness of the habeas relief was "a question for the court to decide in a proceeding under Rule 23." *Mead*, 464 F.2d at 1113. [4] The cases that follow the Second Circuit rule, by contrast, invoke All-Writs authority under 28 U.S.C. § 1651(a) to implement "a multi-party proceeding similar to the class action authorized by the Rules of Civil Procedure." *Sero*, 506 F.2d at 1125;[5] *see also, e.g.*, *U.S. ex rel. Morgan v. Sielaff*, 546 F.2d 218, 221 (7th Cir. 1976) (holding that Rule 23 provides "guidance in determining whether a representative action was appropriate").

### C. Whatever the Formal Source of Authority, Courts Apply Rule 23 Criteria to Adjudicate the Question of Class Treatment.

When Rule 23 applies, the familiar Rule 23(a) and (b) criteria for certification necessarily apply, too. *See, e.g.*, *Mead*, 464 F.2d at 1112 ("[T]he court might decide to treat the case as a class action on one or more of the grounds stated in Rule 23(b)."); *Williams*, 481 F.2d at 361 (expressly adopting ruling of *Mead*, *supra*); *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1226 (S.D. Fla. 2020) (holding that habeas class certification under Rule 23 depends on whether "(1) each of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met; and (2) the proposed class

---

[4] Under Federal Rule of Civil Procedure 81(a)(4), the Federal Rules of Civil Procedure apply in habeas cases "to the extent that the practice in those proceedings … (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Class treatment in habeas cases is not precluded by statute or any of the cited rules, and the extensive citation to authority in this Brief demonstrates that it is consistent with the history of habeas adjudication.

[5] *Sero* is considered "the seminal case on representative habeas actions." *Malam v. Adducci*, 475 F. Supp. 3d 721, 733 (E.D. Mich. 2020) (explaining how courts derive authority for habeas class actions from the All Writs Act).

satisfies at least one of the requirements listed in Rule 23(b)"). Even courts that trace authority for class treatment to the All Writs Act also generally apply those same Rule 23(a) and (b) criteria. *See Malam*, 475 F. Supp. 3d at 732-33, 739-43 (leading district court case); *see also, e.g.*, *Napier*, 542 F.2d at 827 n.2 (applying "an analogous procedure by reference to Rule 23"); *Adderly v. Wainwright*, 58 F.R.D. 389, 401 (M.D. Fla. 1972) (applying Rule 23 procedure "by analogy" to plaintiff class challenging the constitutionality of the Florida death penalty). So, however federal courts get there, they tend to decide the appropriateness of any class treatment by reference to: (1) numerosity, (2) typicality, (3) commonality, and (4) adequacy of the class representation. *See, e.g.*, *Sero*, 506 F.2d at 1126 (applying Rule 23(a) criteria to class treatment authorized under All Writs Act); *Bertrand v. Sava*, 535 F. Supp. 1020, 1025 (S.D.N.Y.), *rev'd on other grounds*, 684 F.2d 204 (2d Cir. 1982) (deciding habeas class action by reference to "numerosity, common questions of law or fact, typicality, and fair and adequate protection of the class members' interests"). Rule 23(b)(2)-like classes are certified this way. *See, e.g.*, *Malam*, 475 F. Supp. 3d at 743 ("The Court finds a Rule 23(b)(2) class action to be an appropriate framework from which it can analogize proceedings to govern the habeas litigation group."); *U.S. ex rel. Green v. Peters*, 153 F.R.D. 615, 617 n.2, 619 (N.D. Ill. 1994) (certifying analog to Rule 23(b)(2) habeas class of indigent prisoners challenging delays in criminal adjudication).

Habeas class treatment is less frequent only because certain habeas plaintiffs often fail the Rule 23 tests. *See, e.g.*, *Sellars v. Estelle*, 400 F. Supp. 854, 856-57 (S.D. Tex. 1975) (refusing on Rule 23(a) grounds to certify habeas class challenging the effect of gubernatorial clemency because there were "not questions of law or fact common to the class").[6] In the post-conviction

---

[6] *See also, e.g.*, *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) (refusing class treatment for habeas claimants seeking Army discharge, on ground that "numerous factual distinctions among the individual claims would make a class action unmanageable"); *Mays v. Dart*,

context with which courts are most familiar, habeas classes generally are not certified because the factual and legal idiosyncrasies of each post-conviction plaintiff's case tend to swamp any commonality across a claimant group. *See* Brandon L. Garrett, *Aggregation in Criminal Law*, 95 CALIF. L. REV. 383, 410 (2007); *see also id.* at 406 (explaining that post-conviction class actions disappeared because courts were forced to "undertake decisions regarding complex individual procedural questions before reaching any common issues to the group").

