# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 20, 2025
Lyle W. Cayce
Clerk

No. 25-10534

---

A.A.R.P., *on their own behalf and on behalf of others similarly situated*;
W.M.M., *on their own behalf and on behalf of others similarly situated*;
F.G.M., *on their own behalf and on behalf of others similarly situated*,

        *Petitioners—Appellants*,

*versus*

DONALD J. TRUMP, *in his official capacity as President of the United States*; PAMELA BONDI, *Attorney General of the United States, in her official capacity*; KRISTI NOEM, *Secretary of the United States Department of Homeland Security, in her official capacity*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, *Acting Director of the Director of United States Immigration and Customs Enforcement, in his official capacity*; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCO RUBIO, *Secretary of State, in his official capacity*; UNITED STATES STATE DEPARTMENT; JOSH JOHNSON, *in his official capacity as acting Dallas Field Office Director for United States Immigration and Customs Enforcement*; MARCELLO VILLEGAS, *in his official capacity as the Facility Administrator of* THE BLUEBONNET DETENTION CENTER; PHILLIP VALDEZ, *in his official capacity as Facility Administrator of* THE EDEN DETENTION CENTER; JIMMY JOHNSON, *in his/her official capacity as Facility Administrator of* THE PRAIRIELAND DETENTION CENTER; JUDITH BENNETT, *in her official capacity as Warden of the Rolling Plains Detention Center*,

        *Respondents—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:25-CV-59

_____

PUBLISHED ORDER

Before Ho, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:

Last Friday, the Supreme Court vacated the judgment of our court, which had dismissed this appeal for lack of jurisdiction. The Court remanded the case back to us for further proceedings, and directed us to proceed "expeditiously." *A.A.R.P. v. Trump*, 605 U.S. _, _ (2025).

Accordingly, this matter is expedited to the next available randomly designated regular oral argument panel.

Case No. 25-10534

James C. Ho, *Circuit Judge*, concurring:

Petitioners, identified as members of Tren de Aragua, a designated foreign terrorist organization, should not be allowed to proceed in this appeal.

Our April 18 order held that we lack jurisdiction to grant the relief sought by Petitioners. *See* Order, *A.A.R.P. v. Trump*, No. 25-10534 (5th Cir. Apr. 18, 2025); *see also id.* at 3 (Ramirez, J., concurring).

But last Friday, the Supreme Court reversed our unanimous decision, over a vigorous dissent by Justice Alito, joined only by Justice Thomas. *See A.A.R.P. v. Trump*, 605 U.S. _ (2025).

As an inferior court, we're duty-bound to follow Supreme Court rulings—whether we agree with them or not. We don't have to like it. But we have to do it. So I concur in our order today expediting our consideration of this matter, as directed by the Supreme Court.

But I write to state my sincere concerns about how the district judge as well as the President and other officials have been treated in this case. I worry that the disrespect they have been shown will not inspire continued respect for the judiciary, without which we cannot long function. *See*, *e.g.*, *In re Westcott*, 135 F.4th 243, 250–51 (5th Cir. 2025) (Ho, J., concurring).

## I.

It is not the role of the judiciary to check the excesses of the other branches, any more than it's our role to check the excesses of any other American citizen. Judges do not roam the countryside looking for opportunities to chastise government officials for their mistakes.

Rather, our job is simply to decide those legal disputes over which Congress has given us jurisdiction.

Case No. 25-10534

Under 28 U.S.C. § 1292(a)(1), appellate courts have jurisdiction to review interlocutory orders of the district courts that "refus[e]" to enter an injunction. That includes orders that have "the practical effect of refusing an injunction." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981).

That is demonstrably not this case. The district court made amply clear to Petitioners that it stood ready to hear their requests for emergency relief—indeed, the court had already ruled on one such request the day before. *See A.A.R.P. v. Trump*, 2025 WL 1148140 (N.D. Tex. Apr. 17, 2025).

