**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

W.M.M., *et al.*, on their own behalf and on behalf of all others similarly situated,

*Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Respondents–Defendants*.

Case No. 1:25-cv-59-H

# PETITIONERS-PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

I. President Trump's Proclamation Invoking the AEA ........ 3

II. Named Petitioners and the Proposed Class ........ 4

ARGUMENT ........ 5

I. THE PROPOSED CLASS SATISFIES RULE 23(a)'S REQUIREMENTS ........ 6

A. Joinder Is Impracticable ........ 6

B. The Class Presents Common Questions of Law and Fact ........ 9

C. The Petitioners' Claims are Typical of Class Members' Claims ........ 11

D. Petitioners and Petitioners' Counsel Will Adequately Protect the Interests of the Proposed Class ........ 12

II. THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS ........ 13

III. THE COURT SHOULD CERTIFY THE CLASS. ........ 15

A. Courts Routinely Certify Rule 23(b)(2) Classes Even Though Individualized Claims Cannot Be Resolved on a Classwide Basis. ........ 15

B. Class Resolution of Common Claims Does Not Preclude Individualized Claims... 18

C. A District-Wide Class Is Necessary for Detainees to Obtain Judicial Review. ........ 19

IV. ALTERNATIVELY, A CLASS CAN ALSO BE CERTIFIED UNDER HABEAS EQUITY PRINCIPLES. ........ 20

V. ALTERNATIVELY, THE COURT SHOULD CERTIFY PETITIONERS' MULTIPLE COMMON CLAIMS AS ISSUES FOR CLASS RESOLUTION UNDER RULE 23(c)(4). ........ 23

CONCLUSION ........ 25

CERTIFICATE OF SERVICE ........ 27

## TABLE OF AUTHORITIES

**Cases.** **Page(s)**

*A.A.R.P. v. Trump*,
145 S. Ct. 1034 (2025) .......... 21, 22

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025) .......... 4, 7

*A.A.R.P. v. Trump*,
No. 24A1007 (Apr. 21, 2025) .......... 6

*Aguilar-Ayala v. Ruiz*,
973 F.2d 411 (5th Cir. 1992) .......... 14, 21

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) .......... 12

*Bernard v. Gulf Oil Corp.*,
841 F.2d 547 (5th Cir. 1988) .......... 19

*Bijeol v. Benson*,
513 F.2d 965 (7th Cir. 1975) .......... 21

*Califano v. Yamasaki*
442 U.S. 682 (1979) .......... 16, 24

*Cameron v. Tomes*,
990 F.2d 14 (1st Cir. 1993) .......... 19

*Chauvin v. State Farm*,
2007 WL 2903321 (E.D. La. Oct. 2, 2007) .......... 19

*Chavez v. Plan Benefit Servs., Inc.*,
108 F.4th 297 (5th Cir. 2024) .......... 25

*Chisholm v. Jindal*,
No. 97-CV-3274, 1998 WL 92272 (E.D. La. Mar. 2, 1998) .......... 9

*In re Class Action Application for Habeas Corpus on Behalf of All Material Witnesses in W. Dist. of Texas*,
612 F. Supp. 940 (W.D. Tex. 1985) .......... 22

*Cnty. of Riverside v. McLaughlin*,
500 U.S. 44 (1991) .......... 8, 17, 24

*Cole v. Livingston*,
4:14-CV-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016) .......... 10

*Cooper v. Federal Reserve Bank of Richmond*,
467 U.S. 867 (1984) ........ 16, 17, 19

*D.B.U. v. Trump*,
349 F.R.D. 228 (D. Colo. 2025) ........ 18, 21, 23, 24

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ........ 10, 25

*Doster v. Kendall*,
144 S. Ct. 481 (2023) ........ 18

*Doster v. Kendall*,
48 F.4th 608 (6th Cir. 2022) ........ 18

*G.F.F. v. Trump*,
348 F.R.D. 586 (S.D.N.Y. 2025) ........ 18, 21, 23, 24

*Gardner v. Westinghouse Broad. Co.*,
437 U.S. 478 (1978) ........ 8

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ........ 11, 17

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ........ 8

*Hamama v. Adducci*,
912 F.3d 869 (6th Cir. 2018) ........ 21

*Ictech-Bendeck v. Waste Connections Bayou, Inc.*,
No. CV 18-7889, --- F. Supp. 3d ----, 2025 WL 932772 (E.D. La. Mar. 27, 2025) ........ 13

*J.A.V. v. Trump*,
349 F.R.D. 152 (S.D. Tex. 2025) ........ *passim*

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ........ 8, 9

*J.G.G. v. Trump*,
772 F. Supp. 3d 18 (D.D.C. 2025) ........ 3, 9

*J.G.G. v. Trump*,
No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025) ........ 3, 9, 22, 23

*Jack v. Am. Linen Supply Co.*,
498 F.2d 122 (5th Cir. 1974) ........ 7

*James v. City of Dallas, Tex.*,
254 F.3d 551 (5th Cir. 2001) ....................................................................................11, 12

*Jenkins v. Raymark Industries, Inc.*,
782 F.2d 468 (5th Cir. 1986) ............................................................................................13

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)..........................................................................................................22

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021)..........................................................................................................22

*Jones v. Diamond*,
519 F.2d 1090 (5th Cir. 1975) ............................................................................................8

*LoBue v. Christopher*,
82 F.3d 1081 (D.C. Cir. 1996) ..........................................................................................21

*M.A.P.S. v. Garite*,
349 F.R.D. 631 (W.D. Tex. 2025) ..............................................................................18, 20

*M.D. v. Perry*,
294 F.R.D. 7 (S.D. Tex. 2013)...........................................................................................10

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
672 F.3d 482 (7th Cir. 2012) ............................................................................................18

*Mead v. Parker*,
464 F.2d 1108 (9th Cir. 1972) ..........................................................................................21

*Morrow v. Washington*,
277 F.R.D. 172 (E.D. Tex. 2011)......................................................................................12

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ..........................................................................7, 8, 11, 13

*Murillo v. Musegades*,
809 F. Supp. 487 (W.D. Tex. 1992)...........................................................................14, 15

*Napier v. Gertrude*,
542 F.2d 825 (10th Cir. 1976) ..........................................................................................21

*Neese v. Becerra*,
342 F.R.D. 399 (N.D. Tex. 2022) .....................................................................................25

*Nielsen v. Preap*,
586 U.S. 392 (2019).......................................................................................................8, 22

*ODonnell v. Harris Cnty.*,
No. CV H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) ....................................14

*Parham v. J. R.*,
442 U.S. 584 (1979).....................................................................................................17

