UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| W.M.M., on His Own Behalf and on Behalf of All Others Similarly Situated, et al.,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in His Official Capacity as President of the United States, et al.,<br><br>Respondents-Defendants. | No. 1:25-CV-059-H |

**ORDER**

On March 14, 2025, the President invoked the Alien Enemies Act—a federal statute that permits the President to deport foreign nationals who are engaged in an "invasion or predatory incursion" against the United States—to detain and remove members of Tren de Aragua, a Venezuelan terrorist group that traffics drugs and engages in other criminal activity. The petitioners, on behalf of a proposed class of Venezuelan nationals detained under the President's Proclamation, brought a habeas action in this Court. The petitioners argue that (1) the Proclamation exceeds the President's authority under the Alien Enemies Act and (2) the detainees have not received sufficient notice to challenge their removal. After trips to the Fifth Circuit and the U.S. Supreme Court, the matter is back before this Court. The petitioners have four motions that are ripe for review. The Court will now address two of those motions.

First, the petitioners ask the Court to substitute three members of the putative class as proposed class representatives in place of the original named petitioners, who have been removed from the United States. Dkt. No. 88. The Court grants that motion. Both Fifth

Circuit and Supreme Court precedent authorize district courts to substitute proposed class representatives before class certification to continue litigating the merits of a putative class action. Second, the petitioners seek leave for the proposed class representatives to proceed under pseudonyms. Dkt. No. 89. The Court denies that motion because the named petitioners have not substantiated their conclusory allegations with evidence that they will suffer harm if their identities are disclosed. The Fifth Circuit found the petitioners' allegations insufficient to support their request to use pseudonyms, and the petitioners have not persuaded this Court to depart from the Fifth Circuit's sound analysis.

## 1. Factual and Procedural Background

### A. The Alien Enemies Act and the President's Proclamation

The Alien Enemies Act (AEA) provides:

> That whenever there shall be a declared war between the United States and any foreign nation or government, or any invasion or predatory incursion shall be perpetrated, attempted, or threatened against the territory of the United States, by any foreign nation or government, and the President of the United States shall make public proclamation of the event, all natives, citizens, denizens, or subjects of the hostile nation or government, being males of the age of fourteen years and upwards, who shall be within the United States, and not actually naturalized, shall be liable to be apprehended, restrained, secured and removed, as alien enemies.

50 U.S.C. § 21.[1] On March 14, 2025, the President invoked the AEA in response to an "invasion of and predatory incursion into the United States" by Tren de Aragua (TdA)—a Venezuelan terrorist group. Proclamation No. 10,903, 90 Fed. Reg. 13033, 13033 (Mar. 14, 2025). According to the President, TdA "is a designated Foreign Terrorist Organization with thousands of members, many of whom have unlawfully infiltrated the United States

---

[1] The Alien Enemies Act, ch. 66, 1 Stat. 577 (1798), was codified as amended at 50 U.S.C. §§ 21 *et seq.*, and the Supreme Court has concluded that any "minor changes in wording" are "without significance." *Ludecke v. Watkins*, 335 U.S. 160, 162 & n.1 (1948).

and are conducting irregular warfare and undertaking hostile actions against the United States."[2] *Id.* These "hostile actions" allegedly include "murders, kidnappings, extortions, and human, drug, and weapons trafficking," as well as other "brutal crimes." *Id.* The President has thus declared "that all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as [a]lien [e]nemies." *Id.* at 13034.

**B. Procedural Background**

On April 16, 2025, A.R.P. and W.M.M.—two Venezuelan nationals detained under the President's Proclamation invoking the AEA—petitioned this Court for habeas relief. Dkt. No. 1 ¶¶ 1, 19–20; *see also* Dkt. No. 38. They sought relief on behalf of a proposed class of "[a]ll noncitizens in custody in the Northern District of Texas who were, are, or will be subject to the [President's Proclamation]." Dkt. No. 38 ¶ 69. In short, the petitioners argue that the Proclamation is unlawful because it does not satisfy the "statutory preconditions" of the AEA. *Id.* ¶¶ 78–79. In the petitioners' view, TdA has not perpetrated, attempted, or threatened an invasion or predatory incursion under the AEA. *Id.* The petitioners also argue that they have not received adequate notice before removal. *See id.* ¶¶ 102–06.