But not all habeas claims are post-conviction claims. When the form of custody and the nature of the dispute mean that potential habeas plaintiffs share common issues, class treatment is both appropriate and more common.[7] This is particularly so where the habeas plaintiffs would otherwise lack effective representation. *See Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 451 (D. Conn. 2020). In recent years, many courts have certified class actions when noncitizen plaintiffs challenge aspects of immigration detention. *See, e.g.*, *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38 (N.D. Cal. 2020) ("There is nothing about the procedural posture of this lawsuit— such as the fact that it seeks habeas relief or that it is on behalf of immigration detainees—that

---

456 F. Supp. 3d 966, 994 (N.D. Ill.), *aff'd in part, vacated in part, rev'd in part*, 974 F.3d 810 (7th Cir. 2020) ("Rule 23(b)(2) is the sticking point for the habeas corpus plaintiffs' attempt to bring a representative action on behalf of [a] subclass."); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 201 (D.D.C. 2020) (refusing to certify proposed nationwide habeas class of transgender women because "the proposed class does not meet the requirements of commonality and adequacy"); *Knight v. Sheriff of Leon Cnty.*, 369 F. Supp. 3d 1214, 1224 (N.D. Fla. 2019) ("[H]er claim is not typical of the proposed class claims."); *Hickman v. Ark. Bd. of Pardons & Paroles*, 361 F. Supp. 864, 865 (E.D. Ark. 1973) ("Although there is a community of interest among those persons the named plaintiffs wish to represent, the factual circumstances vary so greatly with respect to each individual case that the denial or grant of habeas relief on a class basis becomes impossible").

[7] *See, e.g.*, *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 450 (D. Conn. 2020) (provisionally certifying habeas class action of medically vulnerable prisoners challenging home confinement and compassionate release practices); *Savino v. Souza*, 453 F. Supp. 3d 441, 452 (D. Mass. 2020) (using habeas class action to order COVID-19 protections, and considering Rule 23(a) & (b) criteria); *Malam*, 475 F. Supp. 3d at 734, 743 ("Rule 23 analysis favors certifying the habeas litigation group" of medically vulnerable noncitizens detained in ICE custody).

precludes provisional class certification."); *Savino v. Souza*, 453 F. Supp. 3d 441, 453 (D. Mass. 2020) (certifying Rule 23(b)(2) class of civil immigration detainees seeking expeditious bail determinations); *Reid v. Donelan*, 297 F.R.D. 185, 194 (D. Mass.), *enforcement granted*, 64 F. Supp. 3d 271 (D. Mass. 2014) (same); *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 543 (S.D.N.Y. 2020) (certifying habeas class of immigration detainees because the injury and claims "do not turn on facts unique to each Petitioner beyond their having preexisting conditions that make them vulnerable to the virus").

In fact, restricting the class treatment of habeas cases would contravene the habeas statute. Section 2243 concludes with a broad reservation of remedial authority to courts exercising habeas power: "The court shall … dispose of the matter as law and justice require." Congress first enacted the law-and-justice power in the 1874 Revisions to the United States Code, and it "affirms habeas power to remedy unlawful custody efficaciously." Lee Kovarsky, *The New Negative Habeas Equity*, 137 HARV. L. REV. 2222, 2235 (2024); *see also id.* at 2234-42 (tracing statutory history of statutory text). For these reasons, and for half a century, courts that have certified habeas classes have expressly linked class treatment to § 2243. *See, e.g.*, *Malam*, 475 F. Supp. 3d at 733, 739, 743 (repeatedly citing § 2243 as part of authority to certify habeas class); *Adderly*, 58 F.R.D. at 400-03 (certifying a habeas class challenging the Florida death penalty by reference to § 2243, and concluding that "[b]oth 'law' and 'justice' have required" class treatment).

## II.    NOTHING ABOUT THE HABEAS REMEDY IS INCONSISTENT WITH CLASS ACTION TREATMENT.

Representative litigation is perfectly suited for certain habeas cases. *See Developments in the Law: Federal Habeas Corpus*, 83 HARV. L. REV. 1038, 1170-73 (1970) ("A habeas corpus class action (or a class action with respect to particular issues) may be the most efficient way to resolve the common claims of a large number of petitioners. In some situations it may be the only way to

provide them with relief."). As Section I.C explains, habeas class treatment is less frequent only because variation across potential *post-conviction* plaintiff classes is too great. But when a less-differentiated detainee class seeks a common remedy for common claims of illegality against a common policy, a class action is appropriate. Indeed, Rule 23(b)(2) is designed precisely for such situations—that is, where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

As the Supreme Court explained in *Wal-Mart*, a prerequisite to class treatment is that "there are questions of law or fact common to the class." 564 U.S. at 350 (quoting FED. R. CIV. P. 23(a)(2)). Rule 23(a) requires only a "single common question." *Id.* at 359 (cleaned up). But that question must be susceptible of a "common answer[] apt to drive resolution of the litigation." *Id.* at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). In other words, the class members' claims "must depend on a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

The habeas claims here raise several common questions that, if resolved on a classwide basis, will be "central to the validity" of all of the class members' claims. These questions include: whether the AEA is constitutional, whether TdA counts as a "foreign nation or government" under the AEA, whether the AEA applies outside the context of a "declared war," whether there has been an "invasion or predatory incursion," what due process requires before someone is removed under the AEA, and whether individuals removed under the AEA are entitled to screenings for torture.