The court simply advised Petitioners that the Government would get 24 hours to respond before it would issue a ruling, one way or another. *See A.A.R.P. v. Trump*, 2025 WL 1177194, *1 (N.D. Tex. Apr. 18, 2025). The court also reminded Petitioners that the Government had assured the court that federal officials would not remove Petitioners without first giving the court advance notice. *See A.A.R.P.*, 2025 WL 1148140, *1.

So when they sought emergency relief at 12:34 a.m. on April 18, Petitioners "were fully aware that the District Court intended to give the Government 24 hours to file a response." *A.A.R.P.*, 605 U.S. at _ (Alito, J., dissenting). They "said nothing about a plan to appeal if the District Court elected to wait for that response." *Id.*

At 12:48 p.m. on April 18, however, Petitioners "suddenly informed the court that they would file an appeal if the District Court did not act within 42 minutes, *i.e.*, by 1:30 p.m." *Id.*

So when the court (to no one's surprise) couldn't comply with their patently unreasonable timetable, Petitioners immediately filed this appeal.

Our court responded expeditiously. That night, we held that we lacked jurisdiction to hear this appeal under 28 U.S.C. § 1292(a)(1). Our April 18 order explained that "Petitioners gave the court only 42 minutes to

Case: 25-10534   Document: 25-1   Page: 5   Date Filed: 05/20/2025
Case 1:25-cv-00059-H   Document 74   Filed 05/21/25   Page 5 of 9   PageID 665

Case No. 25-10534

act—and did not give Respondents an opportunity to respond." Order, *A.A.R.P.*, No. 25-10534, at 2.

As our distinguished colleague put it, 42 minutes is quite plainly an "unreasonable deadline." *Id.* at 4 (Ramirez, J., concurring). "[W]e cannot find an effective denial of injunctive relief based on the district court's failure to issue the requested ruling within 42 minutes." *Id.*

Our decision was unanimous because it's obvious: 42 minutes is not remotely enough time to review and analyze all of the relevant legal authorities and prepare a reasoned ruling.

Notably, the Justices themselves have expressed concerns about making decisions under far more forgiving time constraints than those demanded here. Recall the emergency relief sought in *Does 1-3 v. Mills*, 142 S. Ct. 17 (2021). Members of the Court expressed concern about the "use [of] the emergency docket to force the Court" to "grant . . . extraordinary relief" "on a short fuse without benefit of full briefing." *Id.* at 18 (Barrett, J., concurring in the denial of application for injunctive relief).

The amount of time considered too short in *Does 1-3* was nine days. Compared to 42 minutes, however, nine days is a lifetime to decide a motion.

So the district court reasonably assumed that the principle invoked in *Does 1-3* to justify denying relief to law-abiding citizens concerned about their religious liberties in the COVID-19 era would likewise justify denying relief to illegal alien members of a foreign terrorist organization.

The district court was absolutely right, then, when it noted that issuing a competent and defensible ruling "required some level of care. And some level of care takes time." *A.A.R.P.*, 2025 WL 1177194, *2.

As Justice Alito would later note, "[w]e should commend this careful approach, not criticize it." *A.A.R.P.*, 605 U.S. at __ (Alito, J., dissenting).

Case No. 25-10534

## II.

Rather than commend the district court, however, the Supreme Court charged the district court with "inaction—not for 42 minutes but for 14 hours and 28 minutes." *Id.* at __. This inaction was, according to the Court, tantamount to "refusing" to rule on the injunction. *Id.* at __.

This charge is worth exploring. To get to 14 hours and 28 minutes (rather than 42 minutes), the Court was obviously starting the clock at 12:34 a.m., rather than 12:48 p.m. (when Petitioners told the district court for the first time that they wanted a ruling before the Government could respond).

But starting the clock at 12:34 a.m. not only ignores the court's express instructions respecting the Government's right to respond. It also ignores the fact that the Court is starting the clock at—12:34 a.m.

We seem to have forgotten that this is a district court—not a Denny's. This is the first time I've ever heard anyone suggest that district judges have a duty to check their dockets at all hours of the night, just in case a party decides to file a motion.

If this is going to become the norm, then we should say so: District judges are hereby expected to be available 24 hours a day—and the Judicial Conference of the United States and the Administrative Office of the U.S. Courts should secure from Congress the resources and staffing necessary to ensure 24-hour operations in every district court across the country.