*Pederson v. La. State Univ.*,
213 F.3d 858 (5th Cir. 2000) ...........................................................................................7

*Penson v. Terminal Transp. Co.*,
634 F.2d 989 (5th Cir. 1981) .........................................................................................14

*Phillips v. Joint Legis. Comm. on Performance & Expenditure Rev.*,
637 F.2d 1014 (5th Cir. 1981) .........................................................................................7

*Pitts v. Greenstein*,
No. 10-cv-635, 2011 WL 2193398 (M.D. La. June 6, 2011) ..............................................9

*Pride v. Correa*,
719 F.3d 1130 (9th Cir. 2013) .......................................................................................19

*In re Rodriguez*,
695 F.3d 360 (5th Cir. 2012) .................................................................11, 12, 17, 18

*Sanders v. United States*,
373 U.S. 1 (1963).........................................................................................................19

*U.S. ex rel. Sero v. Preiser*,
506 F.2d 1115 (2d Cir. 1974).........................................................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010).........................................................................................................5

*Simms v. Jones*,
296 F.R.D. 485 (N.D. Tex. 2013) ...................................................................................11

*St. Jules v. Savage*,
512 F.2d 881 (5th Cir. 1975) .........................................................................................22

*Trump v. J. G. G.*,
604 U.S. 670 (2025)...............................................................................................19, 20

*Valentine v. Collier*,
490 F. Supp. 3d 1121 (S.D. Tex. 2020) ..................................................................10, 11

*Valentine v. Collier*,
993 F.3d 270 (5th Cir. 2021) ..................................................................................10, 11

*Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*,
543 F. Supp. 198 (S.D. Tex. 1982) ....................14

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ....................19

*W.M.M. v. Trump*,
154 F.4th 207 (5th Cir. 2025) ....................4

*W.M.M. v. Trump*,
2026 WL 2349473 (5th Cir. Aug. 13, 2026) ....................4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .................... *passim*

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ....................18

*Williams v. Richardson*,
481 F.2d 358 (8th Cir. 1973) ....................21

*Yates v. Collier*,
868 F.3d 354 (5th Cir. 2017) ....................6, 10, 13, 15

*Zeidman v. J. Ray McDermott & Co., Inc.*,
651 F.2d 1030 (5th Cir. 1981) ....................6, 8

**Statutes**

8 U.S.C. § 1231 ....................24

8 U.S.C. § 1231(b)(3) ....................24

Alien Enemies Act of 1798, 50 U.S.C. § 21 ....................1, 3, 23, 24

**Rules**

Fed. R. Civ. P. 23 .................... *passim*

Fed. R. Civ. P. 23(a) .................... *passim*

Fed. R. Civ. P. 23(a)(1) ....................6

Fed. R. Civ. P. 23(a)(2) ....................9, 10, 11

Fed. R. Civ. P. 23(a)(3) ....................11

Fed. R. Civ. P. 23(a)(4) ....................12

Fed. R. Civ. P. 23(b) ....................................................................................................13

Fed. R. Civ. P. 23(b)(2)............................................................................................ *passim*

Fed. R. Civ. P. 23(c)(4)..........................................................................................3, 23, 25

**Regulations**

8 C.F.R. § 208.16 ..........................................................................................................24

8 C.F.R. § 208.17 ..........................................................................................................24

8 C.F.R. § 208.18 ..........................................................................................................24

8 C.F.R. § 1208.16 ........................................................................................................24

8 C.F.R. § 1208.17 ........................................................................................................24

8 C.F.R. § 1208.18 ........................................................................................................24

90 Fed. Reg. 13034-36.....................................................................................................3

**Other Authorities**

Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4455.2 (3d ed.)...............................................18

Newberg and Rubenstein on Class Actions § 4:35 (6th ed.) ............................................ *passim*

## INTRODUCTION

A class action is appropriate for this challenge to Respondents-Defendants' ("Respondents") invocation of the Alien Enemies Act of 1798 ("AEA"). On March 14, 2025, the President invoked the AEA against Tren de Aragua (TdA), declaring the Venezuelan gang responsible for an "invasion or predatory incursion" but providing no process for individuals to challenge alleged TdA membership. Numerous individuals with no apparent connection to TdA, including people with no criminal records, lawful entrants, and individuals whose tattoos had innocent personal or cultural meanings, were designated as gang members and, without an opportunity to contest the AEA designation, transferred to detention in El Salvador where they faced severe abuse and torture. Others remain in the United States, designated as alien enemies based on alleged association with TdA that they deny, and face the continuing threat of removal to conditions in which they fear serious harm, without a meaningful opportunity to contest the government's designation. These Petitioners-Plaintiffs ("Petitioners") seek to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation.

The proposed class readily satisfies the requirements of Rule 23.

Numerosity is present, as demonstrated by the government's arrest numbers for alleged TdA members and the Northern District of Texas's role as a hub for AEA removals. The nature of the class makes joinder impracticable for other reasons. The proposed class is inherently transitory, consisting of a detained population whom the government can quickly transfer between judicial districts at will. And it includes unknown, unnamed future members who may be designated under the AEA and detained in this District.

All class members suffer the same injury: risk of unlawful removal under the AEA, violation of their right to due process, and unlawful denial of their statutory rights to the removal and detention procedures contained in the INA. The class raises common questions that will generate common answers, including whether the Proclamation and its implementation violate the AEA, the INA, and the statutory protections for asylum seekers. The Petitioners' legal claims are typical of those whom they seek to represent. Additionally, Petitioners will fairly and adequately protect the interests of the proposed class, and they are represented by experienced counsel with significant experience litigating class actions and cases involving the rights of noncitizens, including in connection to the government's invocation of the AEA.

Lastly, the proposed class satisfies Rule 23(b)(2) because Respondents have acted or refused to act on grounds that apply generally to the class by summarily removing noncitizens without statutorily and constitutionally mandated safeguards and placing others at risk of similar removal. And, the class would be amenable to uniform group remedies, such as granting a writ of habeas corpus that enjoins Respondents from removing Petitioners and the class pursuant to the Proclamation, declaring the Proclamation unlawful, and enjoining the Respondents from applying the Proclamation without appropriate notice and opportunity to respond.

Given that the government previously transferred Venezuelan men from all over the country to this District for purposes of removal pursuant to the AEA, more people are likely to be detained and subject to rapid removal pursuant to the Proclamation. Proceeding with a district-wide class would thus serve the purpose of Federal Rule of Civil Procedure 23. *See* Newberg and Rubenstein on Class Actions § 4:35 (6th ed.) (hereinafter "Newberg and Rubenstein") (discussing "critical safeguards for class members that certification alone can provide").