Mere days after filing, this case rapidly rose to the Fifth Circuit, followed by the U.S. Supreme Court. *See A.A.R.P. v. Trump*, 605 U.S. 91, 93 (2025). The Supreme Court enjoined the government "from removing the named plaintiffs or putative class members in this action under the AEA pending order by the Fifth Circuit and disposition of the petition

[2] On February 20, 2025, the Secretary of State designated TdA as a "Foreign Terrorist Organization." Proclamation No. 10,903, 90 Fed. Reg. 13033, 13033 (Mar. 14, 2025) (citing 8 U.S.C. § 1189).

for a writ of certiorari, if such writ is timely sought." *Id.* at 99. The Supreme Court remanded the case to the Fifth Circuit for that court to "address (1) all the normal preliminary injunction factors . . . as to the named plaintiffs' underlying habeas claims that the AEA does not authorize their removal pursuant to the [President's Proclamation], and (2) the issue of what notice is due, as to the putative class's due process claims." *Id.* at 98–99. A Fifth Circuit panel addressed these issues. *W.M.M. v. Trump*, 154 F.4th 207 (5th Cir.), *vacated*, 154 F.4th 319 (5th Cir. 2025) (en banc) (mem.). Three weeks later, however, the Fifth Circuit vacated the panel's opinion and agreed to rehear the case en banc. *W.M.M.*, 154 F.4th at 321.

In August 2026, the en banc Fifth Circuit dismissed the petitioners' appeal for lack of jurisdiction. *W.M.M. v. Trump*, 184 F.4th 780, 783 (5th Cir. 2026) (en banc). Because the named petitioners had been removed under the Immigration and Nationality Act (INA) while the appeal was pending and no class had yet been certified, the Fifth Circuit concluded that the petitioners' appeal was moot. *Id.* at 786–87. Accordingly, the Fifth Circuit dismissed the petitioners' appeal without addressing the merits of their claims. *Id.* The Fifth Circuit also declined the petitioners' request to substitute other members of the putative class as proposed class representatives in place of the named petitioners. *Id.* The Fifth Circuit concluded that this Court should first address the propriety of substitution. *Id.*

On August 20, 2026, the litigation returned to this Court. On the same day, the Court issued a scheduling order to "ensure the expeditious and careful resolution of the claims and issues presented before the Supreme Court's injunction terminates." Dkt. No. 87 at 2. The Court reasoned that because the Fifth Circuit issued its judgment on August 13, 2026, the Supreme Court's injunction preventing the government from removing any

members of the putative class under the AEA remains in effect until Thursday, November 12, 2026.[3] *See A.A.R.P.*, 605 U.S. at 99 (stating that injunction remains in effect "pending order by the Fifth Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought"); Sup. Ct. R. 13(1) (providing 90 days from judgment to petition for writ of certiorari).

Before the Court are four motions. First, the petitioners seek to substitute three new proposed class representatives for the original named petitioners, who have now been removed from the United States. Dkt. No. 88. That motion is unopposed. *Id.* at 1 n.1. Second, the petitioners seek leave for the proposed class representatives to proceed under pseudonyms, citing the "highly sensitive and personal information" involved in this case. Dkt. No. 89 at 1. Third, the petitioners move to certify a class of "[a]ll noncitizens in custody in the Northern District of Texas who were, are, or will be subject" to the President's Proclamation ordering members of TdA removed under the AEA. Dkt. No. 93. Finally, the petitioners seek summary judgment on their claims that (1) the Proclamation is unlawful under the AEA and (2) the government has failed to provide notice sufficient to enable detainees to challenge their removal. Dkt. No. 96.

The Court now addresses the petitioners' motions to substitute three members of the putative class as proposed class representatives (Dkt. No. 88) and for the proposed class

[3] On October 21, 2026, the parties notified the Court of the government's stipulation to "not remove any named plaintiff or member of the putative class under the [AEA]" until the earlier of:

> (1) order by the Fifth Circuit and disposition of any petition for a writ of certiorari, if such a writ is timely sought, determining the legality of the AEA Proclamation and its implementation in any case; or (2) dismissal of this case and the exhaustion of any appeals, including disposition of any petition for a writ of certiorari, if such a writ is timely sought.

Dkt. No. 137 at 1.

representatives to proceed under pseudonyms (Dkt. No. 89). The petitioners' motions for class certification (Dkt. No. 93) and for summary judgment (Dkt. No. 96) remain pending.