9

Resolving these classwide questions on a classwide basis is precisely what the class action mechanism is for. Indeed, depending on how these common questions are answered, they could resolve the litigation with respect to the whole class, without having to reach any individual issues. If, for example, the Court finds that there is no invasion or predatory incursion, or that the AEA cannot be invoked against a nonstate actor like TdA, then it can issue injunctive and declaratory relief barring *all* class members' removal under the statute.[8] Individual questions, like whether each petitioner is, in fact, a member of TdA, only matter if all of the common questions are first resolved in the government's favor.[9]

---

[8] District courts have broad remedial power in habeas cases, tracing largely to 28 U.S.C. § 2243, and that permits judges to "dispose of the matter as law and justice require." *See also* Lee Kovarsky, *The New Negative Habeas Equity*, 137 HARV. L. REV. 2222, 2240 (2024) (explaining that § 2243 "expand[s] the menu of available remedies upon a determination that the claimant was entitled to relief"). The Supreme Court explained in *Boumediene v. Bush* that the "habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." 553 U.S. 723, 779 (2008).  That expanded menu of remedies, which would include things like injunctions and declaratory relief, has been explicitly recognized for AEA plaintiffs. *See Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *1 (U.S. Apr. 7, 2025) (holding that, even though they did not "formally request relief from confinement," the claims of those subject to AEA removal "fall within the core of the writ of habeas corpus" and "immediate physical release is not the only remedy") (internal citations, quotation marks, and alterations omitted); *In re Bonner*, 151 U.S. 242, 261 (1894) ("The court is invested with the largest power to control and direct *the form of judgment* to be entered in cases brought up before it on habeas corpus.") (emphasis added); *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976) (explaining that injunctive relief in habeas cases is permitted when it is "necessary to enforce the petitioners' right of liberty, and inhered in the question of custodial restraint upon liberty").

[9] Rule 23(b)(2) has no predominance requirement because "[w]hen a class seeks an indivisible injunction benefiting all its members at once … [p]redominance and superiority are self-evident." *Wal-Mart*, 564 U.S. at 362-63. The Court is, of course, free to limit the scope of class certification to those common issues under Rule 23(c)(4) (allowing class certification as to particular issues). If the Court were eventually called on to decide individual questions, such as whether particular petitioners are TdA members, it could do so in individualized, follow-on proceedings. *Cf. McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012) (reversing denial of Rule 23(b)(2) employment discrimination class and noting that separate follow-on proceedings may be needed to determine effect on class members' earnings).

Habeas might be casually regarded, in its simplest form, as an individual remedy—but that does not preclude class treatment of common questions.[10] Per *Wal-Mart*, "the key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" 564 U.S. at 360 (quoting Nagareda, 84 N.Y.U. L. REV. at 132). One detainee could obtain release without necessarily affecting the rights of the others, but the potential for individual relief does not preclude Rule 23(b)(2) resolution of the classwide questions.

"Properly conceived, mandatory class treatment proceeds from the recognition that it is not possible to ascertain the legality of the defendant's conduct as to one affected claimant without necessarily doing so as to all others." Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 COLUM. L. REV. 149, 232 (2003). Here, the common questions have indivisible answers. TdA is either a "foreign nation," or it is not. Its American activity is either a "predatory incursion," or it is not. The President's Proclamation either complies with the AEA, or it does not. Due process either permits removal on some quantum of notice and process, or it does not. People facing removal are either entitled to torture screenings, or they are not. These questions do not have different answers for different class members. A "single injunction or declaratory judgment" resolving those questions would thus "provide relief to each member of the class." *Wal-Mart*, 564 at 360. Repeated relitigation of these questions in individual habeas proceedings would breed delay and risk inconsistent judgments.

---

[10] Whether habeas corpus is technically an equitable remedy like an injunction or a legal one derived from common law writs, Rule 23(b)(2) provides the appropriate framework for considering whether class treatment is appropriate. As the Supreme Court made clear in *Wal-Mart*, the appropriateness of a Rule 23(b)(2) class action does not turn on whether the remedies sought would have been historically categorized as "equitable" or "legal." 564 U.S. at 365 (explaining that the fact that "a backpay award is equitable in nature" is irrelevant). The relevant question is whether the same relief can be afforded to the class as a whole in one stroke.