If this is not to become the norm, then we should admit that this is special treatment being afforded to certain favored litigants like members of Tren de Aragua—and we should stop pretending that Lady Justice is blindfolded.

Case No. 25-10534

\* \* \*

I have no problem making clear when a district court has abused its discretion and thereby jeopardized the reputation of the judiciary. *See Westcott*, 135 F.4th at 250 n.1 (Ho, J., concurring) (collecting examples).

But this district judge conducted himself in a reasonable and indeed admirable manner. All inferior court judges expect to be reversed on appeal from time to time. But I'd wager that this judge never imagined he'd be reversed on grounds of laziness. (A brief glance at the docket suggests an extraordinarily diligent judge who somehow found the time to balance the needs of this challenging case—including a number of motions and orders throughout the week—all while presiding over a complex and sensitive criminal trial involving multiple child victims.)

So any criticism of this district judge is unwarranted and unfortunate. It's no wonder that Justice Alito rejected the Court's decision as "misleading" and a "mischaracterization of what happened in the District Court." 605 U.S. at _ (Alito, J., dissenting). As he put it, "[t]he Court characterizes the District Court's behavior during the period in question as 'inaction,' but in my judgment, that is unfair. . . . [T]he judge . . . was working with utmost diligence to resolve the important and complicated issues presented by the motion as quickly as possible." *Id.* (cleaned up).

Moreover, a distinguished former district judge has already come forward with these pointed observations: "Judge Hendrix's service was exemplary. The majority was wrong to malign this judge and sent a disturbing message about procedural norms. . . . We need more jurists like Judge Hendrix, and the Supreme Court should think more carefully about how its rulings could distort the work of the lower courts." Paul G. Cassell, *A Supreme Court Injustice to a District Judge*, Wall St. J., May 20, 2025.

7

Case No. 25-10534

### III.

The district judge is not the only public official whose treatment in this case warrants comment.

Recall why the district court established a 24-hour filing deadline. The court firmly believed that the Government should have the right to express its views before any ruling is issued. And rightly so.

Our adversarial legal system has long been premised on the notion that judges should impartially consider the views of both sides of any dispute before issuing a ruling. *See* 605 U.S. at _ (Alito, J., dissenting) ("the court took the entirely reasonable position that it would wait for the Government to respond to the applicants' request for a temporary restraining order (TRO) before acting"); *see also Lefebure v. D'Aquilla*, 15 F.4th 670, 674–75 (5th Cir. 2021).

It should go without saying that the President and his fellow Executive Branch officials deserve the same respect that courts regularly afford every other litigant—including other Presidents and officials.

One former President tried to shame members of the Supreme Court during a State of the Union address by disparaging a recent ruling. *See* Barack Obama, *Address Before a Joint Session of the Congress on the State of the Union*, 1 Pub. Papers of the Presidents (Obama 2010) 75, 81 (Jan. 27, 2010). That same President also suggested that it would be illegitimate for the Supreme Court to declare an act of Congress unconstitutional—while a case challenging his signature legislative achievement was pending before the Court. *See, e.g.*, Peter Wallsten and Robert Barnes, *Obama's Supreme Court comments stir debate*, Wash. Post, Apr. 4, 2012.

Another former President was disbarred from practicing law before the Supreme Court. *See In re Clinton*, 534 U.S. 1016 (2001). *See also*

8

Case No. 25-10534

Editorial, *Biden's Student Loan Boast: The Supreme Court 'Didn't Stop Me'*, WALL ST. J., Feb. 23, 2024 ("American Presidents may not like Supreme Court decisions, but most since Andrew Jackson haven't bragged about defying its rulings.").

Yet I doubt that any court would deny any of those Presidents the right to express their views in any pending case to which they are a party, before issuing any ruling.

Our current President deserves the same respect.

\* \* \*

This appeal should be over. Petitioners denied the district court the opportunity to rule on their emergency motion in the first instance. That alone should be enough to terminate this appeal.

But the Supreme Court has reversed our unanimous judgment. So this appeal must now proceed. I accordingly concur.