The Court should grant class certification under Rule 23(b)(2), appoint Petitioners as Class

Representatives, and appoint the undersigned as Class Counsel. Or it can use Rule 23 as a guidepost to certify a class under principles of habeas jurisdiction and equity. Every circuit that has addressed the issue has found that a class habeas action may be maintained. Alternatively, the Court can certify Petitioners' common claims under Rule 23(c)(4).

## BACKGROUND

### I. President Trump's Proclamation Invoking the AEA

The background of this litigation is set forth in greater detail in Petitioners' simultaneously filed Summary Judgement Memorandum. The AEA Proclamation at issue here provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *See* 90 Fed. Reg. 13034-36. Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15, after already making plans and processing people for removal. *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *16 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring); *J.G.G. v. Trump*, 772 F. Supp. 18, 27 (D.D.C. 2025).

Within two hours of the Proclamation's publication, the first plane with AEA designees departed from Texas and ultimately landed in El Salvador, where designees were transferred to the notorious CECOT prison and suffered torture and abuse. In April 2025, the government subsequently transferred Venezuelan detainees from across the country to the Bluebonnet Detention Facility in this District for possible removal under the Proclamation. These transfers occurred rapidly and without advance notice to detainees or their counsel. As the events in this litigation demonstrate, an individual may enter the proposed class, receive an AEA notice, and be

transported toward an airport for removal within a matter of days.

The Proclamation remains in effect, and the government has not disclaimed ongoing AEA designations. As has been true throughout this litigation, the government possesses full information regarding persons designated under the Proclamation and their locations. Petitioners' counsel have been able to identify only those individuals whose circumstances have independently come to counsel's attention. The government likewise controls when and where detainees are transferred out of the District. Many individuals in this District remain at risk of rapid removal and face the same devastating outcome as those removed to CECOT.

Petitioners filed this habeas class action in April 2025. On April 17, this Court denied Petitioners' initial request for a temporary restraining order based on the absence of imminent harm in the record then before it. Hours later, however, putative class members at Bluebonnet received AEA removal notices and were told that they would be removed "tonight or tomorrow." *A.A.R.P. v. Trump*, 605 U.S. 91, 92 (2025). Petitioners sought emergency relief, and the Supreme Court ordered the government not to remove any member of the putative class. *Id.* at 93, 96.

On remand, a Fifth Circuit panel granted a preliminary injunction, but the panel decision was later vacated when the court granted rehearing en banc. *W.M.M. v. Trump*, 154 F.4th 207 (5th Cir. 2025). While the case was before the en banc court, the government removed the three original named Petitioners under the INA. The Fifth Circuit then dismissed the appeal because no original named Petitioner remained in the United States but expressly left open whether this Court should add or substitute new representatives and certify the proposed class. *W.M.M. v. Trump*, 2026 WL 2349473, at *4–5 (5th Cir. Aug. 13, 2026). Petitioners then moved to add representatives. ECF 88.

## II. Named Petitioners and the Proposed Class

Petitioners have moved, without opposition, to add D.A.A., T.I.A., and E.A.A. as proposed

class representatives. ECF No. 88. Each was detained in the Northern District of Texas, designated for removal under the Proclamation, and served with an AEA notice. Each remains in government custody, remains subject to the Proclamation, is a member of the putative class that sought emergency relief from the Supreme Court, and raises the same statutory and constitutional challenges as the original Petitioners. *See* ECF No. 88-1.

D.A.A. remains detained at Bluebonnet. On April 18, 2025, officers served him with an AEA notice in English that they did not translate or explain. The notice did not say that one can contest the designation under the AEA or state a timeframe for removal. Officers then placed him on a bus with other Venezuelan detainees and transported them toward an airport before returning them to Bluebonnet. ECF No. 88-1. T.I.A. and E.A.A. were similarly served with untranslated AEA notices while detained at Bluebonnet and transported toward an airport before being returned. *Id.* The government later transferred T.I.A. and E.A.A to facilities outside this District. *Id.* All three deny any affiliation with TdA and seek to challenge their removal under the Proclamation.

The proposed class includes individuals who were, are, or will be detained in this District and subjected to the Proclamation. It challenges only removal under the Proclamation and does not seek to prevent detention or removal under the INA or any other lawful authority.

## ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). As set forth below, Petitioners' proposed class satisfies the Rule 23(a) and (b)(2) requirements.

The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories

described in subdivision (b)." Here, Respondents "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class," and therefore certification is appropriate under Rule 23(b)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Yates v. Collier*, 868 F.3d 354, 367 (5th Cir. 2017).

## I. THE PROPOSED CLASS SATISFIES RULE 23(a)'S REQUIREMENTS

### A. Joinder Is Impracticable.

The proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class or subclass members required for a finding of numerosity. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038-39 (5th Cir. 1981) ("federal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity") (quoting 5 J. Newberg, Class Actions § 8812, at 836 (1977)). Instead, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id*. at 1038. Those "other relevant factors" include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim," *id*., as well as the "financial resources of class members, and the ability of claimants to institute individual suits," and the "judicial economy arising from avoidance of a multiplicity of actions," Newberg and Rubenstein § 3:12.

Here, while the numbers of this putative class have fluctuated due to the government's actions, in April 2025 the putative class included at least 70 to 100 individuals. *See* Applicants' Supp. Appx. to Reply at 2a (Harris Decl.) ¶ 11, *A.A.R.P. v. Trump*, No. 24A1007 (Apr. 21, 2025) (estimating 100 people were given AEA notices); *id.* at 5a (Collins Decl. ¶ 2) (roughly 70

transported to airport). That is when the government attempted to remove the members of the putative class en masse with "notice roughly 24 hours before removal, devoid of any information about how to exercise due process rights"—notice that "surely d[id] not pass muster" under the Constitution. *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025). There is no question that this meets Rule 23's numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (joinder is presumptively impracticable for class of 40-plus members).

While there are now apparently fewer class members currently detained in the district due to the government's actions in removing putative class members under the INA, it is plain that this transitory class could swell again at a moment's notice. The Department of Homeland Security has continued to arrest alleged TdA members and associates. *See, e.g.*, Class App. 10 (ICE and CBP have arrested 1,232 individuals "associated with Tren de Aragua"). Given that the government "carefully tracks the TdA members who are amenable to removal proceedings," Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025), ECF No. 28-1 (identifying more than 250 people in the United States who the government believes are TdA members), and given the Northern District of Texas's established role as a staging ground for AEA deportations, *see infra* pp. 9-10, there are likely many future members of the class who are at risk of being transferred into the district and staged for removal.