**2. Motion to Substitute Proposed Class Representatives**

The en banc Fifth Circuit dismissed the petitioners' appeal for lack of jurisdiction. *W.M.M.*, 184 F.4th at 783. The Fifth Circuit concluded that the petitioners' appeal was moot because the government had removed the named petitioners under the INA before any class was certified. *Id.* at 786–87; *see also W.M.M. v. Trump*, No. 25-10524, Dkt. No. 361-1 (5th Cir. Aug. 13, 2026) (en banc). To avoid this result, the petitioners asked the Fifth Circuit "to substitute five new class representatives on appeal in place of the three that no longer remain in this country and as to whom the appeal is now moot." *W.M.M.*, 184 F.4th at 786. The Fifth Circuit, however, declined that invitation. *Id.* at 786–87. Because of the "essentially factual basis of the [class] certification inquiry," the Fifth Circuit found it appropriate to dismiss the petitioners' appeal so this Court could first evaluate the relevant facts in deciding whether to allow the petitioners to substitute other members of the putative class as proposed class representatives. *Id.* at 787 (quoting *Vizena v. Union Pac. R.R.*, 360 F.3d 496, 502–03 (5th Cir. 2004)). In this respect, the Fifth Circuit's "denial of the motion to add class representatives on appeal" was "without prejudice to any future determination by the district court respecting whether to certify a class, to permit the petitioners to add or substitute new class representatives, or to allow an amendment of the petition." *Id.*

Now back before this Court, the petitioners seek to substitute three members of the proposed class—D.A.A., T.I.A., and E.A.A.—as proposed class representatives. Dkt. No. 88 at 1. The petitioners do "not seek to expand the putative class, add new claims, or alter the relief sought." *Id.* Rather, the petitioners seek to substitute D.A.A., T.I.A., and E.A.A.

as proposed class representatives because this is "the most efficient means of allowing this Court to address the class certification and merits questions . . . without requiring putative class members to initiate an unnecessary, duplicative action" that challenges the President's Proclamation. *Id.* at 7. The defendants do not oppose this motion. *Id.* at 1 n.1.

### A. The Proposed Representatives

D.A.A. was detained by ICE in February 2025. Dkt. No. 88-1 ¶ 6. He has been detained at Bluebonnet Detention Facility in Anson, Texas, since April 15, 2025. *Id.* ¶¶ 6–7. On April 18, 2025, D.A.A. was given a notice indicating that he was subject to removal under the President's Proclamation as a member of TdA. *See id.* ¶ 7. As of August 24, 2026, D.A.A. remained detained at Bluebonnet Detention Facility as an alien enemy subject to the President's Proclamation. Dkt. No. 88-4 ¶ 6.

T.I.A. was detained by ICE in March 2025. Dkt. No. 88-2 ¶ 2. He was detained at Bluebonnet Detention Facility in April 2025. *Id.* ¶ 7. On April 17, 2025, he was given a notice indicating that he was subject to removal under the President's Proclamation as a member of TdA. *See id.* On May 4, 2025, T.I.A. was transferred to Prairieland Detention Center in Alvarado, Texas. *Id.* ¶ 8. On January 1, 2026, he was transferred to Diamondback Correctional Facility in Watonga, Oklahoma. *Id.* ¶ 9. As of August 24, 2026, T.I.A. remained detained at Diamondback Correctional Facility as an alien enemy subject to the President's Proclamation. Dkt. No. 88-4 ¶ 3.

E.A.A. was detained by ICE in February 2025. Dkt. No. 88-3 ¶ 4. He was transferred to Bluebonnet Detention Facility in March 2025. *Id.* On April 18, 2025, E.A.A. was given a notice indicating that he was subject to removal under the President's Proclamation as a member of TdA. *See id.* ¶ 5. On May 4, 2025, E.A.A. was transferred to

Prairieland Detention Center. *Id.* ¶ 8. As of August 24, 2026, E.A.A. was apparently detained at Diamondback Correctional Facility as an alien enemy subject to the President's Proclamation. Dkt. No. 88-4 ¶¶ 3, 8. Yet the petitioners' counsel was unable to contact E.A.A. to confirm this. *Id.*

### B. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) allows parties to amend their pleadings. Rule 15(a)(2) requires courts to "freely give leave" for amendment "when justice so requires."[4] Fed. R. Civ. P. 15(a)(2). The Supreme Court has emphasized that absent "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," courts must, as Rule 15(a)(2) requires, "freely give" leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (cleaned up); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." (collecting cases)).