Answering these sorts of questions on a classwide basis is precisely why Rule 23(b)(2) class actions exist: "'[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." *Wal-Mart*, 564 at 361 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Civil rights cases also deal with individual rights (*e.g.*, the right to equal protection). But the drafters of Rule 23 recognized that a class action extending injunctive relief to the entire class was far superior to individual litigation, which they viewed as "inadequate and inefficient." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 HARV. L. REV. 356, 389 (1967).[11]

Experience with desegregation litigation illustrates why. If a black student, suing on her own, prevailed in her challenge to the policy excluding her from an all-white school, her injury would be redressed by admitting her—and only her—to that school. *See* Maureen Carroll, *Class Actions, Indivisibility, and Rule 23(b)(2)*, 99 B.U. L. REV. 59, 79-80 (2019). But forcing each black student to litigate to judgment his or her right to attend an integrated school against the wishes of a recalcitrant state government would entail intolerable delay and expense. And it would place an unfair burden on class members, forcing them to prove again and again the illegality of the same government policy.[12]

The same considerations apply in habeas corpus cases when the legality of a government policy turns on a question common to the detainees. Class treatment is far superior to repeated

---

[11] In his article explaining the 1966 amendments to the class action rule, Benjamin Kaplan, the Advisory Committee Reporter and primary draftsman of Rule 23, cited two habeas class actions as showing "good understanding in spelling out and applying the delimiting criteria" of the rule. Kaplan, 81 HARV. L. REV. at 395 & n.151 (citing *Adderly v. Wainwright*, 36 U.S.L.W. 2128 (M.D. Fla. Aug. 9, 1967) and *Hill v. Nelson*, 36 U.S.L.W. 2146 (N.D. Cal. Aug. 24, 1967)).

[12] Note that nonmutual collateral estoppel does not apply against the federal government. *United States v. Mendoza*, 464 U.S. 154, 158 (1984).

individual litigation in such a scenario. It is more efficient for the courts. It avoids problems of mootness if a particular plaintiff is released (or removed beyond the court's jurisdiction) before the litigation concludes.[13] It prevents a potentially recalcitrant defendant from complying with a court order in one case but continuing to detain similarly situated detainees illegally. And it relieves class members—many of whom will be detained without access to counsel—of the need to file separate suits just to prove yet again that they are detained under an illegal policy.

In this case, class treatment may be essential to preserving class members' rights. Certification of a class action and appointment of class counsel—upon whom the notice of removal the Supreme Court required in *Trump v. J.G.G.* will have to be served—may be the only way to ensure that persons detained under the President's Proclamation 10903 have a meaningful opportunity to raise and be heard on their claims before they are removed from the country. *See, e.g.*, *Sero*, 506 F.2d at 1126 (justifying class treatment where, because most class members "would not have the benefit of counsel to prepare habeas corpus petitions, it is not improbable that more than a few would otherwise never receive the relief here sought on their behalf").

## <u>CONCLUSION</u>

For the foregoing reasons, Professor Amici believe that this Court should hold that habeas litigation is eligible for class action treatment, and that it should certify the plaintiff class as requested by the named Plaintiffs.

---

[13] *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397-99 (1980) (recognizing that a habeas class action would preserve the court's own jurisdiction over "inherently transitory" claims that may be mooted by a prisoner's release before the court has time to resolve them).

Respectfully Submitted,

*/s/ Anne M. Johnson*
Anne M. Johnson
Texas Bar No. 00794271
ajohnson@tillotsonlaw.com
Stephani A. Michel
Texas Bar No. 24116763
smichel@tillotsonlaw.com
**TILLOTSON JOHNSON & PATTON**
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone: (214) 382-3041
Facsimile: (214) 292-6564

Lee Kovarsky* (*not barred in N.D. Texas*)
Texas Bar No. 24053310
Bryant Smith Chair in Law
The University of Texas School of Law
727 E. Dean Keeton Street
Austin, Texas 78705
Telephone: 512.232.1504
Email: lee.kovarsky@law.utexas.edu

**ATTORNEYS FOR PROFESSOR AMICI**

14

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that, pursuant to Local Rule 7.2(c), this Amicus Brief does not exceed 25 pages, and the total number of words, exclusive of the front and back matter appropriate for omission, is 4,801 words as counted by Microsoft Word Software.

 /s/ *Anne M. Johnson*
Anne M. Johnson


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 13th day of May, 2025, a true and correct copy of the foregoing document has been served via e-filing upon all counsel of record.

 /s/ *Anne M. Johnson*
Anne M. Johnson