In addition to the sheer number of individuals subject to the Proclamation who have been detained in the District and likely will be again, joinder is impracticable for these individuals for several reasons. First, joinder is impracticable because of the existence of "unknown, unnamed future members," which "weighs in favor of certification." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000); *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (discussing impracticability of joinder of unknown persons); *Phillips v. Joint Legis. Comm. on*

*Performance & Expenditure Rev.*, 637 F.2d 1014, 1022 (5th Cir. 1981) ("joinder of unknown individuals is 'certainly impracticable'"). Indeed, the numerosity inquiry is particularly flexible where a class seeks injunctive relief and includes future members. "[S]maller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975), *abrogated on other grounds by Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978). It is impracticable for individuals who are not currently detained in the District but will be in the future to join this litigation.

Second, joinder is impracticable because the class is inherently transitory. The Supreme Court has repeatedly held that an "inherently transitory" class warrants certification, even absent a named plaintiff currently within the class definition. *See*, *e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). "The Supreme Court crafted" this class treatment of inherently transitory claims "in injunctive class actions challenging criminal and immigration detention procedures." *J.D. v. Azar*, 925 F.3d 1291, 1308 (D.C. Cir. 2019). In *Nielsen v. Preap*, Justice Alito explained that even if there is *no* named plaintiff with a live claim at the time of class certification, certification in immigration detention cases is still possible because "the harms alleged are transitory enough to elude review" otherwise. 586 U.S. 392, 403-04 (2019); *see also Mullen*, 186 F.3d at 624 ("transient nature" of class contributed to impracticability of joinder).

Third, the class is "geographically dispersed," which impedes joinder. *Mullen*, 186 F.3d at 624; *see also Zeidman*, 651 F.2d at 1038 (geographic dispersion relevant to impracticability of joinder). Here, the government has previously transferred Venezuelan men, including Petitioners, from detention centers all over the country into this district rapidly and without warning to stage

for imminent removal. *See* App. 99-100 (April 17 Collins Decl. ¶¶ 7-10) (describing rapid transfer of AEA designee to Texas and attempted removal); *id.* at 102 (April 18 Collins Decl. ¶¶ 10-12); *see also J.G.G.*, 2025 WL 914682, at *17 (describing rapid transfers to Southern District of Texas in early March 2025); *J.G.G. v. Trump*, 772 F. Supp. 3d 18, 26 (D.D.C. 2025) (same).

Finally, joinder is further impracticable given the nature of the class: indigent immigration detainees, who face significant practical barriers to retaining and communicating with counsel. In similar circumstances, with transitory classes of individuals with limited resources, courts regularly certify class actions. *See, e.g.*, *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (joinder may be impracticable in light of "fluidity" of custody, "the dispersion of class members across the country, and their limited resources"); *cf. Chisholm v. Jindal*, No. 97-CV-3274, 1998 WL 92272, at *3 (E.D. La. Mar. 2, 1998) (finding joinder impracticable "especially in light of the fact that [putative class members] are indigent"); *Pitts v. Greenstein*, No. 10-cv-635, 2011 WL 2193398, at *4 (M.D. La. June 6, 2011) (joinder impracticable where many proposed class members "lack the financial resources necessary to bring suit individually in order to vindicate their rights").

In sum, a class action is especially warranted here for this inherently transitory class of detained individuals whom the government can move at will with virtually no notice. Indeed, the fact that previously detained class members are not currently detained within this District highlights how the government's transfer of putative class members threatens to prevent them from obtaining meaningful judicial review absent certification: future members will move into the district and potentially be moved out before they too can assert any claims.

### B. Members of the Class Have Common Questions of Law and Fact.

The claims asserted by the proposed class include common questions of law and fact that satisfy Rule 23(a)(2). At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class

members 'have suffered the same injury.'" *Wal-Mart Stores*, 564 U.S. at 349–50. "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). Even a single common question of law or fact is sufficient, so long as the resolution of the common question "will *resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Cole v. Livingston*, 4:14-CV-1698, 2016 WL 3258345, at *3 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017). A "pattern or practice that is generally applicable to the class as a whole" satisfies that requirement. *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013).

Petitioners in this case have identified a "single course of conduct"—the government's attempt at unlawful removal of noncitizens under the AEA—that provides the basis for every class member's injury. *M.D.*, 294 F.R.D. at 28-29; *see also Valentine v. Collier*, 490 F. Supp. 3d 1121, 1158 (S.D. Tex. 2020), *rev'd on other grounds*, 993 F.3d 270 (5th Cir. 2021) (commonality met where "[e]ither the answer to this question is 'yes,' in which case [defendants are] required to provide that specific accommodation for the entire subclass, or the answer is 'no,' in which case class-wide relief is not warranted. But either way, the answer to that question can be resolved with respect to every . . . class member at once.").

In addition to this common injury, numerous questions are common to the proposed class: whether the removals go beyond the power granted to the President under the AEA; whether the removals violate statutory and regulatory immigration removal procedures; and whether Respondents' denial of meaningful procedural protections to challenge class members' removal violates the AEA and Fifth Amendment. Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Yates*, 868 F.3d at 365 n.6 ("we reaffirm

that Rule 23(a)(2) requires only that a plaintiff demonstrate at least one common question of law or fact" (citing *Dukes*, 564 U.S. at 359)); *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) (same). And while class members may present individualized defenses to their designation as alien enemies, "this 'obvious fact does not destroy commonality'" for purposes of addressing these common questions. *Valentine*, 490 F. Supp. 3d at 1159 (citing *Yates*, 868 F.3d at 363). Additionally, while it is established that all petitioners have standing, if there were any doubt, each of D.A.A., T.I.A. and E.A.A have received an AEA notice. *See W.M.M.*, 782 F. Supp. 3d at 388 (finding petitioner's claim ripe where he received AEA notice).

Answering any one of these common legal questions will "drive the resolution of the litigation." *Wal-Mart Stores*, 564 U.S. at 350. Should the Court agree that Respondents cannot lawfully remove noncitizens under the AEA because there has, for instance, been no "invasion or predatory incursion" by a "foreign government or nation," all class members will benefit from the requested relief, which includes a declaration to that effect and an injunction preventing Respondents from conducting removals under the AEA Proclamation. At this stage, a class action is the appropriate means of addressing threshold systemic issues that affect all class members.