### C. Analysis

Precedent makes clear that plaintiffs may substitute members of a putative class as proposed class representatives under Rule 15(a)(2) to preserve a class action. *Miss. Prot. & Advoc. Sys., Inc. v. Cotten*, 929 F.2d 1054, 1058 (5th Cir. 1991). *Cotten*, for example, involved

---

[4] Federal Rule of Civil Procedure 15(a)(2) also permits an amended pleading if the opposing party provides written consent. While the defendants do not oppose the petitioners' motion to substitute proposed class representatives, Dkt. No. 88 at 1 n.1, this Court is not aware of any filing in which the defendants have provided their consent in writing. Thus, the Court must determine whether to grant the petitioners leave to amend. Fed. R. Civ. P. 15(a)(2).

a putative class action challenging several policies of a center for individuals with intellectual and developmental disabilities. *Id.* at 1055–56. On appeal, the defendant argued that the trial court erred by allowing the plaintiffs to substitute a new proposed class representative under Rule 15 before class certification. *Id.* at 1058. The Fifth Circuit rejected the defendant's argument, concluding that the defendant was not "prejudiced by this amendment, as it in no way changes the nature of the lawsuit," *id.* (quoting *Nancy v. Gulf Oil Corp.*, 817 F.2d 1176 (5th Cir. 1987)), and held that the amendment "was within the [district] court's discretion with respect to Rule 15." *Id.*

Indeed, the Fifth Circuit has repeatedly recognized that "in the absence of a proper certification of the class," "members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive after the claims of the original named plaintiffs are rendered moot." *Graves v. Walton Cnty. Bd. of Educ.*, 686 F.2d 1135, 1138 (5th Cir. 1982); *see also, e.g.*, *Armour v. City of Anniston*, 622 F.2d 1226, 1226 (5th Cir. 1980) (mem.) (instructing the district court to "substitute an appropriate class representative" on remand); *J.R. Clearwater v. Ashland Chem. Co.*, 93 F.3d 176, 178 (5th Cir. 1996) (noting that the district court substituted "two new named plaintiffs" for the original named plaintiff).

Further, Supreme Court case law recognizes that in some cases "the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a [motion for class certification]." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975); *see also Kremens v. Bartley*, 431 U.S. 119, 134–35 (1977) (remanding a case for "substitution of class representatives with live claims"). This is certainly true in the "transitory" context of immigration detention, *Nielsen v. Preap*, 586 U.S. 392, 403–04 (2019) (Alito, J.) (plurality opinion), where "[i]t is by no means certain that any

given individual, named as plaintiff, would be in . . . custody long enough for a district judge to certify the class," *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

Considering precedent, Rule 15's liberal amendment policy, and the defendants' consent, the Court grants the petitioners' motion to substitute D.A.A., T.I.A., and E.A.A. as proposed class representatives. Dkt. No. 88. Substituting D.A.A., T.I.A., and E.A.A. as proposed class representatives simply allows the putative class to continue litigating the claims it has pressed from the beginning of this action. Indeed, the petitioners state that they do "not seek to expand the putative class, add new claims, or alter the relief sought" by substituting D.A.A., T.I.A., and E.A.A.—who have been members of the putative class since the beginning of this litigation—as proposed class representatives. *Id.* at 1. Thus, the Court grants the petitioners' motion.[5]

In granting this motion, the Court need not consider whether D.A.A., T.I.A., and E.A.A. adequately represent the class or whether any justiciability issues prevent the Court from considering the merits of their claims. The Court will resolve those issues when it evaluates the petitioners' motions for class certification (Dkt. No. 93) and summary

[5] The petitioners cite Federal Rule of Civil Procedure 21, rather than Rule 15. Dkt. No. 88 at 4. Rule 21 allows the Court to add or drop parties "at any time, on just terms." Fed. R. Civ. P. 21. Fifth Circuit precedent suggests that either Rule 15 or Rule 21 may be an appropriate vehicle for the substitution of proposed class representatives before class certification. *See Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. Unit B July 1981) (concluding that "members of the original class with live claims" could "become plaintiffs by amendment of the complaint or by intervention" (quoting *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 533 n.13 (5th Cir. 1978))). Nonetheless, in this litigation, Rule 15—rather than Rule 21—is the proper vehicle for substitution because the proposed class representatives were part of the putative class when the operative habeas petition was filed. Dkt. No. 88 at 1; *see* Dkt. No. 38 ¶ 69. Indeed, on April 18, 2025, D.A.A., T.I.A., and E.A.A. were detained at Bluebonnet Detention Center in Anson, Texas, which is located within this District. So D.A.A., T.I.A., and E.A.A. were part of the proposed class listed in the operative petition. Dkt. No. 38 ¶ 69. Thus, by granting the petitioners' motion, the Court has not added or joined new parties but rather has simply substituted—as proposed class representatives—three petitioners that have been part of this putative class action from the beginning.

judgment (Dkt. No. 96). *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1044–45 (5th Cir. Unit A July 1981); *see also* Fed. R. Civ. P. 23(a)(4).