**C. The Petitioners' Claims Are Typical of Class Members' Claims.**

Petitioners here have claims typical of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "[T]he test for typicality is not demanding," *Mullen*, 186 F.3d at 625, and "does not require a complete identity of claims." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds in In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012). Rather, the class representative's claim must have

the same *essential characteristics* as that of the putative class. *Morrow v. Washington*, 277 F.R.D. 172, 194 (E.D. Tex. 2011). Claims arising from a similar course of conduct and sharing the same legal theories are typical claims even if there is factual difference between the representative and others in the class. *James*, 254 F.3d at 571.

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Wal-Mart Stores*, 564 U.S. at 349 n.5 ("The commonality and typicality requirements of Rule 23(a) tend to merge" (quoting *Falcon*, 457 U.S. at 157 n. 13). Each proposed class member, including the proposed class representatives, faces the same principal injury (unlawful removal), based on the same government policy (invocation of the AEA), which is unlawful as to the entire class because it violates the AEA itself, as well as the immigration laws and the Constitution. Petitioners thus share an identical interest in invalidation of Respondents' implementation of removals pursuant to the Proclamation. Moreover, as with commonality, any factual differences that might exist here between Petitioners and proposed class members are not enough to defeat typicality, and as necessary can be addressed in individual actions after the common questions are resolved.

### D. Petitioners and Petitioners' Counsel Will Adequately Protect The Interests Of The Proposed Class.

Petitioners and undersigned counsel also fulfill the requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation inquiry has two components: (i) whether the named plaintiffs have interests that are antagonistic to or in conflict with those whom they seek to represent and (ii) whether the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

Here, there are no differences that create conflicts between the named Petitioners' interests and the class members' interests. Petitioners will fairly and adequately protect the interests of the

proposed class. Petitioners do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Petitioners aim to secure relief that will protect them and the entire class from Respondents' challenged policy and to enjoin Respondents from further violations. Petitioners have no incentive to deviate from this class relief. Nor do Petitioners seek financial gain at the cost of absent class members' rights. There are no differences that "create conflicts between the proposed class representatives' interests and the class members' interests." *Mullen*, 186 F.3d at 625–26; *see also Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

In addition, proposed class counsel includes experienced attorneys with extensive experience in complex immigration and class action litigation. *See* Class App. 2-4 (Galindo Decl. ¶¶ 1-11). As the declaration makes clear, Proposed Class Counsel have been appointed class counsel in several successful class action cases concerning the rights of noncitizens and others. *See, e.g.*, *id.* ¶¶ 4, 7.[1]

## II. THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). *Yates*, 868 F.3d at 366. Petitioners

[1] District courts in the Fifth Circuit consider ascertainability an "implied requirement to Rule 23," "requir[ing] that the proposed class be adequately defined and clearly ascertainable." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. CV 18-7889, --- F. Supp. 3d ----, 2025 WL 932772, at *7 (E.D. La. Mar. 27, 2025) (citing *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023)). "'[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (citation omitted). The proposed class here is readily ascertainable because membership in the class is defined by clear and objective criteria that are known to the government and because identifying class members is administratively feasible, as demonstrated by the government's declaration in *J.G.G.* describing their identification of TdA members. Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025), ECF No. 28-1 (identifying 258 people in the United States who the government believes are TdA members).

seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Fifth Circuit instructs that Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) (citing Advisory Committee Notes, 39 F.R.D. 98, 102 (1966)). Thus, courts in the Fifth Circuit have certified under Rule 23(b)(2) similar classes of individuals subject to restrictive immigration-related policies. *See, e.g.*, *Murillo v. Musegades*, 809 F. Supp. 487, 503 (W.D. Tex. 1992) (certifying class of all individuals of Hispanic descent who reside, are employed, attend school, or travel within a specific Texas school district subject to unlawful stops, searches and detention by immigration officers); *ODonnell v. Harris Cnty.*, No. CV H-16-1414, 2017 WL 1542457, at *1 (S.D. Tex. Apr. 28, 2017) (certifying Rule 23(b)(2) class of misdemeanor arrestees who cannot afford monetary bail due to indigency, asserting violations of equal protection and due process).[2] "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds that apply generally to the class by subjecting them all to the same Proclamation and attempting to remove

[2] *See also, e.g.*, *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415, 421 (5th Cir. 1992) (class action habeas petition challenging detention of noncitizen witnesses where government opposed class certification based only on typicality and mootness); *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 543 F. Supp. 198, 202 (S.D. Tex. 1982) (noting class of all Vietnamese fishermen subject to civil rights violations by Ku Klux Klan and Texas Emergency Reserve).

them without complying with the AEA, INA, and due process. *See Yates*, 868 F.3d at 366 ("It is well-established that instead of requiring common issues, Rule 23(b)(2) requires common behavior by the defendant toward the class.") (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)). Petitioners seek injunctive and declaratory relief that would benefit them as well as all members of the proposed class in the same fashion. "The relief Petitioners seek is precisely the type of remedial action for which Rule 23(b)(2) was designed." *Murillo*, 809 F. Supp. 487 at 503 (citing *Penson*, 634 F.2d 993); *see also* Newberg and Rubenstein on Class Actions § 1:3 (Rule 23(b)(2) "is typically employed in civil rights and other cases where monetary relief is not the primary remedy. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.").

The class is exactly the kind of class that Rule 23(b)(2) is meant to embrace. The class's interests are sufficiently related to warrant aggregate litigation. This is especially the case because members of the proposed class are in detention, often lack immigration counsel, and are indigent; they may also be detained in various facilities across the country and are therefore very unlikely to bring their own individual suits. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class members than to force individuals to pursue piecemeal litigation, especially given that the government's policy is to provide only seven days for detainees to obtain counsel and file a habeas petition.

## III. THE COURT SHOULD CERTIFY THE CLASS.

### A. Courts Routinely Certify Rule 23(b)(2) Classes Even Though Individualized Claims Cannot Be Resolved on a Classwide Basis.

This Court previously reasoned that class certification was inappropriate because of the possibility of individualized, as-applied claims that could not be litigated on a classwide basis. *See W.M.M.*, 782 F. Supp. 3d at 398-402 ("if the petitioners lose on the merits" of their classwide claims, "then relief may be appropriate only to some members of the class"). Petitioners

acknowledge that an assertion that a person is not a member of TdA would need to be decided on an individualized basis. *See J.A.V.*, 349 F.R.D. 152, 158 (S.D. Tex. 2025) (certifying class while noting the "relatively-narrow issue of the person's alleged membership in TdA"). But both common and individual claims are almost always present in cases challenging government or corporate policies. Nearly every Rule 23(b)(2) case involves classwide claims that, if they are unsuccessful, would give way to individualized claims by some class members. But that does not prevent courts from resolving broad challenges on a classwide basis.