**3. Motion to Proceed Under Pseudonyms**

Additionally, the petitioners seek leave for the proposed class representatives—D.A.A., T.I.A., and E.A.A.—to proceed under pseudonyms. Dkt. No. 89. The petitioners argue that "[t]he declarations and subsequent filings will contain . . . highly sensitive and personal information," so pseudonymity is appropriate. *Id.* at 1. The government opposes this motion, *id.* at 1 n.1, but has not filed a response. Nonetheless, the Court must determine whether the petitioners have met their burden to show that proceeding under pseudonyms is proper.[6]

**A. Legal Standard**

Federal Rule of Civil Procedure 10(a) "require[s] plaintiffs to disclose their names in the instrument they file to commence a lawsuit." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A Aug. 1981) (citing Fed. R. Civ. P. 10(a)). "Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Id.* (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980)). Indeed, "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) ("Judicial records belong to the

---

[6] The Court "does not automatically grant one party's motion merely because the other party failed to respond." *1404 Trail View Tr. v. Wells Fargo Bank, N.A.*, No. 4:15-cv-839, 2016 WL 7551716, at *1 (E.D. Tex. Aug. 5, 2016) (citing *Johnson v. Pettiford*, 442 F.3d 917, 918–19 (5th Cir. 2006)). Indeed, here the Court must balance "the public and private interests at stake" to determine whether the petitioners may proceed under pseudonyms. *W.M.M. v. Trump*, 187 F.4th 699, 704 (5th Cir. 2026) (en banc) (quoting *Sealed Appellant v. Sealed Appellee*, No. 22-50707, 2024 WL 980494, at *3 (5th Cir. Mar. 7, 2024)).

American people; they are public, not private, documents.”). The Fifth Circuit thus recognizes a “strong presumption against party pseudonymity.” *W.M.M. v. Trump*, 187 F.4th 699, 704 (5th Cir. 2026) (en banc) (quoting Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1367 (2022)).

In certain circumstances, however, courts may allow parties to proceed under pseudonyms. *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979). Specifically, where a case involves “matters of a sensitive and highly personal nature,” the usual practice of disclosing the parties' identities “yields ‘to a policy of protecting privacy in a very private matter.’” *Id.*

Courts within the Fifth Circuit consider several factors “common to anonymous-party suits” when determining whether to allow parties to proceed under pseudonyms. *Doe v. Mckesson*, 945 F.3d 818, 835 n.12 (5th Cir. 2019) (quoting *Stegall*, 653 F.2d at 186), *vacated on other grounds*, 592 U.S. 1 (2020). Those factors include whether the relevant party has challenged governmental activity; whether the party must disclose information “of the utmost intimacy”; and whether the party must “admit [his] intention to engage in illegal conduct, thereby risking criminal prosecution.” *Id.* Additionally, the Fifth Circuit has considered whether the party has shown that he will face “possible threatened harm” if his identity is disclosed. *W.M.M.*, 184 F.4th at 705 (quoting *Stegall*, 653 F.2d at 186). Yet the Fifth Circuit has stated that there is “no hard and fast formula for ascertaining whether a party may sue anonymously”; courts must balance “considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings.” *Stegall*, 653 F.2d at 186.

### B. Analysis

Before the en banc Fifth Circuit, the petitioners—upon requesting that the Fifth Circuit substitute other members of the putative class as proposed class representatives in place of the original named petitioners—asked the Fifth Circuit to allow the proposed class representatives to proceed under pseudonyms. *W.M.M.*, 187 F.4th at 704. The Fifth Circuit denied the petitioners' motion for leave to proceed under pseudonyms, concluding that the petitioners' arguments did "not weigh in favor of allowing the proposed new representatives to proceed pseudonymously." *Id.* at 705. But the Fifth Circuit denied the petitioners' motion "without prejudice to any future determination by the district court regarding whether to allow any new class representatives to proceed under pseudonyms." *Id.* at 704. The Court thus proceeds to evaluate the petitioners' arguments on each *Stegall* factor and denies the motion.[7]

#### i. Challenging governmental activity receives little weight.

In this action, the petitioners challenge as unlawful the President's Proclamation declaring that members of TdA are alien enemies subject to detention and summary removal under the AEA. The petitioners certainly challenge governmental activity. *Id.* at 705 (citing *Mckesson*, 945 F.3d at 835 n.12). But "in few cases challenging governmental activity can anonymity be justified." *Stegall*, 653 F.2d at 186; *see also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (rejecting the argument that "there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government"). Further, where