For instance, in *Califano v. Yamasaki*, a plaintiff class challenged an agency's attempt to recover funds that the agency had overpaid to class members. 442 U.S. 682, 686-88 (1979). Individual claims about whether a particular person was, in fact, overpaid were not amenable to classwide resolution. *Id.* at 701 (noting "the need for case-by-case adjudication" of these claims). Yet the Supreme Court held that class certification was appropriate, because the class had one common challenge—to the agency's notice and hearing procedures—that, if successful, would apply to the entire class. As the Court explained, by resolving this one common claim, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every social security beneficiary to be litigated in an economical fashion." *Id.*

Similarly, in *Wal-Mart v. Dukes*, the Supreme Court explained that certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class," 564 U.S. 338, 360 (2011) and that "any claim for individualized relief" would be pursued separately from the "classwide injunction," *id.* at 361. In fact, the Court explained that Rule 23(b)(2) was modeled on "civil rights cases" challenging discriminatory policies, *id.* (cleaned up), where it is routine for challenges to an overall policy to be resolved on a class basis, followed by individual claims that are litigated separately. *See Cooper v. Federal*

*Reserve Bank of Richmond*, 467 U.S. 867, 880-81 (1984) (permitting certain "individual claims" to proceed in a "separate action" after classwide discrimination claims failed).

Indeed, the Supreme Court has repeatedly decided classwide challenges to broad policies before remanding for courts to "consider any individual claims" that remained. *Parham v. J. R.*, 442 U.S. 584, 616-17 (1979); *see Cnty. of Riverside*, 500 U.S at 56-57 (resolving claim that arrest procedures were categorically deficient, while acknowledging that as-applied claims "in a particular case" would vary with context). These classes would not have been possible if as-applied claims' existence negated the ability to bring classwide facial challenges.

This Court relied on *General Telephone Co. v. Falcon*, where the Supreme Court rejected a Rule 23(b)(2) class. 457 U.S. 147 (1982); ECF 67 at 31-32. But *Falcon*'s holding was premised on the Court's conclusion that there was no "general policy" to challenge. 457 U.S. at 159 n.15; *see id.* at 157 (rejecting "unsupported allegation that the company has a policy of discrimination"). *Wal-Mart* rejected a class for the same reason—because a "general policy" was "entirely absent." 564 U.S. at 353. Here, however, Petitioners challenge an explicit written policy: the Proclamation. Both *Falcon* and *Wal-Mart* made clear that class certification would have been appropriate if there had been a "general policy of" unlawful action, *id.*—even though, if class claims against such a policy had failed, class members' subsequent discrimination claims would have been individualized, *Cooper*, 467 U.S. at 880-81.

The Fifth Circuit has made this clear as well. For instance, in *In re Rodriguez*, the Fifth Circuit affirmed the certification of a Rule 23(b)(2) class to challenge a company's "fee assessment and collection practice," even though it acknowledged "the individualized manner in which each class member may have been affected by the practices." 695 F.3d 360, 365-67 (5th Cir. 2012). In fact, the Fifth Circuit noted a host of related individual claims that were not amenable to classwide

resolution but explained that those issues did not prevent class certification for the one claim that sought broad-based relief against a company policy. *Id.* at 366-67 ("the injunctive claim on its own does not involve the myriad issues that may arise in each case") (quotation marks omitted).

Indeed, courts regularly certify Rule 23(b)(2) classes challenging broad policies, despite the likelihood of later individualized claims by class members—including in the AEA context. *See, e.g.*, *J.A.V. v. Trump*, 349 F.R.D. 152 (S.D. Tex. 2025); *M.A.P.S. v. Garite*, 349 F.R.D. 631 (W.D. Tex. 2025); *D.B.U. v. Trump*, 349 F.R.D. 228 (D. Colo. 2025); *G.F.F. v. Trump*, 348 F.R.D. 586 (S.D.N.Y. 2025); *see also, e.g.*, *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490-91 (7th Cir. 2012); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). And almost any time plaintiffs challenge a government policy, the challenge and its consequences are the same as the Court identified here: If the classwide challenges succeed, the litigation may end for everyone; if they fail, class members can bring as-applied challenges. That circumstance is not a reason to deny class certification for the common claims. *See J.A.V.*, 349 F.R.D. at 158.

### B. Class Resolution of Common Claims Does Not Preclude Individualized Claims.

This Court previously indicated that it would decline to certify a class, in part because, if it decided the common claims on a classwide basis, its decision might preclude any subsequent individualized claims as a matter of res judicata. *W.M.M.*, 782 F. Supp. 3d at 402-03. But it is black-letter law that "a judgment in a class action does not preclude later lawsuits by class members concerning individualized claims." Newberg and Rubenstein § 18:17 ("This is so even though the individualized claims may share such a close factual predicate with the claims in the class suit that they would have had to have been joined in two-party litigation."); *see* Wright & Miller, 18A Fed.

Prac. & Proc. Juris. § 4455.2 (3d ed.) (same). Otherwise, a class could never challenge a policy based on a common question without precluding all future individualized challenges.

The Supreme Court made this clear in *Cooper*, where it held that a class judgment is not "dispositive of the individual claims the . . . petitioners have alleged in [a] separate action." 467 U.S. at 880-81 (holding that the failure of a classwide claim of discrimination did not preclude a class member's individualized claim of discrimination). This makes sense because a class judgment cannot bar individualized claims that could not have been litigated by the class. The lower courts have implemented this principle accordingly. *See Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 569-70 (5th Cir. 1988) (applying *Cooper* and addressing "plaintiffs' individual claims" that could still be litigated after the "classwide claims"); *Cameron v. Tomes*, 990 F.2d 14, 18 (1st Cir. 1993) (same); *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (same); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 114 (E.D.N.Y. 2012) (same); *Chauvin v. State Farm*, 2007 WL 2903321, at *7 (E.D. La. Oct. 2, 2007) (same). Beyond that, res judicata generally does not apply in habeas cases. *See, e.g.*, *Sanders v. United States*, 373 U.S. 1, 7-8 (1963) (applying "the familiar principle that res judicata is inapplicable in habeas proceedings") (cleaned up).[3]

**C. A District-Wide Class Is Necessary for Detainees to Obtain Judicial Review.**

Class certification is critical to effectuate the Supreme Court's instruction in *J.G.G.* that individuals subject to the Proclamation be allowed "to actually seek habeas relief" before they are removed. 604 U.S. at 673. As explained more fully in Petitioners' summary judgment brief, detainees in this District face serious barriers to accessing counsel and seeking judicial review. Forcing them to proceed individually is very likely to result in many people being removed with

[3] For the same reasons, class certification as to the common issues would not prevent "a petitioner who is a citizen or only thirteen years old" from immediately asserting their individualized claim. *See W.M.M.*, 782 F. Supp. 3d at 402.

no real chance to seek judicial review. And this problem will be greatly magnified if the government responds to a denial of class certification by moving even greater numbers of detainees into this district. Without a class, a large number of detainees may be deported to CECOT before they can obtain representation.