[7] The Eleventh Circuit also uses the *Stegall* test to determine whether to allow parties to proceed under pseudonyms, because the Fifth Circuit decided *Stegall* before Congress split the Fifth Circuit to create the current Fifth and Eleventh Circuits. *W.M.M.*, 187 F.4th at 705 n.1. So Eleventh Circuit cases on this topic provide pertinent persuasive authority. *Id.*

"at least one of the parties is a public official or party of a public nature," the "public's interest is particularly legitimate and important," *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)), and the "rationale for public access" is "even greater," *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022) (quoting *Bradley*, 954 F.3d at 233). That is especially true here, where the petitioners challenge a presidential policy with important political, social, and national-security implications. *See* Proclamation No. 10,903, 90 Fed. Reg. at 13033–34. Accordingly, this *Stegall* factor does not weigh strongly in favor of the petitioners. *See W.M.M.*, 187 F.4th at 705.

**ii. The petitioners' identities are not information of the utmost intimacy.**

Next, D.A.A., T.I.A., and E.A.A. "have not shown that disclosure of their names would require them to disclose information of the utmost intimacy." *Id.* (cleaned up) (quoting *Mckesson*, 945 F.3d at 835 n.12). The petitioners do not want to disclose their names because they do not want to publicize their alleged connection with TdA. But that is not the kind of intimate information that the Fifth Circuit has previously concluded justifies pseudonymity.

For example, in *Southern Methodist University Ass'n*, the Fifth Circuit listed "birth control," "abortion," "homosexuality," or "the welfare rights of illegitimate children or abandoned families" as "sensitive and highly personal" issues that may justify pseudonymity. 599 F.2d at 712–13. And in *Stegall*, the Fifth Circuit concluded that a mother and her children could proceed under pseudonyms where they challenged the constitutionality of prayer and Bible-reading exercises in Mississippi public schools because the plaintiffs' filings revealed details "about their personal [religious] beliefs and practices

that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." 653 F.2d at 181, 186.

The petitioners do not request pseudonymity because the disclosure of their identities would reveal intimate details about their religion, sexuality, or family life. Rather, the petitioners do not want to disclose their identities because they do not want to publicize their alleged connection to TdA, a terrorist organization. But the Fifth Circuit has never suggested that this kind of information counts as a "sensitive and highly personal" matter that warrants pseudonymity. *S. Methodist Univ. Ass'n*, 599 F.2d at 712–13; *see W.M.M.*, 187 F.4th at 705–06. Further, the petitioners dispute their designation as members of TdA. In other words, the petitioners allege that this designation is false. Yet the Fifth Circuit has implied that pseudonymity is proper only when the sensitive information—concerning, for example, one's religious beliefs—is true. Because the petitioners' alleged connection with TdA is, in their view, not true—and because it is not the kind of information that justifies pseudonymity—this *Stegall* factor cuts against the petitioners. *See W.M.M.*, 187 F.4th at 706–07.[8]

The Fifth Circuit also rejected the petitioners' argument that courts "should treat 'immigration matters, like the ones here, that disclose personal information,' as intimate information warranting pseudonymity," because the petitioners failed to explain how revealing "immigration matters" would "'disclose [any] personal information,' let alone information that makes pseudonyms appropriate." *Id.* at 706 (alteration in original); *see also*

---

[8] The petitioners note that their "principal[]" argument is that disclosing their identities "would create a permanent, publicly searchable link between their identities and the U.S. government's disputed allegation that they are members of TdA, putting them at risk of serious harm if removed to Venezuela or a third country such as El Salvador." Dkt. No. 89 at 5. The Court finds it more appropriate to address that concern as relevant to the fourth factor—possible threatened harm.

Dkt. No. 89 at 4. The petitioners have not provided any additional support for this argument to justify a departure from the Fifth Circuit's conclusion. *See* Dkt. No. 89 at 4.

Relatedly, the Fifth Circuit rejected the petitioners' argument that they should be allowed to proceed under pseudonyms because several petitioners are seeking asylum. *W.M.M.*, 187 F.4th at 706. Two petitioners—T.I.A. and E.A.A.—seek asylum. Dkt. No. 89 at 4–5. The petitioners cite 8 C.F.R. § 208.6(a), which provides that information contained in an application for asylum "shall not be disclosed without the written consent of the applicant." But disclosing the petitioners' names will reveal only the fact that they have applied for asylum, not any information contained in the petitioners' respective asylum applications.[9] Further, the petitioners still have not "shown that Venezuela penalizes asylum seekers." *W.M.M.*, 187 F.4th at 706; *see also Castellan-Barrera v. Bondi*, No. 24-60432, 2025 WL 1577823, at *4 & n.8 (5th Cir. June 4, 2025) ("[B]reach of confidentiality" under § 208.6 "may be grounds for relief if the petitioner shows that his home country penalizes asylum seekers." (citing *Dayo v. Holder,* 687 F.3d 653, 656–58 (5th Cir. 2012))).