The Court also suggested that a class might not extend beyond Bluebonnet. *W.M.M.*, 782 F. Supp. 3d at 399. But a district-wide class is necessary here to prevent the government from unilaterally defeating any relief by moving detainees to different facilities within this District. The government moved large numbers of AEA detainees into this District mere days after judges in other districts had enjoined removals. ECF No. 2-1 at 3.

Limiting the class to one detention facility would thus allow the government to continue its shell game of moving detainees in a manner that thwarts judicial review. Petitioners have named the proper custodians as defendants—the wardens of each immigration detention facility in this District—and venue is proper for each one under the district-of-confinement rule. *See J.G.G.*, 604 U.S. at 673-74 (requiring habeas petitions to be filed in the "district of confinement"). Every other court to consider this issue has certified classes encompassing the entire judicial district. It is critical that the same happen here, to ensure that people are not removed before their claims can be heard. There is no barrier to certifying such a class based on the fact that there are multiple wardens for facilities in the District. *See, e.g.*, *M.A.P.S.*, 349 F.R.D. at 640-41 (granting class certification in case where petitioners sued multiple wardens for district-wide relief).

## IV. ALTERNATIVELY, A CLASS CAN ALSO BE CERTIFIED UNDER HABEAS EQUITY PRINCIPLES.

A habeas class may be maintained either under Rule 23 or in equity informed by Rule 23 principles. Six Circuits have found a habeas class appropriate where there are common issues, and no Circuit has held otherwise to Petitioners' knowledge. *See*, *e.g.*, *U.S. ex rel. Sero v. Preiser*, 506

F.2d 1115, 1125 (2d Cir. 1974) (the Supreme Court "confirms the power of the judiciary, under the All Writs Act, . . . to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage'" (citing *Harris v. Nelson*, 394 U.S. 286 (1960)); *Bijeol v. Benson*, 513 F.2d 965, 967-68 (7th Cir. 1975) (agreeing with *Sero* that "a representative procedure analogous to the class action provided for in Rule 23 may be appropriate in a habeas corpus action" like the one at issue); *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973) ("under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts"); *Mead v. Parker*, 464 F.2d 1108, 1112-13 (9th Cir. 1972) ("there can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group. In such cases, it has been held that a class action may be appropriate"); *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996) ("courts have in fact developed" "equivalent[s] to class actions in habeas"); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.5 (10th Cir. 1976) (recognizing "class treatment" with "reference to Rule 23 in proper circumstances"); *see also Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (noting classwide habeas still available notwithstanding INA provision barring classwide injunctive relief). Indeed, specifically in AEA cases, multiple courts have relied on the All Writs Act to certify habeas classes and issue relief to such classes. *See J.A.V.*, 349 F.R.D. at 156, 159; *D.B.U.*, 349 F.R.D. at 235; *G.F.F.*, 348 F.R.D. at 588; *cf. A.A.R.P. v. Trump*, 145 S. Ct. 1034 (Mem.) (2025) (citing All Writs Act to enjoin removal of "any member of the putative class of detainees" in this case).

The Fifth Circuit has not squarely addressed the issue but has, as a practical matter, considered class habeas cases. *See, e.g.*, *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 421 (5th Cir. 1992) (habeas class of noncitizen witnesses challenging government practice of detention over ten

days, where government has opposed certification based on mootness and lack of typicality); *St. Jules v. Savage*, 512 F.2d 881, 882 (5th Cir. 1975) (reversing dismissal and remanding where district court held that each petitioner's challenge had to be "considered individually" because those inmates "present a single constitutional challenge"); *In re Class Action Application for Habeas Corpus on Behalf of All Material Witnesses in W. Dist. of Texas*, 612 F. Supp. 940, 948 (W.D. Tex. 1985) (granting summary judgment to class of individuals detained as material witnesses in the Western District of Texas). Additionally, the Supreme Court has ruled on the merits in class habeas cases. *See*, *e.g., Johnson v. Guzman Chavez*, 594 U.S. 523, 532 (2021); *Nielsen v. Preap*, 586 U.S. 392, 400 (2019); *Jennings v. Rodriguez*, 583 U.S. 281, 290 (2018).

This Court previously emphasized that it would not lower the bar to certify a class in equity. *W.M.M.*, 782 F. Supp. 3d at 404-05 (emphasizing "only if" in Rule 23). As explained above, the four requirements are satisfied here. The "only if" language therefore does not pose any impediment to a habeas class under the All Writs Act.

This Court previously cast doubt on use of the All Writs Act, citing Judge Walker in *J.G.G.* and Justice Alito in *A.A.R.P.* But Judge Walker merely observed—in dissent—that class treatment was a "poor vehicle" to challenge "whether a particular plaintiff is a member of Tren de Aragua." *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *35 n.34, *39 (D.C. Cir. Mar. 26, 2025). But Petitioners' core point is that the threshold challenge to the validity of the Proclamation is *not* individualized, but rather applies equally to every class member. These are precisely the type of claims for which courts certify class actions in habeas and other cases challenging broad policies. And Justice Alito observed—also in dissent—that the Supreme Court has never ruled on the availability of class habeas. *A.A.R.P. v. Trump*, 145 S. Ct. 1034 (Mem.), 1036 (2025) (Alito, J., dissenting). But seven other members of the Court issued relief to a "putative class" of habeas

petitioners. In doing so, the Court explained that absent a class, there would be a danger that individual detainees could be removed before they could file individual habeas petitions. *Cf. supra* (Supreme Court cases ruling on the merits in class habeas cases).

## V. ALTERNATIVELY, THE COURT SHOULD CERTIFY PETITIONERS' MULTIPLE COMMON CLAIMS AS ISSUES FOR CLASS RESOLUTION UNDER RULE 23(c)(4).