**iii. The disclosure of the petitioners' identities will not subject them to criminal prosecution.**

The Fifth Circuit allows parties to proceed pseudonymously where they may "be 'compelled to admit [their] intention to engage in illegal conduct, thereby risking criminal prosecution.'" *Mckesson*, 945 F.3d at 835 n.12 (quoting *Stegall*, 653 F.2d at 185).

---

[9] The information in the petitioners' respective asylum applications would likely not come before this Court anyway because the Court "lacks jurisdiction to hear an application for asylum." *Acosta v. Tate*, No. H-23-1034, 2023 WL 2719470, at *2–3 & n.15 (S.D. Tex. Mar. 30, 2023) (quoting 8 C.F.R. § 208.2(b)) ("Immigration judges shall have exclusive jurisdiction over asylum applications."); *cf. Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). In any event, should that information be relevant, permitting the petitioners to redact or seal their filings—rather than allowing the petitioners to proceed under pseudonyms—would be sufficient to protect the pertinent confidential information.

Nonetheless, a party need not "admit criminal conduct or criminal intent in order to proceed under a fictitious name." *Stegall*, 653 F.2d at 186. A court may also allow a party to proceed pseudonymously if the party "had to admit that [he] either had violated state laws or government regulations or wished to engage in prohibited conduct." *S. Methodist Univ. Ass'n*, 599 F.2d at 713.

As the Fifth Circuit recognized, the petitioners "have not argued that the revelation of their true identities will cause them to admit engaging in illegal conduct or risk criminal prosecution." *W.M.M.*, 187 F.4th at 707. And "the disclosure of their identities would not require the [petitioners] to 'express a desire to participate in proscribed activities,'" *id.* (quoting *S. Methodist Univ. Ass'n*, 599 F.2d at 713), because the petitioners dispute their designation as members of TdA, *see* Dkt. No. 89 at 6. So this factor does not support pseudonymity.

**iv. The petitioners have not shown that disclosing their identities would subject them to possible threatened harm.**

In addition to the above three factors, the Fifth Circuit considers "the showing of possible threatened harm" in evaluating whether to allow parties to use pseudonyms. *W.M.M.*, 187 F.4th at 707 (quoting *Stegall*, 653 F.2d at 186). On this point, the petitioners argue that public disclosure of their identities would subject them to physical violence in Venezuela. Dkt. No. 89 at 6.

The Fifth Circuit rejected this argument because the petitioners expressed "only 'generalized concerns' about potential retaliation, directed toward either them or their families, in Venezuela or other countries as a result of the U.S. government identifying them with TdA." *W.M.M.*, 187 F.4th at 707. In the Fifth Circuit's view, the petitioners failed to produce "'plausible predictions of possible future violence,' let alone evidence of 'express

threats or incidents' to anyone, including them or their families, arising out of identification with TdA." *Id.* at 707–08 (quoting Volokh, *supra*, at 1397). The petitioners' "evidence-less, generalized fears" thus did not "overcome the presumption against pseudonymity." *Id.*

The Fifth Circuit's sound conclusion follows from the principle that courts should "not usually allow parties to proceed anonymously based on generalized concerns." *June Med. Servs.*, 22 F.4th at 520 n.5. Indeed, the Fifth Circuit recognized that "[c]ourts generally allow pseudonymity if there is 'reasonable[]' 'fear[]' of 'retaliatory physical . . . harm to the requesting party or even more critically, to innocent non-parties,' which may be considered in light of 'the anonymous party's vulnerability to such retaliation.'" *W.M.M.*, 187 F.4th at 707 (alterations in original) (quoting Volokh, *supra*, at 1397 (collecting cases)). "Express threats of violence would likely qualify, as would specific past incidents of violence or vandalism." *Id.* (quoting Volokh, *supra*, at 1397). But the "[l]ack of such express threats or incidents—or at least lack of highly plausible predictions of possible future violence—will usually count against pseudonymity." *Id.* (quoting Volokh, *supra*, at 1397).