Petitioners assert multiple challenges to the validity of the Proclamation. Any one of these claims would be sufficient to enjoin its enforcement as to all class members. Indeed, as this Court acknowledged, Petitioners' claims "that the Proclamation is ultra vires . . . may render classwide relief appropriate." *W.M.M.*, 782 F. Supp. 3d at 400-01 (these claims "would likely result in the same relief to all class members if the petitioners prevail on the merits"). The same is true of multiple other claims, listed below. At a minimum, the Court should certify these issues for class resolution pursuant to Rule 23(c)(4), which provides that "an action may be brought or maintained as a class action with respect to particular issues." To certify a class under Rule 23(c)(4), "the class proponent need only" show compliance with Rule 23(a) and Rule 23(b)(2) "*with regard to the issue proposed for certification.*" Newberg and Rubenstein § 4:92 & n.7 (emphasis in original) (collecting cases). Common issues warranting class treatment include:

1. Petitioners' claim that the Proclamation is invalid because there is no "invasion or predatory incursion" within the meaning of the AEA, 50 U.S.C. § 21; *see* Amended Pet., ECF No. 38, ¶¶ 78-79. This claim merits classwide resolution, as litigation throughout the country shows: Multiple courts have held that there is no such "invasion or predatory incursion" and thus enjoined the Proclamation's enforcement classwide. *See J.A.V.*, 781 F. Supp. 3d at 558-61; *G.F.F.*, 781 F. Supp. 3d at 209-12; *D.B.U.*, 781 F. Supp. 3d at 1170-71; *see also J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, *8-10 (D.C. Cir. Mar. 26, 2025) (Henderson, J., concurring).

2. Petitioners' claim that the Proclamation is invalid because it does not invoke the AEA against a "foreign nation or government." 50 U.S.C. § 21; *see* ECF No. 38 ¶¶ 78-79; *D.B.U.*, 781 F. Supp. 3d at 1171-72 (holding that the Proclamation does not name a foreign nation or government).
3. Petitioners' claim that the government's notice procedures are categorically unconstitutional and unlawful as to all class members. *See* ECF No. 38 ¶¶ 103-04; *Cnty. of Riverside*, 500 U.S. at 56-59 (arrest procedures deficient on a classwide basis, despite variation in individual circumstances); *Califano*, 442 U.S. at 701 (class certification proper for due process claim); *see also G.F.F.*, 781 F. Supp. 3d at 206-09; *D.B.U.*, 781 F. Supp. 3d at 1172-73.
4. Petitioners' claim that the Proclamation improperly circumvents the INA's removal procedures, which would render all removals under the Proclamation invalid. ECF No. 38 ¶¶ 84-87.[4]
5. Petitioners' claim that the Proclamation improperly eliminates the screening requirements and substantive prohibitions for torture and persecution guaranteed by the Convention Against Torture and withholding statute, especially given the conditions at CECOT. *See* ECF No. 38 ¶¶ 89-90, 92-93, 95-96; 8 U.S.C. § 1231(b)(3); 8 U.S.C. § 1231 note; 8 C.F.R.

[4] This Court interpreted the claims based on the INA and CAT as individualized claims. *W.M.M.*, 782 F. Supp. 3d at 392-94. But the only claims that Petitioners seek to litigate as a class are common to all class members: that no class member can be removed without following the removal procedures in the INA; without being screened for persecution and torture; and to CECOT, where they would face grave abuse. "These issues hold true for any individual that Respondents designate as an alien enemy under the Proclamation and subject to removal under the AEA. A favorable result on any of these legal theories as to one individual will prove equally applicable to other Venezuelan aliens designated as alien enemies under the Proclamation." *J.A.V.*, 349 F.R.D. at 158. Even without these claims, class certification would remain proper as to the other common challenges.

§§ 208.16-.18, 1208.16-.18; *see also* App. 540-66 (describing conditions at CECOT, including torture, forced labor, and indefinite detention, incommunicado, without trial).

Rather than just "one theory," *W.M.M.*, 782 F. Supp. 3d at 405, these common, classwide claims raise a host of weighty and complex issues, and any one of them not only is appropriate for classwide resolution but would be a basis for meaningful classwide relief. *See J.A.V.*, 349 F.R.D. at 157-58 (listing these same challenges as issues that are common to the whole class). These claims, or any subset of them, are sufficient for certification under Rule 23(b)(2) or, in the alternative, certification under Rule 23(c)(4).[5]

The Fifth Circuit has repeatedly endorsed the certification of issue classes in this situation. In *In re Deepwater Horizon*, the Court explained that Rule 23(c)(4) "permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination." 739 F.3d 790, 816 (5th Cir. 2014) (cited in *J.A.V.*, 349 F.R.D. at 158-59); *see Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 318 (5th Cir. 2024) ("common and individual issues can be divided" under Rule 23(c)(4)) (cleaned up). And it held that class certification is proper where "a single common contention" could "drive the resolution of the litigation." *Deepwater Horizon*, 739 F.3d at 810-11 (quotation marks omitted).

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2) or in equity or, alternatively, certify a class to litigate the common issues under Rule 23(c)(4); appoint the Petitioners as Class Representatives; and appoint the undersigned as Class Counsel.

---

[5] There is no predominance requirement for a Rule 23(b)(2) or 23(c)(4) class. *See Wal-Mart*, 564 U.S. at 362 (predominance only for a Rule 23(b)(3) class); *Neese v. Becerra*, 342 F.R.D. 399, 412 (N.D. Tex. 2022) (same). Regardless, the common questions predominate here. As discussed, the common claims here are numerous and complex, whereas the individual questions of TdA membership are "relatively[] narrow." *J.A.V.*, 349 F.R.D. at 158.

Dated: September 10, 2026

Respectfully submitted,

/s/Lee Gelernt
Lee Gelernt
Daniel Galindo
Kathryn Huddleston*
Ashley Gorski
Patrick Toomey
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
E: lgelernt@aclu.org
E: dgalindo@aclu.org
E: khuddleston@aclu.org
E: agorski@aclu.org
E: ptoomey@aclu.org
E: smahfooz@aclu.org
E: ojadwat@aclu.org
E: hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
E: nsmith@aclu.org
E: osarabia@aclu.org
E: mngo@aclu.org

Brian Klosterboer
Tx Bar No. 24107833
Thomas Buser-Clancy
TX Bar No. 24078344
Savannah Kumar
TX Bar No. 24120098
Charelle Lett
TX Bar No. 24138899
Ashley Harris
TX Bar No. 24123238
Adriana Piñon
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
1018 Preston St.
Houston, TX 77002
(713) 942-8146
bklosterboer@aclutx.org
tbuser-clancy@aclutx.org
skumar@aclutx.org
clett@aclutx.org
aharris@aclutx.org
apinon@aclutx.org

Attorneys for Petitioners-Plaintiffs

**Pro hac vice applications forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record.

Dated: September 10, 2026

*/s/Lee Gelernt*
Lee Gelernt