Seeking to surmount this hurdle, the petitioners have now provided "evidence not previously provided to the Fifth Circuit[] regarding risk of retaliation due to the government's designation" of the petitioners as members of TdA. Dkt. No. 89 at 6 n.4. In particular, the petitioners have provided an expert's declaration describing how TdA members face threats of physical violence from Venezuelan "paramilitary groups," "right-wing opposition leaders," and "[r]ival gangs." Dkt. No. 88-5 ¶¶ 7–9. The expert's declaration also says that the Venezuelan government features TdA members—many of whom are detained at the Center for Terrorist Confinement (CECOT) in Tecoluca, El

Salvador, Dkt. No. 99-D ¶ 2—in political propaganda and exposes them to political violence. Dkt. No. 88-5 ¶¶ 7–9.

But this additional evidence still provides "only 'generalized concerns' about potential retaliation." *W.M.M.*, 187 F.4th at 707. Each petitioner asserts that he "faces serious danger" of "retaliation, coercion, extortion, threatened prosecution, and violence from [TdA]-associated groups, rival gangs, and others" in El Salvador or Venezuela. Dkt. No. 88-1 ¶ 8; *accord* Dkt. No. 88-2 ¶ 9; Dkt. No. 88-3 ¶ 6. But the petitioners have identified neither "express threats or incidents" nor "highly plausible predictions of possible future violence" to support pseudonymity. *W.M.M.*, 187 F.4th at 707 (quoting Volokh, *supra*, at 1397). And the expert's declaration suffers from the same flaw. It says that alleged members of TdA "sometimes" face physical threats from groups that oppose the Venezuelan government, Dkt. No. 88-5 ¶ 7, and "may" face threats or attacks from rival gangs, *id.* ¶ 9. The two-page declaration lists no "[e]xpress threats of violence" or "specific past incidents of violence or vandalism" to support its generalized assertions. *W.M.M.*, 187 F.4th at 707 (quoting Volokh, *supra*, at 1397).

Further, while the expert's declaration suggests that the Venezuelan regime may use members of TdA detained at CECOT as "propaganda tools" and subject those detainees to "political violence," Dkt. No. 88 ¶¶ 3, 6, these suggestions are conclusory. The expert's declaration does not even connect (1) the potential disclosure of the petitioners' identities in this lawsuit with (2) the likelihood that the petitioners will be used as "propaganda tools" and accordingly face "political violence" in El Salvador or Venezuela. The declaration merely states that its conclusions are based on "the situation in Venezuela for the men sent by the United States to CECOT in March 2025." *Id.* ¶ 1. In this respect, the declaration

suggests that the Venezuelan regime singled out these men—and "disclos[ed] personal details about them"—solely on account of their detention at CECOT. *Id.* ¶ 3. Whether the detainees' identities were disclosed in a lawsuit in the United States was of no matter. In any event, the Court lacks sufficient evidence to support the inference that denying the petitioners' motion to proceed under pseudonyms will cause them to face threats or physical harm in the future. Thus, the petitioners have not persuaded this Court that its analysis of this issue should differ from the Fifth Circuit's, given the generalized, conclusory nature of the petitioners' allegations.

* * *

None of the *Stegall* factors weighs strongly in the petitioners' favor. While the petitioners have purportedly provided additional evidence that the Fifth Circuit did not consider when it rejected the petitioners' motion to proceed under pseudonyms, the petitioners' arguments still rest largely on conclusory assertions. The Fifth Circuit found those assertions unpersuasive. So does this Court. Accordingly, although the Fifth Circuit stated that its conclusion was "without prejudice to any future determination by the district court regarding whether to allow new class representatives to proceed under pseudonyms," *id.* at 708, the Court denies the petitioners' motion to proceed under pseudonyms (Dkt. No. 89).[10]

---

[10] The Court previously granted the original named petitioners' motion to proceed under pseudonyms, Dkt. No. 4, because of "the sensitive and personal information about their immigration status and histories in this case." Dkt. No. 9 at 1. But the Court did so in a summary order at the inception of this litigation on a rapid timeline. Considering the en banc Fifth Circuit's statement on this matter and the lack of compelling evidence to distinguish the petitioners' present arguments from the arguments that the Fifth Circuit found unpersuasive, the Court finds it appropriate to deny the petitioners' motion for leave to proceed under pseudonyms.

**4. Conclusion**

The Court grants the petitioners' motion to substitute D.A.A., T.I.A., and E.A.A. as proposed class representatives (Dkt. No. 88). But the Court denies the petitioners' motion for leave to proceed under pseudonyms (Dkt. No. 89). Accordingly, the Court orders the petitioners to file a notice with the petitioners' names within seven days of this Order so the Court can update the case caption.

The petitioners' motions for class certification (Dkt. No. 93) and summary judgment (Dkt. No. 96) remain pending.

So ordered on November 6, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE